UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CASE NO. 5:22-cv-00238-KKC

CHARLES L. WALDEN,                                                    PLAINTIFF,

VS.

ENTERPRISE SERVICES GROUP, LLC,
CLARENCE M. HOWARD,
NATIONAL INDEMNITY GROUP OF INSURANCE
COMPANIES OR NATIONAL INDEMNITY COMPANY,
VINCE KLINE, AND
PROGRESSIVE CASUALTY INSURANCE COMPANY,                DEFENDANTS.

---

**RESPONSE TO PLAINTIFF'S MOTION TO ALTER, AMEND OR VACATE
01/08/2024 SCHEDULING ORDER**

---

Come the Defendants, Enterprise Services Group, LLC and Clarence M. Howard, by counsel, and for their Response in objection to Plaintiff's Motion to Alter, Amend, or Vacate 01/08/2024 Order ("Motion to Vacate") (DE 107), respectfully state as follows:

Consistent with Fed. R. Civ. P. 6(b) and 16(b)(4), this Court, after finding Defendants had demonstrated "good cause to grant the extension," Amended Order, DE 103 at p. 1, exercised its broad discretion to control pretrial discovery by modifying the Scheduling Order to extend Defendants' expert disclosure deadline – just as it did three-months earlier at Plaintiff's request. *See* Order, DE 87. Now, nearly one month subsequent to said Order, Plaintiff asks this Court to reverse itself based on two of the same unsubstantiated contentions previously raised in his Response (DE 99). The sum and substance of Plaintiff's Motion to Vacate consists of a rehashing of identical arguments previously raised (DE 99), thoroughly refuted vis-à-vis defendants briefing (DE 98 and DE 100), and implicitly rejected by the Court's Amended Order (DE 107). Given the

absence of any new circumstances or developments subsequent to motion briefing or the entry of the Amended Order, the Motion to Vacate lacks even less factual or legal support than did Plaintiff's Response. Quite ironically, Plaintiff's position continues to be completely oblivious to the fact that it was Plaintiff's own lack of diligence and obfuscation that necessitated the need for the extension in the first place. These substantive deficiencies aside, the Motion to Vacate fails on an even more fundamental level, its abject failure to demonstrate that this Court abused its broad discretion in granting the subject extension. For any, or all, of these reasons, the Motion to Vacate should be denied.

## I.    Applicable Law

Trial courts have broad discretion in managing trials, *Cross & Cross Properties v. Everett Allied Co.*, 886 F.2d 497, 503 (2d Cir.1989), and this discretion includes a certain amount of latitude to deviate from the terms of the pretrial order. *See Napolitano v. Compania Sud Americana de Vapores*, 421 F.2d 382, 386 (2d Cir.1970). Upon a timely motion, the Court may amend the Scheduling Order "for good cause and with the judge's consent." Fed. R. Civ. P. 6(b); 16(b)(4). Given the variety of factors relevant to demonstrating "good cause," the determination is left to the trial court's discretion on a case-by-case basis.

"Although federal judges generally recognize the binding effect of the pretrial order, this does not mean that it is rigidly and pointlessly adhered to at trial. The application of preclusion always is viewed as a matter of judicial discretion." 6A Wright, Miller & Kane, *Federal Practice & Procedure,* § 1527, at 279 (2d ed. 1990). "Treatment of the pre-trial order after entry requires an appropriate balance between firmness to preserve the essential integrity of the order, and adaptability to meet changed or newly discovered conditions or to respond to the special demands of justice." *Case v. Abrams*, 352 F.2d 193, 195 (10th Cir. 1965) (*quoting* Hon. A. Sherman

Christenson, The Pre-Trial Order, *Proceedings of the Seminar on Procedures for Effective Judicial Administration*, 29 F.R.D. 191, 371 (1961). Recognizing that "[u]nbending adherence to the strictures of Rule 16 would [] frustrate another broad policy of the Federal Rules favoring liberality of amendment," federal trial courts have "widely recognized that Rule 16 must be read in light of Rule 15, and that in some circumstances the policy of Rule 15 should moderate the strictures of Rule 16." *Wallin v. Fuller*, 476 F.2d 1204, 1209-1210 (5th Cir. 1973).

