| From: | Jay Milby Ridings |
| To: | Robert Morrin |
| Cc: | rachel@morrinlawoffice.com; Marcia Ridings; charliewalden@projects.filevine.com |
| Subject: | RE: Walden Rule 35 Examination |
| Date: | Tuesday, March 19, 2024 2:50:12 PM |
| Importance: | High |

I've cut and pasted your inquiries immediately below, in blue. My responses in Red. As addressed in my most recent email, and unequivocally demonstrated below, I am seeking nothing more than precisely the same opportunities afforded plaintiff's retained, non-treating experts.

"the tests intended to be performed on him and your imagination of what the examinations might consist of is insufficient. My client is entitled to know if the Defendants in this matter are entitled to everything they are requesting, and I can't even do my job without this information."

Physical, neurologic, and mental examination to include:

- Range of Motion testing
  - Cervical
  - Shoulders
  - Lumbar
  - Thoracic
- Long tract signs (Babinski, Hoffman's, clonus, etc.)
- Reflex testing
- Gait (observation and demonstration)
- Electronic inclinometer with automatic sensing
- Lehrmitte's sign test
- Spurling sign test
- Romberg sign test
- Phalen's sign test
- Tinel's sign test
- Straight leg raise test
- Bilateral hip examination
- Patrick sign test
- Greater trochanter examination
- Bilateral shoulder examination
- Neer sign test
- Hawkins sign test
- Nystagmus testing
- Facial sensation examination (bilateral)
- Air conduction testing
- cervical neurological examination to test bilateral strength in deltoids, biceps, brachioradialis, wrist extensors/ flexors , grip, and finger extensors

**EXHIBIT 7, Page 1**

neurological exam of the head and neck to evaluate mentation in terms of ideation and coherent thoughts. Evaluation of whether words are clear and not pressured or labored.
- Questioning to evaluate grasp of recent current events; appropriateness for age.
- Serial sevens
- Short-term memory testing, e.g. ability to recall words/objects after period of time
- Cranial nerve testing
- Visual field testing
- Subjective taste and swallowing evaluation
- Shoulder shrug evaluation
- Hamilton Rating Scale for Depression
- MADRAS

The above description will no doubt be familiar as it was set forth in my prior emails, and, more importantly, mirrors by and large the testing referenced in your own expert reports.

For time limitations on the examination, I don't think it's appropriate for Plaintiff's counsel to set that limitation. However, I think it's important to put a reasonable cap on how long the examination can run. Does Dr. Kriss have an estimate on the long end of the amount of time his tests will take?
I previously requested your input regarding a time proposal. I further inquired about the length of examinations conducted by Plaintiff's retained, non-treating experts. ("What do you propose regarding time limitations? How long were the respective examinations (including all testing) conducted by plaintiff's experts?") You have not responded.

I reiterate these requests.

As for the "good cause," I was simply asking what other 2020 injuries you were referring to that were more serious than Mr. Walden's injuries sustained in this unfortunate collision? If I need to clarify then I'm glad to do so.
The underlying 2020 collision is the only occurring in 2020 to which I intended to refer. To the extent I suggested otherwise, I likely misspoke. Of course, as far as "good cause," Plaintiff's injuries prior and subsequent to the 2020 collision are extremely relevant. I apologize for the confusion and refer you to Plaintiff's long-standing pre-existing injuries and the 2022 incident resulting in ER visits for complaints of back pain. Please also refer to defendants' filings regarding inconsistencies in medical records vs Plaintiff's testimony and expert opinions.

Regarding the questioning, respectfully, Dr. Kriss is a physician hired by an adverse party. It's not an independent examination if there's a standing relation between the physician and Defendant or Defendant's counsel and the physician knows who is paying his invoice. That is the main difference between the questioning of Dr. Kriss and Dr. Changaris and Dr. Wilson. As long as the questioning remains relevant to Mr. Walden's physical health and condition then that should be fine. Is the questioning going to be conducted by Dr. Kriss or a physician assistant? I think there's some authority to support having an assistant, someone other than the actual examining physician, conduct any questioning. I can find those cases if you'd like or we

**EXHIBIT 7, Page 2**

could just agree to allow an assistant conduct the questioning?

