**EXHIBIT**

I

2007 WL 858834
Only the Westlaw citation is currently available.

Unpublished opinion. See KY ST
RCP Rule 76.28(4) before citing.

Supreme Court of Kentucky.

LEASEWAY MOTOR CO. TRANSPORT Appellant

v.

Jon CLINE, Hon. Richard M. Joiner, ALJ.
and Workers' Compensation Board Appellees

No. 2006-SC-0551-WC.
|
March 22, 2007.

**Synopsis**

**Background:** Workers' compensation claimant sought benefits for neck and lower back injuries. The administrative law judge (ALJ) awarded a period of temporary total disability that was followed by a permanent partial disability, he found that the claimant had a 16% permanent impairment rating and that the 2001 injury was a substantial cause, and he refused to exclude any of the impairment when calculating the award. Employer appealed. The Workers' Compensation Board vacated and remanded. On remand the ALJ refused to exclude any impairment. Employer appealed. The Board affirmed. Employer appealed. The Court of Appeals affirmed. Employer appealed.

**Holding:** The Supreme Court held that claimant's impairment rating did not have to be reduced for any pre-injury impairment from prior injuries.

Affirmed.

Appeal from Court of Appeals 2005-CA-2591-WC.
Workers' Compensation No. 01-82763.

**Attorneys and Law Firms**

Hon. Kamp T. Purdy, Ferreri & Fogle, Lexington, KY, for Appellant, Leaseway Motor Co. Transport.

Miller Kent ... arter & Michael Lucas, PLLC, Pikeville, KY, for Appellee, Jon Cline.

MEMORANDUM OPINION OF THE COURT

*AFFIRMING*

**\*1** An Administrative Law Judge (ALJ) refused to exclude any impairment when determining the claimant's disability rating, reasoning that the employer offered no credible evidence that an impairment determined under the AMA *Guides to the Evaluation of Permanent Impairment* (*Guides*) existed before the injury. The Workers' Compensation Board (Board) and the Court of Appeals affirmed. Appealing, the employer asserts that the ALJ's decision was not supported by substantial evidence and that *Kentucky River Enterprises, Inc. v. Elkins,* 107 S.W.3d 206 (Ky.2003), requires an ALJ to rely on a physician's testimony when determining than an impairment rating is erroneous. Because *Elkins* does not preclude an ALJ from consulting the *Guides* when determining the credibility of medical evidence and because the ALJ's conclusion was reasonable, we affirm.

The claimant was born in 1947, completed the ninth grade, and received a GED in 1981. On May 17, 2001, he sustained the work-related neck and lower back injuries that are the subject of this appeal. He had driven tractor-trailers for the defendant-employer since 1985 and testified that he had sustained three previous work-related injuries. He missed three months' work after falling and fracturing some ribs in 1985, and his neck had bothered him a little ever since. In 1988, he fell flat on his back and bruised his ribs. He acknowledged that his neck hurt all the time after the 1988 injury but stated that his pain was much more severe after the 2001 injury. In 1992 or 1993, he hit his tailbone and missed one or two months' work. He returned to work after each of the previous injuries and did not file a workers' compensation claim.

The claimant testified that he had experienced constant pain in his neck and shoulders since the 2001 injury. He also experienced throbbing and swelling in his neck, numbness in his arms, and lower back pain that radiated into his right leg and toe. He stated that he had difficulty driving, had not worked since the injury, and received social security disability benefits.

Although the employer raised the exclusion of prior, active disability as an issue, it failed to submit any medical records concerning the treatment that the claimant received for his previous injuries. The record did contain numerous reports regarding his condition after the May 17, 2001, injury. Three physicians addressed his permanent impairment rating and its cause.

In December, 2002, Dr. Bachwitt evaluated the claimant. Stating that the claimant had reached maximum medical improvement (MMI), he assigned a 5% whole-person impairment to the lumbar spine and a 5% whole-person impairment to the cervical spine, for a combined permanent impairment rating of 10%. He attributed the impairment to the 2001 injury. Dr. Bachwitt imposed no restrictions and thought that the claimant could return to his former work.

In July, 2003, Dr. Bachwitt evaluated the claimant again for the employer. He diagnosed subjective complaints of pain, with a lengthy history of multiple injuries. In his opinion, the claimant's "current symptomatology" did not all result from the 2001 injury. A good deal was pre-existing as were the degenerative changes seen on x-ray. He now thought that the 2001 injury caused only a transient aggravation of the previous injuries and anticipated no permanent impairment. He also thought that the claimant could perform sedentary and light work. A disclaimer near the end of the report indicated that any pre-injury impairment for the same body part should be deducted from the impairment that was assigned after the injury.

