UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CASE NO. 5:22-cv-00238-KKC

CHARLES L. WALDEN,                                                        PLAINTIFF,

VS.

ENTERPRISE SERVICES GROUP, LLC,
CLARENCE M. HOWARD,
NATIONAL INDEMNITY GROUP OF INSURANCE
COMPANIES OR NATIONAL INDEMNITY COMPANY,
VINCE KLINE, AND
PROGRESSIVE CASUALTY INSURANCE COMPANY,                   DEFENDANTS.

**RESPONSE TO MOTION FOR SANCTIONS**

Come the Defendants, Clarence M. Howard ("Howard") and Enterprise Services Group, LLC ("Enterprise), by counsel, and for their Response to Plaintiff's Motion for Sanctions (R. 112), state as follows:

In his first attempt to obtain default by technicality,[1] Plaintiff struck out swinging.[2] Now, in his final at-bat, Plaintiff continues to swing for the fences,[3] although this time with even less focus, bat speed, and strength than before. In seeking monumental and extraordinary relief without citation to a single relevant precedent in support of same, Plaintiff comes to the plate seeking to hit a grand slam without a single runner on base. Last, but not least, is the misleading context in which Plaintiff seeks to frame the issue. Plaintiff seeks to punish unmistakably innocent and unpreventable non-attendance, by capitalizing on a Rule inherently designed to address purely

---

[1] S*ee* R. 105, Motion to Strike Defendant Howard's Responses to the Plaintiff's Requests for Admissions.
[2] *See* R. 114, Order overruling Motion to Strike.
[3] *See* R. 112, Motion for Sanctions.

willful and intentional misconduct. Just as a batter is prohibited from obtaining a free base when intentionally being "touched by a pitched ball,"[4] so too is Plaintiff prohibited from capitalizing on Howard's absence from a deposition noticed by Plaintiff with full knowledge that Howard would not (and could not) attend.

**I.  Unconvincing Liability – STRIKE ONE!**

Fully aware of the substantial weaknesses in the merits of his claim, Plaintiff continues to rely exclusively on a strategy designed to capitalize on a purely procedural and non-substantive technicality. Plaintiff seeks a ruling "prohibit[ing] [Howard] from raising defenses, asserting claims, or introducing evidence in this matter," (R. 112-2, Proposed Order), based on nothing more than Howard's failure to attend a deposition of which Howard had no notice, in a case where Howard has never been personally served and likely doesn't even know exists. In fairness, Plaintiff was well within his rights to delay initiating this action until the literal eve of the two-year statute of limitations. Whereas Howard resides outside of Kentucky, Plaintiff's reliance on KRS § 454.210(3)(a)(3) to achieve service via the Kentucky Secretary of State was likewise permissible under Kentucky law. That said, the combination of this delay and Kentucky's authorization of technical service without actual service (or notice) resulted in litigation against Defendants that cannot be located. To date, neither Howard nor Enterprise has received actual service of the summons or notice of the pending litigation. *See* **Exhibit A**, CourtNet Docket History, obtained March 25, 2024. Despite exhaustive efforts, including the retention of a private investigator, neither the undersigned counsel nor Enterprise's liability carrier have been able to locate or communicate with Howard or Enterprise.

---

[4] MAJOR LEAGUE BASEBALL, *Official Baseball Rules, Rule 5.05(b)(2)* (2023 Ed.), https://img.mlbstatic.com/mlb-images/image/upload/mlb/wqn5ah4c3qtivwx3jatm.pdf.

2

Fortunately, the existence of an abundance of objective physical evidence ultimately rendered Howard's assistance unnecessary to defend this action.[5] This evidence, simply put, demonstrates that Plaintiff bears the overwhelming majority, if not all, of the fault for this collision.

Around midnight on August 10, 2020, Plaintiff, while traveling on the Northbound exit ramp of Exit 87 on I-75, smashed into the rear of Howard's disabled box-truck parked on the right edge emergency lane of the ramp. *See* **Exhibit B**, Collision Report; **Exhibit C**,[6] Excerpts from Preliminary Collision Analysis Report, Eddie Crum, Crum Investigations, March 3, 2023. A portion (approximately three feet) of Howard's truck was across the fog line and in the traveled portion of the roadway. Stating that he was "tired and did not see Unit 2 [Walden] parked on the edge of the ramp," or the reflective warning triangles Walden placed behind the disabled truck, "Unit 1 [Plaintiff] struck the rear of Unit 2 [Walden]." **Exhibit B** at p. 2.

At all relevant times, Plaintiff had an unobstructed field of vision for the distance provided by his headlamps on dim. **Exhibit C** at p. 11. Nor were weather conditions a factor as Plaintiff testified there was no rain or fog. **Exhibit D**, Excerpts of Plaintiff Deposition at p. 40. Accounting for the relevant widths and locations of the roadway and Howard's truck, Plaintiff had approximately eight (8) feet of maneuvering clearance to avoid the collision. **Exhibit C** at p. 10. Remarkably, Plaintiff testified that he did not even observe Howard's truck until he was within ten (10) feet away. **Exhibit D** at p. 40. This is so despite the presence of not only reflective warning triangles but also activated highway lamps providing lighting. **Exhibit B** at p. 1 ("Light Condition: 05 – Dark – Hwy Lighted/On"). And Plaintiff concedes, as he must, that he had more than

---

[5] At worst, Howard's inability to participate could only serve to benefit Plaintiff such that Defendants are essentially limited to presenting objective, physical evidence collected or documented at the scene.

