Case: 5:22-cv-00238-KKC-EBA  Doc #: 129-7  Filed: (2009)  Page: 1 of 5 - Page ID#: 962

Russell County Hosp. v. Price, Not Reported in S.W. Rptr. (2009)

EXHIBIT
G

2009 WL 1108854

2009 WL 1108854
Only the Westlaw citation is currently available.

Unpublished opinion. See KY
ST RAP Rule 41 before citing.

Supreme Court of Kentucky.

RUSSELL COUNTY HOSPITAL, Appellant

v.

Anita PRICE; Honorable John B.
Coleman, Administrative Law Judge; and
Workers' Compensation Board, Appellees.

No. 2008–SC–000545–WC
|
April 23, 2009.

**Synopsis**
**Background:** Workers' compensation claimant sought benefits for a back injury. An administrative law judge (ALJ) awarded claimant income and medical benefits. Employer appealed. The Workers' Compensation Board affirmed. Employer appealed. The Court of Appeals, 2008 WL 2640098, affirmed. Employer appealed.

**Holdings:** The Supreme Court held that:

evidence supported finding that claimant sustained a work-related back injury, and

evidence supported finding that claimant provided timely notice of her back injury to employer.

Affirmed.

On Appeal from Court of Appeals, Case No.2007–CA–001190–WC; Workers' Compensation Board No. 05–66296.

**Attorneys and Law Firms**

Gregory Lonzo Little, Ferreri & Fogle, PLLC, Lexington, KY, for appellant, Russell County Hospital.

Ben Thomas Haydon, Jr., Bardstown, KY, for appellee, Anita C. Price.

**MEMORANDUM OPINION OF THE COURT**

*1 An Administrative Law Judge (ALJ) awarded the claimant income and medical benefits for a work-related back injury. The Workers' Compensation Board and the Court of Appeals affirmed. Appealing, the employer argues that the ALJ erred by finding that the claimant sustained an injury and gave timely notice and also by basing the finding of causation on testimony from physicians who received an incomplete medical history. We affirm because substantial evidence supported the disputed findings and the employer has failed to show a legal error.

The claimant had a history of back complaints when Russell County Hospital hired her in March 2005 as a Licensed Practical Nurse. She had been treated for complaints of low back pain since at least 2000 and had been diagnosed with degenerative disc disease. Records of the Office of Workers' Claims indicated that she had reported work-related low back injuries in 2000, 2002, and 2003, during previous employments. The claimant testified that she never filed a formal workers' compensation claim but did receive voluntary temporary total disability (TTD) and medical benefits. Her symptoms always resolved with physical therapy, after which she returned to full duty.

The present injury occurred on May 25, 2005. The claimant testified that she felt an immediate onset of low back pain while helping a co-worker lift a patient near the end of her shift. She did not tell anyone at the time because she thought that the pain would abate with rest. Her symptoms worsened, however, and she could not get out of bed to see Dr. Horn until June 1, 2005.

Addressing the question of notice, the claimant testified that she worked the third shift and that her supervisor, Lori Antle, worked the first shift. She called Antle when her pain worsened throughout the day of the injury. Unable to reach her, the claimant left a message that she had hurt her back and would not be able to work that night. She reached Antle the next day, informed her of the injury and her inability to work, but did not say what she was doing when she was injured because Antle did not ask. She stated that Antle was new at her position, so she reminded her of the need to file an accident report.

Russell County Hosp. v. Price, Not Reported in S.W. Rptr. (2009)

2009 WL 1108854

Case: 5:22-cv-00238-KKC-EBA   Doc #: 129-7   Filed: 04/19/24   Page: 2 of 5 - Page ID#: 963

The claimant testified that she contacted her previous employer's insurance carrier and learned that her previous claim was still open, so she informed Antle that she did not need to file a new claim but did ask her to prepare an accident report. She explained that she did not realize she needed to file a new claim for her present back complaints because the previous one was open. The previous employer's carrier paid TTD and medical benefits until September 2005, then asserted that she had sustained a new work-related injury. When she learned that her present employer had not filed a first report of injury, the claimant telephoned Antle again to request an accident report.

