2009 WL 2708120
Only the Westlaw citation is currently available.

Unpublished opinion. See KY ST RAP Rule 41 before citing.

NOT TO BE PUBLISHED
Court of Appeals of Kentucky.

HITACHI AUTOMOTIVE PRODUCTS USA, INC., Appellant

v.

Carroll A. SANDERS; Hon. Chris Davis, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2009–CA–000014–WC.
|
Aug. 28, 2009.

Petition for Review of a Decision of the Workers' Compensation Board, Action No. WC–07–97114.

**Attorneys and Law Firms**

Timothy J. Walker, Lexington, KY, for appellant.

McKinnley Morgan, London, KY, for appellee.

Before CAPERTON, KELLER, and LAMBERT, Judges.

OPINION

KELLER, Judge.

*1 Hitachi Automotive Products USA, Inc. (Hitachi), appeals from the opinion of the Workers' Compensation Board (the Board), affirming the Administrative Law Judge's (ALJ), opinion and award of benefits to the employee, Carroll Sanders (Sanders). On appeal, Hitachi asserts that there is not substantial evidence to support the ALJ's finding that the injury was work related. For the following reasons, we affirm.

FACTS

The following is a summary of the evidence contained in the record.

*A. Sanders's Testimony*

Sanders testified by deposition on January 7, 2008, and at the hearing held on March 31, 2008. Sanders is a fifty-two-year-old woman with a 12th grade education. She has no vocational or technical school training. She has past work experience as a waitress, cashier, clerk, machine operator, and factory worker. Sanders began working for Hitachi in May 2000 and continued working there until the date of her injury.

Sanders's last job at Hitachi was on the 87 line which produces electronic throttle bodies for automobiles. Her job required her to stand for approximately 10 hours a day. Sanders was on the last part of the line, in which she unloaded pallets one at a time, filled them with the nine required parts, checked the pallet and then reached across the line and pulled another pallet to the table and repeated the process. Sanders testified that on January 23, 2007, she was on the last part of the line when one of her coworkers from the warehouse brought the pallets out to her station. Two of the pallets were jammed together. Sanders testified that she forcibly tried to separate the two pallets when she felt a sharp burning pain down her back and into her leg. The intensity of the pain almost caused her to fall to the ground. Sanders immediately called for her lead person, who got her supervisor, Debbie Owens (Owens), and Sanders explained to Owens what happened. Then Sanders sat and rested for a period of time. When Sanders's pain continued, she informed Owens that she needed to go home and because of this, Sanders was unable to finish her shift.

Sanders initially sought treatment from her primary care physician, Dr. Rick Angel. He prescribed pain medicine and referred her to a chiropractor for physical therapy. Next, Sanders went to see Dr. Brian Wentz. After treatment with Dr. Wentz did not help, Dr. Angel referred Sanders to Dr. Lockstadt. While seeing Dr. Lockstadt, Sanders underwent various tests, injections and eventually two surgeries.

Sanders testified that she continues to have pain in her lower back that radiates down her right leg. Typically the pain stops near her knee, but the pain occasionally radiates into her big toe and the toe next to it. Sitting, standing, and walking make her condition worse. Sanders testified that the pain affects and/or prevents her from doing daily activities such as grocery

shopping, cooking, washing dishes, driving, and sleeping. Sanders testified that she takes pain medications, but that she is never absolutely pain free. During her testimony, Sanders stated that she believed she could not return to any type of work at that time.

 *2  Sanders testified she was involved in a motor vehicle accident in 2002 and injured her neck and back. She stated that her injuries from this accident resolved, and she was able to perform her full duties with Hitachi until her injury on January 23, 2007. Sanders frequently worked overtime and testified that she had never been discipline or criticized regarding her job performance. She testified that occasionally she had back pain prior to this injury, but it was not disabling. Since June 2007, Sanders has received long term disability benefits, in the amount of $1,271.69 each month.

*B. Dr. Rick Angel*

Hitachi submitted as evidence medical records from Dr. Rick Angel, Sanders's primary care physician. Hitachi filed Dr. Angel's medical records as evidence that Sanders had a pre-existing back injury. The medical records document treatment from August 2002 through January 30, 2007. As to be expected with primary care physicians' records, there are numerous notations not associated with a low back injury. Since September 2002, Sanders had been consistently diagnosed with severe bronchitis and related mid-back pain. She was prescribed various medications including antibiotics for her bronchitis. Notably, Dr. Angel first prescribed Sanders Lortab on July 28, 2006, to treat pain associated with severe bronchial spasms. When the prescription expired, Dr. Angel, on January 30, 2007, refilled the prescription for Sanders indicating SI[1] dysfunction as well as bronchitis in her medical records.