Against this backdrop, and as Plaintiff concedes, good cause is generally established when the moving party demonstrates that the deadline "cannot reasonably be me despite the diligence of the party seeking the extension." DE 107 at p. 2 (*citing Todd v. Hyster-Yale Grp., Inc.*, 5:18-cv-468 (E.D. Ky. May1, 2019). It is also commonly shown when "the movant has not unduly delayed the action and [] the opponent will not be prejudiced by the modification." 6A Wright & Miller, *Federal Practice and Procedure* § 1522.2 Modifying Scheduling Orders (3d ed.). And, as particularly relevant here, good cause is generally found "[w]hen the modification is necessitated by acts of the opposing party or by the opponent's failure to act." *Id.*

## II.    Defendants Established Three Grounds Demonstrating Good Cause

Defendants' underlying briefing demonstrated good cause for modifying the scheduling order in at least three ways: 1) Despite reasonable diligence, the original expert disclosure deadline could not be met;[1] 2) Defendants have not delayed the action nor would Plaintiff suffer any prejudice as the result of the extension;[2] and 3) it was only because of Plaintiff's obfuscation and constantly evolving claims that Defendants' required the extension in the first place.[3]

1. <u>Despite their best efforts and diligence, Defendants were unable to comply with the disclosure deadline (due to Plaintiff's actions).</u>

---

[1] See Motion to Modify, DE 98 at pp. 3-4. Also see Reply, DE 100 at p. 4.
[2] See Motion to Modify, DE 98 at p. 4; and Reply, DE 100 at p. 3.
[3] See Motion to Modify, DE 98 at pp. 2-4; and Reply, DE 100 at pp. 2-4.

Conveniently ignoring the third basis, Plaintiff's Motion to Vacate only attempts to address the first two grounds. With respect to the first, diligence, Plaintiff continues to rely on the baseless contention that Defendants had notice of his intention to pursue damages for future medical expenses simply because his attorney made a reference to same in his correspondence dated January 13, 2023. What Plaintiff fails to appreciate, of course, is that his attorney's unexplained and undocumented allegation of $169,576.00 of future medical expenses does not in any way translate to the notice Plaintiff first provided on December 5, 2023, that Plaintiff intends to rely on the testimony of three previously unidentified medical experts to support his exponentially higher claim for $1,275,697.63 for future medical expenses.[4] Despite having been refuted ad nauseum in Defendants' Motion to Modify and corresponding Reply, Plaintiff still fails to address the stark inconsistencies between Plaintiff's newly disclosed expert reports, on the one hand, and the actual evidence consisting of Plaintiff's own testimony, sworn discovery answers itemizing future medical expenses as "Unknown,"[5] and the complete absence of recent medical treatment,[6] on the other.

Plaintiff continues his efforts to fault Defendants decision to utilize the same neurosurgeon to conduct an IME who has already expended an untold number of hours reviewing the mountain of Plaintiff's prior medical records. Plaintiff contends, without one iota of evidence, that "there are a plethora of qualified neurosurgeons in Kentucky from whom Defendants could have sought an IME." This, according to Plaintiff, demonstrates Defendants' lack of diligence to attempt to comply with the original deadline. Plaintiff's argument fails now for the same reasons demonstrated in Defendants' briefing. First, Plaintiff is simply ill-informed as to the availability

---

[4] *Compare* **Exhibit A**, Excerpts of Counsel's 1/13/23 Correspondence *with* Plaintiff's Disclosures, DE 97-3 at p. 2.
[5] Interrogatory No. 17, attached as **Exhibit B**.
[6] See generally, Defendants' Motion to Modify (DE 98) and Reply (DE 100).

of neurosurgeons to conduct IME's. Putting aside Plaintiff's failure to identify even one of the "plethora" of experts, even assuming, arguendo, that such an expert could have been retained subsequent to Plaintiff's December 5, 2023, Disclosures, Plaintiff's position fails to demonstrate how such a theoretical expert might possibly be more efficient than Defendants' chosen expert. Considering that such an expert would necessarily have to review the tens of thousands of pages of Plaintiff's medical records to complete a CR 26 report, it is highly improbable, if not unfathomable, that any other neurosurgeon would be any more efficient than the one selected by Defendants. Considering that record reviews are typically completed prior to conducting an IME, it is highly likely, if not certain, that Plaintiff's proposed course of action would have resulted in an even lengthier delay. Defendants' decision to utilize the same expert retained early in the case to conduct a complete records review – who was already intimately familiar with Plaintiff's current and prior medical history – was both logical and diligent. The alternative proposed by Plaintiff would have represented the opposite, and Plaintiff's unsupported contentions to the contrary are both illogical and misinformed.