Plaintiff's retained, non-treating physicans are the direct equivalent of Dr. Kriss. With that said, I assure you all of Dr. Kriss' questioning will be both relevant and fall within the topics previously identified. I fail to understand how the identity of the questioner is relevant. With that said, I am admittedly not familiar with legal authority to the contrary. Regardless of such authority, Dr. Kriss will need to conduct the questioning as I understand he does not have a PA. I respectfully submit that the relevance and necessity of the previously identified topics are demonstrated by no more than the fact that Plaintiff's own retained experts presented identical questioning.

- Current physical condition,
  - Wilson Report at p. 3 ("Date of MMI"),
  - Changaris at p. 1 ("Current Reported Symptoms"), p. 1 (Review of Systems, "no reported…"), p. 2 (HAM-D testing), p. 8 ("he is already showing difficulty managing anxiety…"); p. 9 ("…Mr. Walden's symptoms, physical impairments…"); p. 7 ("He currently complains of low-level constant background headaches and dizziness.")

- Nature of improvements or declines in physical condition since subject MVA
  - Wilson Report at p. 3 ("Date of MMI"),
  - Changaris at p. 1 ("He reported changes in his appetite, sleep….car related anxiety.")

- Mechanism of injuries regarding subject MVA
  - Changaris at p. 7 ("Causation: Based on the **history received**…") ("…substantial mild [TBI] caused by this accident **by virtue of the history taken**…") ("The **above history** and physical with report provides support for these opinions")

- Mechanism of injury of prior injury-related incidents/events
  - Wilson at p. 2 (discussion of 2011 MVA and treatment + failure to review prior records = could only come from plaintiff.

- Current medical treatment
  - Wilson Report at p. 1 ("Currently he is in substance abuse rehabilitation"), p. 2 ("Currently takes no medications"), p. 1 (History)

- Treatment between 2020 MVA and date of exam
  - Wilson Report at p. 1 (History, including discussion of treatment not referenced in any of records identified as having been reviewed)

- Prior medical treatment
  - See Wilson Report at p. 2 ("Prior Surgery" cf. "Medical Records Reviewed," at p. 1 confirming lack of review of prior records); p. 3 ("…he had an acetabular fracture with fixation in 2011, which is the same injury, I would …)

- Changaris at p. 2 ("The client reported prior history of depression before the accident of record however was just a feeling and never got treated for it."); p. 1 ("He had a prior accident with fracture of the left hip with patient reported TBI. **No records reviewed for this accident**")

- Medical treatment between subject MVA and date of IME,
  - Wilson Report at p. 1 (History, including discussion of treatment not referenced in any of records identified as having been reviewed)

- Occupational status (current and pre-MVA),
  - Wilston Report at p. 3 ("Currently, he is in rehabilitation … and he has not worked for several years")
  - Changaris at p. 9 ("As he was employed without limitations at the time of this accident in 2020…") ("He is currently not working due to this accident and not likely to return to gainful employment.")

- Pre-MVA medical history.
  - Wilson Report at p. 3 ("…he had an acetabular fracture with fixation in 2011, which is the same injury, I would …), p. 1 ("Prior Surgery"), p. 1 (prior substance abuse)
  - Changaris at p. 2 ("The client reported prior history of depression before the accident of record however was just a feeling and never got treated for it"); p. 9 ("As he was employed without limitations at the time of this accident in 2020…"); p. 1 (Past Accidents: None Reported);

Jay Milby Ridings
Hamm, Milby & Ridings PLLC
120 N Main St
London, KY 40741
Ph: (606) 864-4126
jridings@hmrkylaw.com

**From:** Robert Morrin <morrinlaw@gmail.com>
**Sent:** Tuesday, March 19, 2024 1:35 PM
**To:** Jay Milby Ridings <jridings@hmrkylaw.com>
**Cc:** rachel@morrinlawoffice.com; Marcia Ridings <marcia@hmrkylaw.com>; charliewalden@projects.filevine.com
**Subject:** Re: Walden Rule 35 Examination

Hi Jay,

I'm still not sure of what Dr. Kriss' examination will entail exactly since the response provided simply called the examinations "standard." Respectfully, I'm not able to determine if the Defendant is requesting duplicative discovery, something which is certainly not permitted, when we are told Mr. Walden will be expected to undergo "standard tests," the length of which is somehow unknown at this time.

My client is not agreeable to an amorphous Rule 35 Examination, but he is agreeable to such an examination for which his reasonable inquiries are answered. The inquiries in my previous email will need to be answered either via email or via court filings.