 **\*2** In June, 2004, Dr. Kriss evaluated the claimant for the employer. He determined that the claimant sustained a work-related harmful change due to the 2001 accident but that it was only a component of his overall impairment. Using the Fifth Edition of the *Guides*, he assigned an 8% whole-body impairment to the lumbar spine under DRE category II (page 384, Table 15-3) and an 8% whole-body impairment for the cervical spine under DRE category II (page 392, Table 15-5), for a combined permanent impairment rating of 16%. Because he found no evidence of symptom magnification, Dr. Kriss considered the claimant's narrative history of neck and back pain to be a reliable means for apportioning causation. Relying on the claimant's description of the quality and quantity of his pain over time, he apportioned the ultimate impairment

rather than determining the impairment that existed immediately before the 2001 accident and subtracting it from the ultimate impairment. As a result, he apportioned a 2% lumbar impairment and a 2% cervical impairment to the 1988 injury, a 2% lumbar impairment and a 2% cervical impairment to the 1992/1994 injury, a 2% lumbar impairment and a 2% cervical impairment to the 2001 injury, and 2% lumbar and 2% cervical impairment "to ongoing naturally degenerative processes from 1988 onward." In his opinion, the claimant should be restricted from lifting more than 30 pounds, from frequent repetitive bending or twisting at the waist, from overhead work, from awkward climbing or crawling, and from his work as a truck driver.

In July, 2004, Dr. Rapier evaluated the claimant on his own behalf. In his opinion, three strains to the neck and lower back (1988, 1992, and 2001) had aggravated a pre-existing, dormant degenerative disc disease. He found no significant radiculopathy. Dr. Rapier used the range of motion model in the Fifth Edition of the *Guides* to determine impairment rather than the DRE model, explaining that there had been more than one significant injury to the same area of the spine. He assigned a 21% combined whole-body impairment, indicating that he would apportion it equally among the three injuries. He restricted the claimant from repetitive/frequent bending, lifting, turning, and twisting and from being subjected to numerous vibrations, jars, and jolts. In his opinion, the claimant did not retain the physical capacity to return to his work as a truck driver.

The ALJ determined that the claimant could perform sedentary and light work and awarded a period of temporary total disability that was followed by a permanent partial disability. Relying on Dr. Kriss, the ALJ found that the claimant had a 16% permanent impairment rating under the AMA *Guides* and that the 2001 injury was a substantial cause. The ALJ refused to exclude any of the impairment when calculating the award, reasoning that there were pre-existing symptoms but no evidence of pre-existing impairment. The ALJ also noted that KRS 342.730(1)(e) excluded impairment for non-work-related disabilities and previously-compensated disabilities but did not exclude impairment from prior work-related but uncompensated injuries.

**\*3** The employer's petition for reconsideration asserted that it was patent error not to exclude the impairment that Dr. Kriss apportioned to the prior injuries, to ignore that the statute of limitations had run on any claim for the prior injuries, and to consider the prior injuries to be work-related. After it was denied, the employer appealed. Convinced that the ALJ misapplied the law, the Board vacated the decision.

On remand, the ALJ determined that the evidence did not establish that an impairment determined under the AMA *Guides* existed before the 2001 injury. Dr. Kriss did not determine what AMA impairment existed immediately before the 2001 injury, nor did Dr. Rapier or Dr. Batchwitt. Left with a credible 16% impairment of which the 2001 injury was a proximate cause and with no credible evidence of a pre-existing impairment that was assigned in accordance with the *Guides,* the ALJ refused again to exclude any of the impairment. Again, the employer appealed.

Affirming, the Board determined that the evidence did not compel a decision in the employer's favor. It noted that an ALJ may reject even uncontradicted medical evidence by providing a reasonable explanation for doing so. Reasoning that impairment is a medical question, that the *Guides* contain a method for determining pre-existing impairment, that none of the physicians had followed that method, and that Dr. Kriss had acknowledged that his method for apportioning impairment might well be viewed as being "arbitrary," the Board concluded that it was within the ALJ's authority to disregard the evidence that supported an exclusion. Concurring in result only, one member expressed the view that the definitions found in KRS 342.0011(11)(b), (35), and (36) require the calculation of partial disability to be based an impairment rating that is determined under the *Guides,* regardless of whether the impairment directly results from the claimed injury or from a previous event or condition.