[6] Portions of Mr. Crum's Preliminary Report have been redacted on account of ongoing revisions and updates. In accordance with this Court's Amended Order (R. 103), Mr. Crum's final Report will be produced on or before May 15, 2024.

sufficient space to avoid the collision. **Exhibit D** at pp. 38-39. Whether the result of fatigue, inattention, or a combination of both, this collision would not have occurred but for Plaintiff's failure to exercise reasonable care "by keep[ing] a lookout ahead for other . . . vehicles in front of him or so near his intended line of travel as to be in danger of collision[.]" Palmore and Cetrulo, Kentucky Instructions to Juries, Civil § 16.30, Instruction 1(a).

Instead, Plaintiff:

> failed to recognize the closing distance of his vehicle and the parked Enterprise Freightliner until approximately 10 feet prior to the impact event. This would be consistent with the reported statement of fatigue by the investigating officer or some type of inattention. If [Plaintiff] had perceived and reacted to the Enterprise Freightliner in a time frame that would have allowed an avoidance maneuver prior to the impact event, [Plaintiff] would have had the lateral distance to avoid the collision. This is represented in the following demonstrative diagrams prepared from the site visit and the police photographs[:]



Demonstrative diagram of the collision event using the available evidence.

4



Demonstrative diagram of measurements and possible clearance path of the Walden Vehicle.

**Exhibit C** at pp. 12-13.

## II. <u>Manufactured Claims of Prejudice – STRIKE TWO!!</u>

Both Plaintiff's motion and the very deposition transcript on which the entire motion is predicated completely refutes Plaintiff's feigned claims of prejudice. Plaintiff has known, from the outset, that Howard has never received actual summons or notice of the instant litigation, that Howard could not be located despite intensive efforts to do so, and, most importantly, that Howard could not possibly attend a deposition of which he had no notice. *See* R. 112, Motion for Sanctions at p. 2; *see also* **Exhibit E**, Collection of email communications discussing lack of communication with Howard ("As I've told Mr. Morrin[,] I've not been able to contact Mr. Howard." M. Ridings, 8/28/23; "I'd still like to set a deposition." R. Morrin, 8/29/23; "I want to remind you [] that I have

5

been unable to reach Mr. Howard from the outset of this case and do not expect him to appear." M. Ridings, 9/11/23); and **Exhibit F**, Excerpts from billing statements reflecting contemporaneous notes of phone calls with Plaintiff's counsel in December 2022.

Fully aware that Howard would be unable to attend any deposition on account of the impossibility of providing actual notice of same, Plaintiff nevertheless elected to proceed with scheduling Howard's deposition. Plaintiff scheduled Howard's deposition for October 11, 2023, at Plaintiff's attorney's office. *See* R. 112-1, Motion for Sanctions, Exhibit A. Even under these circumstances, Defendants paid the costs associated with the noticed deposition. *Id.* at p. 2 ("Ms. Ridings: . . . I did advise the Plaintiff's attorney that I did not anticipate that Mr. Howard would appear, and that I have agreed to pay the costs of this deposition.").

Simply put, Plaintiff did not suffer any prejudice as the result of Howard's absence from a deposition Plaintiff knew Howard could not attend. Nor does Plaintiff seek to identify such prejudice. In the off chance some unidentified and inconsequential prejudice does exist, it was ultimately the result of Plaintiff's own making.

### III.   Lack of Authority Supporting Second Request for Relief Recently Rejected by This Court – STRIKE THREE!!!

Perhaps most remarkable is Plaintiff's failure to identify relevant precedent or authority supporting his request for the severest of sanctions. This is especially so considering that this marks the second instance in the same number of months wherein Plaintiff has requested such relief. *Cf.* R. 105 and R. 105-1 (moving to deem requests admitted on broad range of subject matters, including, but not limited to, liability, causation, comparative fault, damages, defenses, etc.) *with* R. 112 and R. 112-2 (requesting blanket prohibition precluding Howard from "raising defenses, asserting claims, or introducing evidence in this matter."). This Court not only refused to grant the

6

"harsh sanction" requested by Plaintiff, but literally approved the "appropriate[ness]" of the very actions of which Plaintiff complained. *See* R. 114, Order at p. 3.

Just as it did two weeks earlier, so too here should the Court reject Plaintiff's unsubstantiated request to sanction indisputably innocent and unpreventable conduct. Sanctions, by definition, are inherently designed to punish willful and intentional misconduct. Much like his first motion, Plaintiff fails to identify a single instance of conduct warranting any form of sanction, let alone the draconian relief specifically sought by Plaintiff.

WHEREFORE, for these reasons, Defendants respectfully request that this Honorable Court deny Plaintiff's Motion for Sanctions.

Respectfully submitted,

HAMM, MILBY & RIDINGS, PLLC
120 NORTH MAIN STREET
LONDON, KY 40741
PHONE: 606-864-4126
FAX: 606-878-8144
EMAIL: marcia@hmrkylaw.com
EMAIL: jridings@hmrkylaw.com
ATTORNEYS FOR DEFENDANTS,
ENTERPRISE SERVICES GROUP, LLC AND
CLARENCE M. HOWARD

By: /s/ Jay Ridings
    JAY MILBY RIDINGS

CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of March, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Jay Ridings
COUNSEL FOR DEFENDANTS, ENTERPRISE
SERVICES GROUP, LLC and CLARENCE M.
HOWARD

7