Ms. Antle offered a different version of the events. She testified that the claimant informed her that she would be unable to work for the next few nights due to back pain but failed to mention the alleged incident. Antle asked specifically if she had injured her back at work and reminded her of the need to complete a timely workers' compensation form if applicable, but the claimant replied that she did not know. When Antle next spoke with the claimant on June 9, 2005, she reported that she had been diagnosed with several ruptured discs and would be off work indefinitely but did not attribute her condition to a work-related injury. Antle stated that on June 13, 2005, and in September 2005 she advised the claimant to speak to the individuals who handled the hospital's workers' compensation claims. The claimant notified the hospital of the alleged injury on September 13, 2005, and signed the first report of injury ten days later.

**\*2** The claimant's personnel file contained a November 11, 2005, letter in which Antle stated that the claimant had asked about workers' compensation on or about June 13, 2005. Antle indicated that she had informed the claimant that it was probably too late and reminded her that they had discussed the topic previously. She noted that workers' compensation forms had not been completed earlier because the claimant had an open claim against a previous employer that she thought would cover her.

Dr. Horn had treated the claimant in 2000 and 2002 for episodes of acute low back pain that she attributed to lifting patients at work. He saw her again for complaints of low back pain in February 2004, at which time he took her off work and advised her to avoid heavy lifting for a couple of weeks. She returned on June 1, 2005, with a recurrent acute lumbar strain. He noted that she "was at work on the 25th & doesn't really know exactly what she did. The following morning

she could not get up out of bed." An MRI revealed three herniated lumbar discs. Dr. Horn noted on June 17, 2005, that the claimant "needs verification from me which is not clear in my initial note that she injured her back while at work." After summarizing the MRI findings, he stated, "This is definitely a work related injury related to helping to lift & pull a patient up in bed while at work." In a November 2005 letter to the hospital's insurance carrier, he attempted to clarify his June 1 note that the claimant did not know how the injury occurred. He stated that his intent had been to imply that she did not know the exact mechanism of the injury rather than that she did not know if it occurred at work.

Dr. Tibbs evaluated the claimant in January 2006, at Dr. Horn's request. He noted a history of a 2002 back injury that caused the claimant to miss work for six months but thought it medically probable that she had recovered. He explained that she returned to work after a course of physical therapy and worked without restrictions until May 25, 2005, when she injured her back while lifting a patient and developed recurrent back pain. He did not recommend surgery.

Dr. Barefoot evaluated the claimant in May 2006. He received a history of the May 25, 2005, injury as well as a history of being diagnosed with bulging discs three years earlier, after lifting a patient at work. He diagnosed lumbar degenerative disc disease and noted that physical examination revealed muscle wasting in the left calf, a poor ability to squat, and diminished lumbar range of motion. He compared MRIs from 2003 and after June 2005, noting significant changes. Dr. Barefoot placed the claimant in DRE lumbar category III and assigned a 12% permanent impairment rating. Noting that the claimant worked without restrictions until after the 2005 injury, he considered the pre-existing degenerative disc disease to be a dormant, non-disabling, inactive condition and attributed the entire impairment rating to the injury.

**\*3** Dr. Kriss evaluated the claimant in June 2006. He thought it clear that she had always recovered fully from the previous episodes of low back pain and that she experienced no active symptoms immediately before May 25, 2005, but stated that the sudden onset of acute low back pain could occur either naturally or from a work-related injury. Thus, determining the cause of her complaints depended on the credibility of Dr. Horn's note and subsequent letter to the carrier versus Ms. Antle's testimony. Dr. Kriss attributed her ongoing symptoms to naturally-occurring degenerative disc disease and thought that the May 2005 injury caused, at most, a temporary exacerbation of her pre-existing degenerative disc

disease, which ended when she reached maximum medical improvement on November 25, 2005.