Furthermore, Dr. Angel examined Sanders in September 2002 for mid-back pain that radiated into her right hip, along with pain between her shoulder blades, due to a motor vehicle accident. Dr. Angel diagnosed Sanders with a thoracic strain. In a letter dated August 13, 2003, Dr. Angel stated that the thoracic strain was a direct result of the motor vehicle accident and that Sanders had no permanent restrictions. Dr. Angel examined Sanders in May 2004 for lower and mid-back pain due to slipping on a mat at work and falling backwards into a machine. Dr. Angel diagnosed her with a lumbar strain.

As evidenced above, there is mention of back pain in the medical records, notably Dr. Angel's diagnosis of thoracic strain and severe lumbar strain. The records contain no diagnosis of a herniated disc, no evidence of neurological defects, no referral to physical therapy, and no surgical referral related to low back pain prior to the date of the work injury.

*C. Dr. Brian Wentz*

Sanders attached Dr. Wentz's medical records to her Application for Resolution of Benefits. Dr. Wentz examined Sanders on January 31, 2007, for treatment of lower back pain and occasional neck pain and headaches. Sanders reported that the symptoms began the previous week and had been getting worse. Dr. Wentz also noted that the pain was associated with her bronchitis. Sanders reported she did a lot of twisting motions at work and had noticed a dull burn in her lower back. She described the pain as constant, sharp, throbbing, aching and burning. Sanders reported her pain was an 8 out of 10. Dr. Wentz restricted Sanders from working and began treating her for facet irritation; SI dysfunction; lumbosacral dysfunction; and a lumbar disc problem or possible nerve root irritation.

*D. Dr. Harry Lockstadt*

 *3  Sanders submitted as evidence Dr. Lockstadt's operative reports. On August 7, 2007, Dr. Lockstadt performed a discogram and discectomy of L4–5 due to Sanders's L4–5 disc herniation with annular tear. On December 5, 2007, Dr. Lockstadt performed a L4–5 posterior interbody fusion.

*E. Dr. Michael Heilig*

Sanders submitted as evidence a Form 107 medical report of Dr. Michael Heilig. At the request of Sanders's attorney, Dr. Heilig performed an independent medical examination on December 3, 2007. His examination took place after Sanders's discectomy, but before her fusion. Dr. Heilig's narrative report begins by stating, "Ms. Carroll Sanders is a 52 year-old female who sustained a work-related injury while working at Hitachi on January 23, 2007. Ms. Sanders stated that while working, two pallets were stuck together and she was pulling to try to separate them when she felt something 'give' in her back. She had immediate pain." Dr. Heilig noted that

Sanders's job involves a great deal of twisting, bending, and lifting. Sanders denied any previous problems with her back. She stated that the discectomy helped somewhat, but not significantly, and she continued to have persistent pain in the lower back extending into her legs, with the left greater than right. He further noted she was scheduled to have a lumbar fusion of L4–5 in December 2007, and was currently off duty. After reviewing medical records, taking a history, and performing an examination, Dr. Heilig diagnosed Sanders with degenerative disk disease of the lumbar spine with radiculopathy. Dr. Heilig agreed with her off duty status at the time of the exam. He assigned Sanders a permanent whole person impairment rating of 23% due to her persistent symptoms, positive MRI study, loss of range of motion, and surgery.

To supplement his narrative report, Dr. Heilig partially completed a Form 107, in which sections that were dictated in his narrative report were omitted. In pertinent part, Dr. Heilig left the causation section blank, but Dr. Heilig checked the relevant box indicating that Sanders did not have an active impairment prior to this injury.

*F. Dr. Timothy Kriss*

Hitachi submitted as evidence the medical reports from Dr. Timothy Kriss. At the request of the Defendant, Dr. Kriss performed an independent medical examination on Sanders on March 17, 2008. Sanders explained to Dr. Kriss the events of January 23, 2007. She stated that two of the pallets delivered to her station were stuck together and as she tried to pry them apart, she had immediate lower back pain as well as right leg pain. The pain was so severe and so sudden that she almost fell to her knees. During the examination, Sanders had current complaints of low-back pain, right shoulder pain and right arm pain. Sanders acknowledged a motor vehicle accident in 2002, but stated that she completely recovered from that incident. She stated that her back pain started on January 23, 2007.