2. Plaintiff has not, and cannot, demonstrate prejudice.

Plaintiff's final argument, generic and unspecified allegation of prejudice, is also void of merit. Despite having two opportunities to do so, Plaintiff has still not identified any particularized prejudice that will result in granting Defendants an extension similar to the one requested and received by Plaintiff. Rather than attempting to address any perceived prejudices potentially occasioned by the extension, Plaintiff's argument on this topic consists entirely of Plaintiff criticizing the Court for the discrepancies in the extensions ultimately granted to Plaintiff and the extension given to Plaintiff. Plaintiff's critique of this Court is, quite simply, patently irrelevant to the only relevant inquiry: whether Plaintiff will suffer any prejudice as the result of the extension.

That Plaintiff has failed to allege, let alone demonstrate, any such actual prejudice, conclusively demonstrates the absence of factual and legal merit to Plaintiff's argument.

3. <u>Plaintiff's obfuscation and constantly evolving claims necessitated Defendants' request for an extension.</u>

In an extreme display of irony, Plaintiff refuses to acknowledge (or perhaps intentionally ignore) that it was his own actions and obfuscation that exclusively necessitated Defendants' request for an extension in the first place. This undeniable fact was thoroughly demonstrated in Defendants' prior briefing. (DE 98 and DE 100). It was Plaintiff who first sought an extension to disclose previously unidentified medical experts to support a claim for future medical expenses more than $1,000,000.00 higher than the amount informally alleged by Plaintiff's attorney. It was Plaintiff who testified, under oath, that he had not received any medical treatment related to the accident since February 9, 2021. It was Plaintiff who testified that the entirety of his accident-related medical treatment consisted exclusively of the hospital stay immediately following the accident, a brief stint of physical therapy, and a single emergency room visit. It was Plaintiff who defined his itemized damages for future medical treatment as "Unknown." It is Plaintiff who has failed to supplement or otherwise update his itemization of damages until December 8, 2023, by way of expert disclosures alleging no less than $1,275,697.63 in future medical expenses, a great many of which are represented by treatment and medications Plaintiff has never received. It was Plaintiff who failed to provide any medical records other than those included with his initial discovery responses. It was Plaintiff who agreed to supplement his discovery answers, but to date, has yet to do so. It was Plaintiff who refused to sign a medical authorization, thus requiring Defendants to issue subpoenas to Plaintiff's medical providers for not only prior records, but also certain records for which Plaintiff is seeking damages in this action. It was Plaintiff who refused to respond to Defendant's Interrogatory requesting that Plaintiff describe and identify each of the

specific injuries he alleges were caused by the subject accident. It was Plaintiff whose expert disclosures first identified three previously unidentified medical professionals. It was Plaintiff who disclosed, for the first time via expert disclosures, that Plaintiff is now claiming a multitude of neurological injuries for which Plaintiff has not received any medical treatment since the subject accident – injuries which are seemingly identical to those he sustained in a prior accident and for which he received significant treatment.

For all of these reasons, combined with the countless others far too numerous to set forth herein, it was Plaintiff and Plaintiff alone who necessitated the need for the extension requested by Defendants and subsequently granted by this Court.

And it is for precisely these same reasons that this Court did not abuse its discretion in granting the extension requested by Defendants.

## CONCLUSION

Despite seeking virtually identical relief only months earlier, Plaintiff's continued objection provides the essential ingredients of which great songs are made. The Motion to Vacate is the equivalent to:

> [T]he good advice that you just didn't take.
> ….
> And isn't it ironic?
> Don't you think?
> A little too ironic.
> And yeah, I really do think.

ALANIS MORISSETTE, IRONIC, on JAGGED LITTLE PILL (Maverick Records 1995). Defendants having demonstrated good cause for the extension, this Court did not abuse its broad discretion in granting their request for an extension. Quite unlike the "old man [who] turned ninety-eight; [that] won the lottery and died the next day," *id.*, Plaintiff has not and will not suffer any prejudice by

the extension – an extension only necessitated as the result of Plaintiff's conduct. For these reasons,

Defendants respectfully ask that Plaintiff's Motion to Alter, Amend or Vacate be denied.

Respectfully submitted,

HAMM, MILBY & RIDINGS, PLLC
120 NORTH MAIN STREET
LONDON, KY 40741
PHONE: 606-864-4126
FAX: 606-878-8144
EMAIL:  marcia@hmrkylaw.com
EMAIL:  jridings@hmrkylaw.com
ATTORNEYS FOR DEFENDANTS,
ENTERPRISE SERVICES GROUP, LLC AND
CLARENCE M. HOWARD

By:  /s/ Jay Ridings
        JAY MILBY RIDINGS

CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of February, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

  /s/ Jay Ridings
COUNSEL FOR DEFENDANTS, ENTERPRISE
SERVICES GROUP, LLC and CLARENCE M.
HOWARD