I will look for your motion later today.

Thank you,
Rob



**Robert A. Morrin**

Morrin Law Office
214 West Main Street
Richmond, KY 40475
859-358-0300 p
859-972-0813 f
www.MorrinLawOffice.com

*Learn about us!*



*We  Referrals!*

**Statement of Confidentiality**:
This communication contains information which is confidential. It is for the exclusive use of the intended recipient(s) please note that any form of distribution, copying, forwarding or use of this communication or the information therein is strictly prohibited and may be unlawful. If you have received this communication in error please

**EXHIBIT 7, Page 5**

**notify the sender, delete the communication, and destroy any copies.**

On Tue, Mar 19, 2024 at 1:23 PM Jay Milby Ridings <jridings@hmrkylaw.com> wrote:

Rob,

Thank you for following up.

I interpreted your prior email as a refusal to permit Dr. Kriss from performing what would effectively be identical to the exams performed by the two experts retained by Plaintiff. Correct me if I am wrong, but I understand that neither Dr. Changaris' nor Dr. Wilson's examinations were video-recorded. Simply put, I am asking only that Dr. Kriss be given the same opportunity as Plaintiff's retained, non-treating, experts.

Based on my understanding of Plaintiff's position documented in your 3/14 email, I have been working on a motion to compel an IME. Of course, if you are agreeable to the terms detailed at length in my 3/11 email, then a motion won't be necessary. But if Plaintiff is insisting on imposing additional restrictions that were not applicable to his own experts, then this appears to be a matter to be decided by the Court.

As I plan to file the motion today, I would appreciate if you would let me know your position ASAP.

Sincerely,

Jay

Jay Milby Ridings
Hamm, Milby & Ridings PLLC
120 N Main St
London, KY 40741
Ph: (606) 864-4126
jridings@hmrkylaw.com

---

**From:** Robert Morrin <morrinlaw@gmail.com>
**Sent:** Tuesday, March 19, 2024 1:13 PM
**To:** Jay Milby Ridings <jridings@hmrkylaw.com>
**Cc:** rachel@morrinlawoffice.com; Marcia Ridings <marcia@hmrkylaw.com>; charliewalden@projects.filevine.com
**Subject:** Re: Walden Rule 35 Examination

Hi Jay,

Just bumping this up in your inbox to remind you Mr. Walden is cooperating to reach an agreement on the Rule 35 Adverse Medical Examination. I want to be respectful of your time and your busy schedule, but thought the reminder might be helpful.

Thank you,

Rob



**Robert A. Morrin**

Morrin Law Office
214 West Main Street
Richmond, KY 40475
859-358-0300 p
859-972-0813 f
www.MorrinLawOffice.com

***Learn about us!***



***We  Referrals!***



<u>**Statement of Confidentiality**</u>:
**This communication contains information which is confidential. It is for the exclusive use of the intended recipient(s). If you are not the intended recipient(s) please note that any form of distribution, copying, forwarding or use of this communication or the information therein is strictly prohibited and may be unlawful. If you have received this communication in error please notify the sender, delete the communication, and destroy any copies.**

On Thu, Mar 14, 2024 at 2:11 AM Robert Morrin <morrinlaw@gmail.com> wrote:

> Hi Jay,
>
> Unfortunately, I was not able to respond on the timeline requested by your client. This was not intentional so please take no offense.
>
> Respectfully, my client is entitled to know the tests intended to be performed on him and your imagination of what the examinations might consist of is insufficient. My client is entitled to know if the Defendants in this matter are entitled to everything they are

requesting, and I can't even do my job without this information.

For time limitations on the examination, I don't think it's appropriate for Plaintiff's counsel to set that limitation. However, I think it's important to put a reasonable cap on how long the examination can run. Does Dr. Kriss have an estimate on the long end of the amount of time his tests will take?

As for the "good cause," I was simply asking what other 2020 injuries you were referring to that were more serious than Mr. Walden's injuries sustained in this unfortunate collision? If I need to clarify then I'm glad to do so.