Since 1996, Chapter 342 has based partial disability awards on a permanent impairment rating as determined under the AMA *Guides.* For that reason, we noted in *Roberts Brothers Coal Co. v. Robinson,* 113 S.W.3d 181, 183 (Ky.2003), that "[a]n exclusion from a partial disability award must be based upon a pre-existing impairment." *McNutt Construction First General Services v. Scott,* 40 S.W.3d 854, 859 (Ky.2001), determined that when work-related trauma arouses a previously dormant

condition and results in impairment, the harmful change is compensable. In other words, despite the abolition of Special Fund apportionment, "disability which results from the arousal of a prior, dormant condition by a work-related injury remains compensable under the 1996 Act." *Id. Roark v. Alva Coal Corporation,* 371 S.W.2d 856 (Ky.1963) and its progeny explain that the burden is on an injured worker to prove every element of a claim, including work-related causation and the extent of disability. When a worker offers substantial evidence that work-related trauma has caused a harmful change in the human organism and resulted in a permanent impairment rating, the burden shifts to the employer to offer more convincing evidence that some or all of the impairment is not compensable.

**\*4** Under KRS 342.285, an ALJ's decision is "conclusive and binding as to all questions of fact," and the Board "shall not substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact." Therefore, the ALJ has the sole discretion to determine the quality, character, and substance of evidence. *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418 (Ky.1985). An ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Caudill v. Maloney's Discount Stores,* 560 S.W.2d 15, 16 (Ky.1977). If a party with the burden of proof prevails before the ALJ, the decision must be affirmed if it is reasonable under the evidence. But if that party fails to convince the finder of fact, its burden on appeal is to show that the favorable evidence was so overwhelming as to compel a favorable finding. In other words, it must show that no reasonable person would have failed to be convinced by the evidence. *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky.1986).

*Kentucky River Enterprises, Inc. v. Elkins, supra,* determined that the proper interpretation of the *Guides* is a medical question, including the amount of impairment that they would permit at certain points in time. Although assigning a permanent impairment rating is a matter for medical experts, determining the weight and character of medical testimony and drawing reasonable inferences from it are matters for the ALJ. *Elkins* does not preclude an ALJ from consulting the *Guides* to determine the credibility of medical evidence when deciding whether to rely upon a particular physician's testimony and, if so, to what extent.

Case: 5:22-cv-00238-KKC-EBA   Doc #: 119-9   Filed: 03/26/24   Page: 4 of 4 - Page ID#: 830

There was substantial evidence that the claimant sustained a work-related neck and back injury in 2001. There was also substantial evidence that the injury resulted in a permanent impairment rating based on the neck and back and that the impairment rating at MMI was 16%. As the party seeking to have to a portion of the impairment excluded when calculating the disability rating, it was the employer's burden to prove that the injury would not have caused a 16% impairment and to prove the amount of impairment that existed immediately before it occurred.

The claimant admitted that he experienced pain after the previous injuries but emphasized that he continued to work until after the 2001 injury. The record contained no medical evidence dating to before the 2001 injury. Based on the claimant's description of his various injuries and symptoms, Dr. Kriss apportioned the ultimate impairment equally among the three injuries and a degenerative process but acknowledged that his method "[might] seem a bit arbitrary." Dr. Rapier offered no rationale for apportioning the impairment equally among the three injuries. Neither referred to the method set forth in the *Guides*. The ALJ accepted Dr. Kriss' testimony regarding the claimant's current permanent impairment rating but determined that no physician had calculated the amount of impairment that existed immediately before the injury in accordance with the *Guides*. Therefore, no physician's opinion regarding pre-existing impairment was credible.

**\*5** Chapter 342 requires a worker's disability rating to be based on a permanent impairment rating that is determined under the *Guides*. As noted by the Board, the *Guides* contain a method to separate pre-existing impairment from ultimate impairment. It requires the impairments to be calculated separately and requires the pre-injury impairment to be subtracted from the post-injury impairment. Although Drs. Kriss and Rapier referred to specific provisions in the *Guides* when assigning the ultimate impairment, neither did so when estimating the claimant's pre-existing impairment. Under the circumstances, it was both reasonable and within the ALJ's authority to conclude that their estimates were not credible evidence of the impairment that existed immediately before the injury and to conclude that the employer failed to meet its burden of proof. No medical evidence compelled a different finding.

The decision of the Court of Appeals is affirmed.

LAMBERT, C.J., and CUNNINGHAM, MINTON, NOBLE, SCHRODER, and SCOTT, JJ., concur. MCANULTY, J., not sitting.

**All Citations**

Not Reported in S.W.3d, 2007 WL 858834

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.