The contested issues included notice, causation, whether the claimant sustained an injury as defined in KRS 342.0011(1), whether any injury caused a temporary exacerbation or permanent harm, and the extent of any preexisting active impairment or disability. The hospital attacked the claimant's credibility. It argued that she attempted to manufacture the present claim in September 2005 after the statute of limitations ran on the claim from her previous employment through which she had received medical treatment.

Finding the claimant's explanation of her actions to be "very believable," the ALJ concluded that she sustained a work-related injury on May 25, 2005, and gave timely notice. The ALJ reasoned that she had experienced previous back strains and did not know which employer would be liable for the June 2005 incident because she did not know whether she sustained a new injury or simply exacerbated a previous injury. The ALJ determined that the injury produced a 12% permanent impairment rating, none of which was active before the injury occurred. Explaining the decision, the ALJ noted that the claimant had injured her back in October 2002, exacerbated that injury for about six months in 2003, and also experienced acute back pain in February 2004, at which time an MRI revealed three bulging discs. Nonetheless, she was able to work without difficulty until May 25, 2005, after which an MRI revealed three herniated discs.

Having failed to convince the Board or the Court of Appeals, the employer continues to argue that the ALJ erred by finding that the claimant sustained an injury and gave timely notice and also by basing the finding that the injury caused permanent impairment on testimony from physicians who received an incomplete medical history. We conclude, however, that the ALJ summarized the conflicting evidence accurately, exercised the authority conferred by KRS 342.285 to choose which evidence to rely upon, and provided a sufficient rationale for the conclusions of law. We affirm the ALJ's legal conclusions because they are supported by substantial evidence[1] and based upon a correct application of the law.

Attacking the finding that the claimant sustained an injury as defined by KRS 342.0011(1), the employer maintains that the ALJ erred by inferring causation from the claimant's testimony and Dr. Horn's treatment note from June 1, 2005, given the claimant's history of treatment for previous

back complaints. The employer argues that under such circumstances "whether a work-related 'injury' occurred is exclusively within the province of medical experts." We disagree.

**\*4** Whether the claimant sustained an "injury" for the purposes of Chapter 342 is a legal conclusion that is based, in part, on medical evidence. KRS 342.0011(1) defines the term "injury" as being a "work-related traumatic event ... which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings." Regardless of the claimant's history of previous back complaints, her "very credible" testimony constituted substantial evidence of a work-related traumatic event on May 25, 2005, i.e., an immediate onset of low back pain while helping to lift a patient. Dr. Horn's note of June 1, 2005, contained objective medical findings to support his initial diagnosis of a harmful change, i.e., a recurrent acute lumbar strain. Moreover, a subsequent MRI provided objective medical findings of three herniated lumbar discs. His note of June 1, 2005, both alone and in concert with his subsequent clarifications, provided substantial evidence of a causal connection between the traumatic event and the harmful changes.

The employer asserts that the ALJ erred by applying the cumulative trauma standard when finding that the claimant gave timely notice rather than the standard for a specific injury. It argues that KRS 342.185(1) requires notice to be given as soon as practicable and that notice would not have been timely even if given on June 13, 2005. Again, we disagree.

KRS 342.185 requires notice of a work-related "accident" to be given "as soon as practicable after the happening thereof." Although KRS 342.190 requires an injured worker to provide notice of the time, place, nature, and cause of the accident as well as a description of the nature and extent of any resulting injury, KRS 342.200 states that an inaccuracy in complying with KRS 342.190 shall not render notice "invalid or insufficient ... unless it is shown that the employer was in fact misled to his injury thereby." Moreover, KRS 342.200 permits a delay in giving notice to be excused if the employer "had knowledge of the injury" or if the delay was due to mistake or other reasonable cause. When read in concert, these statutes permit the facts and circumstances to determine whether notice is given as soon as practicable.[2]