Dr. Kriss's examination revealed the following: normal reflexes; limited lumbar rotation; normal motor and sensory skills; no muscle spasm or atrophy; no radicular pain; and limited hip range of motion. Dr. Kriss also noted Waddell-type signs of symptom magnification present during his examination. After reviewing Sanders's medical records, taking a history from Sanders and performing an examination, Dr. Kriss diagnosed Sanders with chronic thoracolumbar pain as a result of her lumbar discectomy and lumbar interbody fusion. He also stated that Sanders does not have lumbar radiculopathy and that she has symptom magnification.

 *4 Further, Dr. Kriss questioned the causation of Sanders's back pain for numerous reasons including: her pre-existing history and treatment of lower and mid-back pain associated with her almost never-ending bronchitis; her delay in seeking treatment from a doctor immediately after the incident on January 23, 2007; her failure to mention the work injury when she finally sought treatment; and the fact that her physician did not alter her pain medications following the injury. Dr. Kriss stated that Sanders's current lumbar impairment should be assigned to her pre-existing active conditions of thoracolumbar arthritis, spondylosis, and degenerative disk disease which are all chronically and severely aggravated by her constant bronchitis and continued smoking.

Dr. Kriss assigned Sanders a 20% whole person impairment rating. He stated that it was not related to any work injury, but to Sanders's pre-existing condition. He further noted that she does not require any work restrictions. Dr. Kriss went on to say that at most, the events of January 23, 2007, were a temporary musculoskeletal strain that did not cause any permanent harmful change to Sanders. Lastly, Dr. Kriss stated that neither of the two surgeries were medically reasonable or necessary.

THE ALJ'S OPINION

After considering all the evidence, the ALJ found that Sanders suffered a work related injury. The ALJ noted that there was sufficient evidence that the work injury occurred, that timely notice was given and that Sanders had surgery. Based on the totality of Dr. Angel's and Dr. Wentz's medical records, the ALJ stated that Sanders's prior low-back problems did not result in substantial absences from work, were never diagnosed as surgical in nature, and never required treatment in the form of physical therapy. Further, the ALJ noted that the prescriptions for Lortab may have masked the symptoms of the injury for up to a week until Sanders sought medical treatment. The ALJ determined, based on the records of Dr. Angel, the opinion of Dr. Heilig and Sanders's testimony, that there was no pre-existing, active condition and that Sanders suffered a work-related injury on January 23, 2007. The ALJ while acknowledging Dr. Kriss's report disagreed with Dr. Kriss's opinion that Sanders's medical history prior to the work-related injury was positive for significant or permanent

low-back problems. Dr. Kriss's opinion to the contrary not withstanding, the ALJ determined that both surgeries were reasonable and necessary and related to Sanders's work-related injury. The ALJ adopted Dr. Kriss's 20% impairment rating. Further, the ALJ noted that no physician of record had assigned Sanders with any permanent restrictions following her surgery. The ALJ awarded Sanders "permanent total [sic] disability[2]" benefits and temporary total disability benefits based on her impairment rating. Further, the ALJ awarded Sanders reasonable and necessary medical expenses, excluding any past or present medical expenses for narcotic pain medication or chiropractic visits.

STANDARD OF REVIEW

**\*5** When reviewing one of the Board's decisions, this Court will only reverse the Board when it has overlooked or misconstrued controlling law or so flagrantly erred in evaluating the evidence that it has caused gross injustice. *Western Baptist Hospital v. Kelly,* 827 S.W.2d 685, 687–88 (Ky.1992). In order to review the Board's decision, we must review the ALJ's decision because the ALJ, as fact finder, has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence. *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418, 419 (Ky.1985). In reaching his decision, the ALJ is free to choose to believe or disbelieve parts of the evidence from the total proof, no matter which party offered it. *Brockway v. Rockwell International,* 907 S.W.2d 166, 169 (Ky.App.1995). The question on appeal is whether there was substantial evidence of probative value to support the ALJ's conclusion. *Wolf Creek Collieries v. Crum,* 673 S.W.2d 735 (Ky.App.1984). Substantial evidence is defined as evidence of relevant consequence, having the fitness to induce conviction in the minds of reasonable people. *Smyzer v. B.F. Goodrich Chemical Co.,* 474 S.W.2d 367 (Ky.1971). With the preceding standards in mind, we will address the issue raised by Hitachi.