Regarding the questioning, respectfully, Dr. Kriss is a physician hired by an adverse party. It's not an independent examination if there's a standing relation between the physician and Defendant or Defendant's counsel and the physician knows who is paying his invoice. That is the main difference between the questioning of Dr. Kriss and Dr. Changaris and Dr. Wilson. As long as the questioning remains relevant to Mr. Walden's physical health and condition then that should be fine. Is the questioning going to be conducted by Dr. Kriss or a physician assistant? I think there's some authority to support having an assistant, someone other than the actual examining physician, conduct any questioning. I can find those cases if you'd like or we could just agree to allow an assistant conduct the questioning?

I suppose it would be less concerning if your clients will agree to allow the examination to be video recorded? Please let me know if this is a term that can be agreed upon. It's included with the proposed terms attached hereto.

It's regrettable we have not reached agreement yet on this matter. Although to the Defendants this may seem like a routine, standard, prodding and poking of another Plaintiff. I can't do my job if the Defendants won't tell me the tests they want to conduct. I take this intrusive process very seriously. It will be a very uncomfortable process for my client to have yet another doctor, this time one hired by the Defense and who owes no hyppocratic duty to Mr. Walden, conduct yet another round of tests on him. He has been through a lot of tests, and much worse, since the collision; tests which were necessitated by the negligence of your clients. So please understand I mean no disrespect to you or your clients when I make sure I take time to do my job correctly by protecting my client who was forced into this bad situation at no fault of his own.

I am attempting to cooperate. If my response time or professional obligations are offensive to the Defendants then I certainly understand if you feel the need to file a motion.

Respectfully, I will not prioritize the sensitivities of the Defendants over the professional and thorough advocacy my injured client deserves.

Thank you,
Rob



**Robert A. Morrin**

Morrin Law Office
214 West Main Street
Richmond, KY 40475
859-358-0300 p
859-972-0813 f
www.MorrinLawOffice.com

***Learn about us!***



***We  Referrals!***



**Statement of Confidentiality**:
**This communication contains information which is confidential. It is for the exclusive use of the intended recipient(s). If you are not the intended recipient(s) please note that any form of distribution, copying, forwarding or use of this communication or the information therein is strictly prohibited and may be unlawful. If you have received this communication in error please notify the sender, delete the communication, and destroy any copies.**

On Mon, Mar 11, 2024 at 3:20 PM Jay Milby Ridings <jridings@hmrkylaw.com> wrote:

> Rob,
>
> Please note that Defendants **respectfully request a response by the close of business today**.
>
> Physical examination, range of motion testing, and mental status examinations are all standard examinations. As in all medical encounters, I am confident that the nature of the examination will be somewhat progressive in that the testing actually performed

will be dependent on the results of the prior test. (For example, if two tests designed to evaluate the same area are negative, the physician would be unlikely to perform a third test. If, on the other hand, one test is positive and one is negative, physician would likely perform a third or fourth.) At the end of the day, Dr. Kriss will be performing standard physical examination, range of motion testing, and mental status examination you have undoubtedly observed in virtually every other case involving allegations of neuro-related injuries. I imagine they will be similar to the examinations utilized by Dr. Changaris (DE 97-2) and Dr. Wilson (DE 97-1).

What do you propose regarding time limitations? How long were the respective examinations (including all testing) conducted by plaintiff's experts?

Regretfully, I don't know how to be any more detailed relating to "good cause," other than to point out that Walden is claiming injuries/symptoms which are similar to injuries/symptoms experienced prior to the subject accident. Defendants require an examination by qualified independent neurosurgeon to determine which injuries were caused (or not caused) by the subject accident, the extent (if any) of exacerbation or prior documented injuries/symptoms, the extent of past and future treatment (if any) caused by the accident, etc.