Case: 5:22-cv-00238-KKC-EBA   Doc #: 129-7   Filed: 04/19/24   Page: 4 of 5 - Page ID#: 965

**Russell County Hosp. v. Price, Not Reported in S.W. Rptr. (2009)**
2009 WL 1108854

The notice provisions have remained substantially the same since the inception of the Kentucky Workers' Compensation Act. As early as 1919, the Court explained that receiving notice of an injury as soon as practicable enables an employer to investigate its cause, nature and extent and to take whatever action it deems advisable to protect his interest. The court concluded, however, that "Where the claim is meritorious and the employer has not been prejudiced by the delay, the want of mistake or reasonable cause that would be sufficient to excuse the giving of notice sooner should be very convincing, to authorize the rejection of the claim."[3]

This case does not involve a misapplication of the cumulative trauma standard to a specific traumatic incident. The ALJ determined under KRS 342.200 that the circumstances excused the claimant's delay notifying her employer that her back complaints related to her work. The ALJ found the claimant's explanation of her conversations with Ms. Antle and the reasons for her actions to be "very believable." Moreover, the ALJ found that the parties discussed "the occurrence of a work injury much sooner than the defendant-employer indicates," noting that the letter placed in the claimant's personnel file confirmed that she and Ms. Antle had discussed the matter by June 13, 2005. Despite the employer's assertions, it has pointed to nothing that shows the finding of timely notice to be unreasonable or the product of a legal error.

**\*5** The employer's final argument concerns whether effects of the May 25, 2005, accident warranted a permanent impairment rating or represented only a temporary exacerbation of her pre-existing back condition.[4] Relying on *Cepero v. Fabricated Metals Corp.,* 132 S.W.3d 839 (Ky.2004), the employer asserts that the ALJ erred by relying on testimony by Drs. Tibbs and Barefoot regarding causation because they received an incomplete history of the claimant's previous back condition. The argument lacks merit.

*Cepero* holds that a medical opinion regarding causation that is based on a substantially inaccurate or incomplete medical history and unsupported by any other credible evidence cannot constitute substantial evidence. It does not disqualify medical testimony simply because the testifying physician failed to review all of a worker's pre-injury medical records or to receive an all-inclusive history. In *Cepero* the worker misled a medical evaluator by characterizing as "no big deal" a previous injury that required him to use a wheelchair for two months and that would not have resolved without surgery that was not performed. This is not such a case.

As the Board noted, Dr. Barefoot's note regarding the history that he received is open to more than one interpretation. All of the testifying physicians received a history of previous injury and were able to compare the MRIs performed in 2003 and after May 25, 2005. Nothing indicated that the herniations present in 2005 existed before the incident at work. Moreover, all of the physicians thought it significant that the claimant was working without restrictions until the May 2005 injury. Although Dr. Kriss disagreed regarding the cause of the claimant's present complaints and permanent impairment, his testimony did not compel a different result.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.

**All Citations**

Not Reported in S.W. Rptr., 2009 WL 1108854

## Footnotes

1    *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky.1986) (a finding for the party with the burden of proof must be affirmed if it is supported by substantial evidence, in other words, if it is reasonable).

2    *Mark Blackburn Brick Company v. Yates,* 424 S.W.2d 814 (Ky.1968).

3    *Bates & Rogers Construction Co. v. Allen,* Ky., 183 Ky. 815, 210 S.W. 467, 472–74 (1919). *See also Harlan Fuel Co. v. Burkhart,* Ky., 296 S.W.2d 722 (1956) (purposes of notice requirement are to enable employer to investigate promptly and mitigate damages).

4    *Robertson v. United Parcel Service,* 64 S.W.3d 284, 287 (Ky.2001).

**Russell County Hosp. v. Price, Not Reported in S.W. Rptr. (2009)**

2009 WL 1108854

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---