ANALYSIS

Hitachi argues that there is not substantial evidence to support the ALJ's finding of a work injury. First, Hitachi argues that the record contains no expert opinion stating that Sanders's condition was a result of the work-related injury. Specifically, Hitachi points to the fact that Dr. Heilig did not check the box in his Form 107 indicating an opinion on causation. Second, Hitachi argues that Sanders had previous medical history regarding back problems, indicating a pre-existing condition. Third, Hitachi points out that Sanders had a one-week delay in seeking treatment for the alleged injury, and that the medical records of Dr. Angel and Dr. Wentz did not describe the alleged incident because Sanders never specifically told them about it. Fourth, Hitachi argues there is no expert testimony that establishes that Sanders's back condition was worse because of a work-related injury. Lastly, Hitachi argues that there is no medical evidence to support that Sanders's current condition was caused by the work-injury.

Sanders acknowledged that Dr. Heilig did not check the "right" box on his Form 107. However, Sanders points to the fact that Dr. Heilig began his report by stating that "Ms. Carroll Sanders is a 52–year–old female who sustained a work-related injury while working at Hitachi on January 23, 2007." Sanders notes that the report doesn't say, "Ms. Sanders tells me ..." or "Ms. Sanders allegedly sustained ...". Further, Sanders points to the fact Dr. Heilig checked the box on his Form 107 that indicated that Sanders had no active impairment prior to the work-related injury. Lastly, Sanders states that when looking at Dr. Heilig's report and Form 107 as a whole, it is clear Sanders's condition is solely the result of her January 23, 2007, injury.

**\*6** The Board affirmed the ALJ's opinion that there was substantial evidence to support the finding that Sanders had no pre-existing, active condition and that the current injury was work-related. As the Board noted, the ALJ supported his findings with the medical records of Dr. Angel and Dr. Wentz, as well as Sanders's own testimony. The Board acknowledged that the ALJ determined that Sanders's prior low back history was not significant because the majority of her treatment was related to Sanders's chronic bronchitis and it was not within the lumbar area. Further, the Board noted that it was significant that Sanders immediately reported the incident to her supervisor. The Board determined that the record clearly does not compel a finding of a prior active impairment. The Board stated that the ALJ was well within his authority in finding that the injury was indeed work-related and that it caused Sanders's need for surgery. The Board stated that the ALJ could conclude based on the totality of the evidence that following the work incident, Sanders's low-back condition was different in nature and severity. Further, the Board noted that prior to Sanders's work injury, there was no indication of a prior disc problem; that her low-back problem was surgical in nature; that she required extensive absences from work; or that she needed physical therapy. Lastly, the Board noted that

no doctor had assessed an impairment rating for Sanders prior to the work injury.

The Board did not overlook or misconstrue controlling law or so flagrantly err in evaluating the evidence to cause a gross injustice. *Western Baptist Hospital v. Kelly,* 827 S.W.2d 685, 687–88 (Ky.1992). We agree with the Board and hold that Dr. Heilig's report, Sanders's testimony, and other medical documentation constituted substantial evidence of probative value to support the ALJ's finding that Sanders suffered a work-related injury or was significant evidence to induce conviction in the minds of reasonable people that Sanders suffered a work-related injury. *See Wolf Creek Collieries v. Crum,* 673 S.W.2d 735 (Ky.App.1984). *Smyzer v. B.F. Goodrich Chemical Co.,* 474 S.W.2d 367 (Ky.1971).

CONCLUSION

For the foregoing reasons, we hold the ALJ's finding that Sanders did suffer a work-related injury is supported by substantial evidence and the evidence does not compel a finding to the contrary; a contrary result or a different result. Therefore, we affirm.

ALL CONCUR.

**All Citations**

Not Reported in S.W.3d, 2009 WL 2708120

Footnotes

1      The record does not define SI. However, this Court believes it refers to the sacro-iliac.

2      Although the ALJ wrote in his opinion that he was awarding Sanders a permanent total disability, it is clear from the record that he awarded Sanders permanent partial disability.

**End of Document**      © 2024 Thomson Reuters. No claim to original U.S. Government Works.