Verbal questions are required for many of the same reasons verbal questions were necessitated by the examinations conducted by Drs. Changaris and Wilson. See, e.g., Changaris Report of "Independent Medical Exam," DE 97-2 at p. 1 ("Current Reported Symptoms: He reported his current pain level is a 6-7/10 …. It is located in his …. He reported changes in his appetite, sleep, …. He reports having nightmares, flashbacks ….). See also, id. at p. 2 ("…normal mentation in terms of ideation and coherent thoughts. The words were clear …. Short-term memory was grossly intact …. The Hamilton Rating Scale for Depression (HAM-D) was completed …. The client reported prior history of depression …. MADRAS (sic) was completed …."). Deposition transcript would be woefully inadequate for a number of reasons. First, Walden's own experts had no such restrictions. Second, deposition transcript does not include the data or evidence necessary to conduct certain examinations required to properly evaluate and assess Walden's conditions. Third, many such examinations can only be conducted by first-hand observation of patient's responses and demeanor. Fourth, the transcript of Mr. Walden's January 2023 would not, by definition, account for any improvements or declines in Mr. Walden's condition. As demonstrated in Changaris' report, obtaining a subjective account of Walden's current symptoms, complaints, concerns, improvements, etc. is vitally important to evaluating his physical condition. An examination without any questioning would necessitate a far lengthier and invasive examination in that Dr Kriss would likely be required to complete an entire battery of testing, many of which would very likely be rendered entirely unnecessary by Walden's simple and quick oral responses to Dr Kriss' questions. By way of a purely generic example, an oral denial of any left-hand pain and/or numbness would eliminate the need for a great number of neurological tests that would otherwise be associated with diagnosing this type of injury. If, however, Plaintiff insists on a preclusion of questioning, Dr. Kriss would have to conduct a complete battery of tests far greater in scope than previously indicated.

Respectfully, I don't understand the difficulty of Defendants' request. This is a standard, straightforward, and typical examination and request. We are not seeking to

reinvent the wheel. Walden is claiming injuries, and I need a medical expert to perform a standard examination to assess his claims.

It has been two months since Defendants requested such an examination and these are issues that should have been addressed far sooner. With the CR 35 Exam scheduled in one month – and especially in light of Plaintiff's desire to proceed with trial post-haste – we respectfully ask that Plaintiff let us know his position by the close of business today so as to prevent any further delays. We first advised Plaintiff of the exam (and included payment for travel expenses) via correspondence to you dated 1/11/24. Having not received any response, mom followed on by email on 2/14/24 to "remind you of the IME of Mr. Walden with Dr. Kriss on April 12, 2024." It was not until two weeks later, late afternoon on 2/26, that Plaintiff finally responded by asking "what the scope of the examination will be and also the 'good cause' required to be demonstrated for the examination." I responded in detail to both inquiries the following evening, 2/27. In that same email, I requested at the outset, "please **advise at your earliest convenience if Plaintiff will voluntarily submit for the IME**." (emphasis in original). Having not received a response, I followed up with a reminder one week later (3/5 email). I followed up again two-days later (3/7 email). You responded the same day (3/7), advising that you "missed [my] previous emails somehow." You then inquired if I had been able to confirm with Dr Kriss as to whether the scope of his examination would be broader than previously outlined. ("I would like to get a complete scope of the proposed IME as my client will not be able to agree to an IME without a full understanding of what is being asked of him by the defense….I appreciate you attempting to cover the entire scope but if we can nail the entire scope down then I will be able to advise my client as to the same.") I responded within 7 minutes confirming that I was able to consult with Dr Kriss and that I was able to confirm that the scope of the exam would be consistent with that which was previously described. ("I was able to consult with Dr Kriss and receive confirmation that the scope of examination will **not** exceed that which is outlined in my prior email.)

That brings us to today. Having still not received a response, I attempted to reach you by phone at approximately 12:56 PM. When your office advised that you were not available, I requested that you contact me as soon as possible to discuss this case, and specifically, the urgent need for Plaintiff's response regarding the IME to attempt to resolve the issue without court intervention. I then received the below email from you 20 minutes later claiming a need for even more details related to the scope of the examination and other information that I respectfully submit is unrelated to the issue of "good cause." Whether Mr. Walden had 1 prior injury or 20 is not relevant to the absence of good cause – to the extent that is the basis of Plaintiff's objection. Respectfully, these are issues that should have been resolved far earlier and raising them now only serves to prejudice defendants. With the exam scheduled in one month, Defendants respectfully ask Plaintiff to advise if he will voluntarily submit to an IME consistent with that which is described in my 2/27 email. **We ask that Plaintiff respond by the close of business today**.
Jay

Jay Milby Ridings
Hamm, Milby & Ridings PLLC
120 N Main St
London, KY 40741
Ph: (606) 864-4126
jridings@hmrkylaw.com

**EXHIBIT 7, Page 11**

**From:** Robert Morrin <morrinlaw@gmail.com>
**Sent:** Monday, March 11, 2024 1:16 PM
**To:** Jay Milby Ridings <jridings@hmrkylaw.com>
**Cc:** rachel@morrinlawoffice.com; Marcia Ridings <marcia@hmrkylaw.com>;
charliewalden@projects.filevine.com
**Subject:** Re: Walden Rule 35 Examination

Hi Jay,

What does Dr. Kriss consider a Complete Physical examination, Complete Range of Motion testing, and Complete Mental Status examination? Thank you for providing the details of the Complete Neurological examination.

How long will Dr. Kriss need to perform the examination? I would like to put a limitation on the time.

I'm not sure I understand subsection 2 of your explanation of the Good Cause? Mind clarifying for me? What other injuries in 2020? To my knowledge, this is the only major injury event he experienced in 2020.

Please let me know why verbal questions are desired or necessary? I'm glad to provide Dr. Kriss with my client's deposition, if he doesn't already have it, whereby Mr. Walden provided answers to the questions mentioned in your email. Let me know if I'm mistaken.

Thank you,
Rob



**Robert A. Morrin**

Morrin Law Office
214 West Main Street
Richmond, KY 40475
859-358-0300 p
859-972-0813 f
www.MorrinLawOffice.com

***Learn about us!***

**EXHIBIT 7, Page 12**



*We  Referrals!*



Statement of Confidentiality:

**This communication contains information which is confidential. It is for the exclusive use of the intended recipient(s). If you are not the intended recipient(s) please note that any form of distribution, copying, forwarding or use of this communication or the information therein is strictly prohibited and may be unlawful. If you have received this communication in error please notify the sender, delete the communication, and destroy any copies.**

On Fri, Mar 8, 2024 at 12:43 PM Robert Morrin <morrinlaw@gmail.com> wrote:

> I did see that request. We have produced everything available. There's no recorded video or set of recorded data that has not been produced.
>
> Thanks,
> Rob

**Robert A. Morrin**

Morrin Law Office
214 West Main Street
Richmond, KY 40475
859-358-0300 p
859-972-0813 f
www.MorrinLawOffice.com

***Learn about us!***

*We  Referrals!*

**Statement of Confidentiality:**
**This communication contains information which is confidential. It is for the exclusive use of the intended recipient(s). If you are not the intended recipient(s) please note that any form of distribution, copying, forwarding or use of this communication or the information therein is strictly prohibited and may be unlawful. If you have received this communication in error please notify the sender, delete the communication, and destroy any copies.**

On Thu, Mar 7, 2024 at 5:15 PM Jay Milby Ridings <jridings@hmrkylaw.com> wrote:

> I was able to consult with Dr Kriss and receive confirmation that the scope of examination will **not** exceed that which is outlined in my prior email.
>
> Did you see my email requesting that Plaintiff supplement responses to RFPD. Specifically, we are requesting production of the full and complete posturography data and report utilized and interpreted by Dr. Changaris. Original email attached for your convenience.
>
> Jay
>
> Jay Milby Ridings
> Hamm, Milby & Ridings PLLC
> 120 N Main St
> London, KY 40741
> Ph: (606) 864-4126
> jridings@hmrkylaw.com
>
> ---
>
> **From:** Robert Morrin <morrinlaw@gmail.com>
> **Sent:** Thursday, March 7, 2024 5:08 PM
> **To:** Jay Milby Ridings <jridings@hmrkylaw.com>
> **Cc:** rachel@morrinlawoffice.com; Marcia Ridings <marcia@hmrkylaw.com>
> **Subject:** Re: Walden Rule 35 Examination
>
> Hi Jay,
>
> I missed your previous emails somehow. Have you been able to confer with Dr. Kriss? I would like to get a complete scope of the proposed IME as my client will not be able to agree to an IME without a full understanding of what is being asked of him by the defense. I noticed you mentioned a low standard to get a court to approve an IME. I appreciate you attempting to cover the entire scope but if we can nail the entire scope down then I will be able to advise my client as to the same.
>
> In the meantime, I will review what you have sent since I've only been able to review it on its face.
>
> Thank you,

Rob



**Robert A. Morrin**

Morrin Law Office
214 West Main Street
Richmond, KY 40475
859-358-0300 p
859-972-0813 f
[www.MorrinLawOffice.com](http://www.MorrinLawOffice.com)

***Learn about us!***

*We  Referrals!*

**Statement of Confidentiality**:
**This communication contains information which is confidential. It is for the exclusive use of the intended recipient(s). If you are not the intended recipient(s) please note that any form of distribution, copying, forwarding or use of this communication or the information therein is strictly prohibited and may be unlawful. If you have received this communication in error please notify the sender, delete the communication, and destroy any copies.**

On Thu, Mar 7, 2024 at 3:59 PM Jay Milby Ridings <[jridings@hmrkylaw.com](mailto:jridings@hmrkylaw.com)> wrote:

> Rob – Please respond to below emails. I tried calling your office just now but did not receive an answer and did not have the option to leave a voicemail.
>
> It would appear you are or have recently been in the office as I received notice of Plaintiff's filing of DE 112 within the last few minutes. As indicated in my original email, I am making every effort to resolve this matter without court intervention. If Plaintiff is not agreeable to attending IME, then please just let me know so that we can seek guidance from the Court.
>
> Thanks in advance.

Jay

Jay Milby Ridings
Hamm, Milby & Ridings PLLC
120 N Main St
London, KY 40741
Ph: (606) 864-4126
jridings@hmrkylaw.com

---

**From:** Jay Milby Ridings
**Sent:** Tuesday, March 5, 2024 12:34 PM
**To:** morrinlaw@gmail.com; rachel@morrinlawoffice.com
**Cc:** Marcia Ridings <marcia@hmrkylaw.com>
**Subject:** RE: Walden Rule 35 Examination
**Importance:** High

Hi, Rob.

Following up on below email. Please advise. Thank you in advance.

Jay

Jay Milby Ridings
Hamm, Milby & Ridings PLLC
120 N Main St
London, KY 40741
Ph: (606) 864-4126
jridings@hmrkylaw.com

---

**From:** Jay Milby Ridings
**Sent:** Tuesday, February 27, 2024 5:42 PM
**To:** morrinlaw@gmail.com; rachel@morrinlawoffice.com
**Cc:** Marcia Ridings <marcia@hmrkylaw.com>
**Subject:** RE: Walden Rule 35 Examination
**Importance:** High

Good evening, Rob.

Mom asked me to reply to your email, below. But before I forget, please **advise at your earliest convenience if Plaintiff will voluntarily submit for the IME** scheduled with Dr. Kriss on Friday, April 12, 2024, at 9:15 a.m. In addressing your questions I provided more detail than was likely necessary, all in an effort to 1) avoid unnecessary motion practice, and 2) simplify your ability to respond to my request. If possible, I would sincerely appreciate a response by tomorrow to allow Defendants an opportunity to file any necessary motions within the next week. Of course, if you have any questions or believe that additional information is required to respond to our request, please let me know and I will

attempt to provide same ASAP. Thanks in advance.

In response to your inquiries regarding the "scope of the examination" and an explanation of the "'good cause' required to be demonstrated for the examination," Defendants respond as follows:

**<u>Scope of Examination</u>**
Out of an abundance of caution, we will need to confer with Dr. Kriss regarding any <u>additional</u> examinations not identified herein, but the scope of the IME is likely to minimally consist of the following:

1. Standard Neurological and Physical Examination, including, but not limited to,

    a. Complete Physical examination
    b. Complete Neurological examination, including, <u>but not limited to,</u>

        i. Complete Range of Motion testing
        ii. Long tract signs (Babinski, Hoffman's, clonus, etc.)
        iii. Reflexes
        iv. Gait
        v. Electronic inclinometer with automatic sensing
        vi. Lehrmitte's sign
        vii. Spurling sign
        viii. Romberg sign
        ix. Phalen's sign
        x. Tinel's sign
        xi. Straight leg raise
        xii. Bilateral hip examination
        xiii. Patrick sign
        xiv. Greater trochanter examination
        xv. Bilateral shoulder examination
        xvi. Neer sign

**EXHIBIT 7, Page 17**

   xvii. Hawkins sign

   xviii. Nystagmus

   xix. Facial sensation

   xx. Air conduction

   c. Complete Mental Status examination

   d. Verbal inquiries relating to Plaintiff's current physical condition, pre-MVA physical condition, nature of improvements or declines in physical condition since subject MVA, mechanism of injuries regarding subject MVA and prior injury-related incidents/events, current medical treatment, medical treatment between subject MVA and date of IME, pre-MVA medical treatment, medication regiment (current, pre-MVA, period between MVA and IME), Occupational status (current and pre-MVA), pre-MVA medical history.

   e. All other testing/examinations, to the extent feasible, conducted by Plaintiff's experts as indicated or referenced in Plaintiff's Expert Disclosures (DE 97, DE 97-1, and DE 97-2)

**<u>Good Cause</u>**
I trust you are familiar with your client's prior medical history and treatment history since the accident. Respectfully, the good cause for the IME is independent established by Plaintiff's prior medical history, writ large. As further, albeit unnecessary, ground, Defendants cite to all of the following:

1. Limited treatment following discharge from initial hospital admission; especially when contrasted with any, or both, of 1) opinions expressed by Plaintiff's medical experts, and/or 2) Alleged future medical expenses and treatment
2. Plaintiff's 2020 injuries – which were even more significant than those alleged in this case.
3. Striking similarity of symptoms prior to subject MVA
4. Pre-MVA determination of total disability
5. 2011 MVA and corresponding injuries

   a. Alleged injuries not previously documented or referenced in Plaintiff's medical records, the first mention of which did not appear until the Plaintiff's expert disclosures. *See, e.g.*, most, but not all, of the "neurological injuries" discussed in Dr. Changaris' CR 26 Report. *Cf.* Plaintiff's medical records from DOL through date of Changaris' initial encounter.

6. Additionally, please refer to Defendants' Motion to Modify (DE 98), Reply (DE 100), and Response to Motion to Alter, Amend, Vacate (DE 109 and DE 111-1).

Out of an abundance of caution, please note that the above represents only a small sample set of the grounds Defendants would ultimately cite to demonstrate "good cause" in the event motion practice is necessary. With that said, I respectfully submit that the above easily satisfies CR 35's exceedingly low standard for demonstrating "good cause."

As noted at the beginning of this email, I would very much appreciate you letting us know as soon as possible if Plaintiff will voluntarily submit to the IME referenced above and in mom's correspondence of 1/11/24 and email of 2/14/24. As for scope, I propose that we proceed for now as if the scope will be consistent with that which is described above, with the understanding that Defendants' reserve the right to seek an expansion of the scope. If an expansion is necessary, it will hopefully entail something that we can resolve by agreement. To the extent an agreement cannot be reached regarding an expansion, the parties nevertheless agree that Defendants reserve the right to have the issue resolved by the Court.

Please let me know if you are agreeable, or, propose an alternative arrangement.

Also, pursuant to applicable FRCP and the Court's Local Rules, please allow this correspondence to serve as Defendants' good faith effort to resolve any IME issue without Court intervention. Additionally, but only to the limited extent Plaintiff is not agreeable to the proposals and requests detailed above, please provide dates and times you are available to discuss these issues by telephone.

Finally, when responding to this (or any other email re: the IME), please ensure that I am included in your response as mom will be out of the office much of the remaining week.

Sincerely,

Jay

Jay Milby Ridings
Hamm, Milby & Ridings PLLC
120 N Main St
London, KY 40741
Ph: (606) 864-4126
jridings@hmrkylaw.com

---

**From:** Robert Morrin <morrinlaw@gmail.com>
**Sent:** Monday, February 26, 2024 3:44 PM
**To:** Marcia Ridings <marcia@hmrkylaw.com>
**Cc:** Rachel Gaines <rachel@morrinlawoffice.com>;

charliewalden@projects.filevine.com

**Subject:** Walden Rule 35 Examination

Hi Marcia,

I know you expressed an interest in having Mr. Walden examined by a doctor hired by the defense in a Rule 35 Examination.

Will you please tell me what the scope of the examination will be and also the "good cause" required to be demonstrated for the examination?

I am working on some terms that will prevent any misunderstandings and I can get that to you as soon as we establish the scope and "good cause."

Thank you,
Rob



**Robert A. Morrin**

Morrin Law Office
214 West Main Street
Richmond, KY 40475
859-358-0300 p
859-972-0813 f
www.MorrinLawOffice.com

***Learn about us!***



***We  Referrals!***



<u>**Statement of Confidentiality:**</u>
**This communication contains information which is confidential. It is for the**

**EXHIBIT 7, Page 20**

exclusive use of the intended recipient(s). If you are not the intended recipient(s) please note that any form of distribution, copying, forwarding or use of this communication or the information therein is strictly prohibited and may be unlawful. If you have received this communication in error please notify the sender, delete the communication, and destroy any copies.