UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| CHARLES L. WALDEN ) | |
| ) | |
| Plaintiff, ) | **CASE NO. 5:22-CV-00238-KKC** |
| ) | |
| VS. ) | **RESPONSE TO EMERGENCY** |
| ) | **MOTION FOR RELIEF** |
| ) | **and** |
| ENTERPRISE SERVICES GROUP, LLC, ) | **SUPPLEMENTAL BRIEF IN SUPPORT** |
| *et al.* ) | **OF MOTION TO COMPEL CR 35** |
| ) | **EXAMINATION** |
| Defendants. ) | |
| ) | |

Defendants Enterprise Services Group, LLC, and Clarence M. Howard (collectively, "Defendants"), by counsel, for their Response to Plaintiff's Emergency Motion for Relief (R. 123)[1] and for their supplemental brief in further support of their Motion to Compel CR 35 Exam (R. 115),[2] respond as follows:

### I. PROCEDURAL POSTURE

Defendants expended exhaustive efforts to comply with Plaintiff's constantly evolving demands (*See* R. 115-7, Email chain between counsel) relating to the April 12, 2024, medical examination Defendants scheduled in mid-January. *See* **Exhibit A**, Jan. 11, 2024, Correspondence to R. Morrin. Coming to terms with the impossibility of satisfying Plaintiff's never-ending demands and with the examination date fast approaching, Defendants were left with no other

---

[1] The overwhelming majority of Plaintiff's motion focused on Plaintiff's compliance with Judge Adkins' Order (R. 122) compelling Plaintiff to attend a CR 35 examination **on April 12, 2024** – an issue rendered moot by this Court's Order (R. 124) holding that Plaintiff "need not appear for an Independent Medical Examination set for TOMORROW, April 12, 2024." Plaintiff did, however, include one new argument in the concluding paragraphs of his Emergency Motion which seeks to apply a South Carolina Court of Appeals' interpretation of a provision contained in South Carolina's version of Rule 35 which is **not** included in Rule 35 of the Federal or Kentucky Rules of Civil Procedure. *See* R. 123 at pp. 3-4. Defendants have therefore briefly addressed this single component of Plaintiff's Emergency Motion.

[2] *See* R. 125, Order.

option than to file their Emergency Motion to Compel CR 35 Examination and Motion for Expedited Briefing (R. 115, filed on March 22, 2024). Three days later, Magistrate Judge Adkins entered an Order (R. 117) and Amended Order (R. 118) granting Defendants' Motion for Expedited Briefing and setting a Response deadline "no later than the close of business on March 26, 2024." *Id.* Plaintiff responded the evening of March 26, 2024. *See* R. 119. Defendants' Motion (R. 115) and Plaintiff's Response (R. 119) were promptly submitted to Judge Adkins' Chambers the following morning, March 27. *See* **Exhibit B**, Clerk's Email Notification of Submission.

At 3:52 PM on April 11, Judge Adkins entered a seven-page Order (R. 122) granting Defendants' Emergency Motion in its entirety and compelling Plaintiff to appear for and participate in the CR 35 examination scheduled with Dr. Kriss the following morning. In so doing, Judge Adkins explicitly found "the nature of this action demonstrates that Walden has placed his mental and physical conditions in controversy because Walden's claims are mental and physical in nature." *Id.* at p. 3. In support of this factual determination, Judge Adkins noted that "[Plaintiff] seeks damages for temporary and permanent injuries including physical and mental pain and anguish, loss of enjoyment of life, loss of earning capacity, and medical expenses, and therefore, has placed his mental and physical condition in controversy." *Id.* Judge Adkins then proceeded to consider, and subsequently reject, each of Plaintiff's objections. Finding that Defendants provided "a detailed list of the examinations to be performed by the examining physician and identified the various topics that the examining physician will question Walden about," Judge Adkins resoundingly rejected Plaintiff's argument that Defendants failed to demonstrate "good cause" "because Defendants have not shown 'why the specific examinations requested are necessary' and did not include the 'actual specifics of the examinations requested.'" *Id.* (*citing* R. 119, Plaintiff's Response at p. 6).

Each of Plaintiff's remaining arguments suffered the same fate. *See, e.g.*, *id.* at pp. 3-4 ("this court has repeatedly held [that] defendants are not precluded from conducting its own examination under Rule 35 simply because they had deposed Plaintiff and [] received discovery material detailing […] history and medical status.") (internal citations and quotations omitted). *See also*, *id.* at pp. 4-5 (finding that Plaintiff failed to demonstrate that Dr. Kriss "holds a bias or prejudice against him in this action," especially in light of Plaintiff's primary reliance on a decision expressly overruled by the Kentucky Supreme Court). Finally, Judge Adkins considered and ultimately rejected each of the ten conditions Plaintiff demanded be imposed on the examination. *Id.* at p. 6 ("Walden's interest in having the examination recorded is outweighed by the Defendants' interest in not having the examination disrupted by a recording device or observer. *See id.*[3] Walden has no right under Rule 35 or binding precedent to record the examination and the instant situation presents no special circumstances to warrant recording the examination"); *id.* ("As for Walden's additional requests, he does not provide any argument or supporting case law for why the Court should adopt his requests.")

Less than one hour following the entry of Judge Adkins' Order, Plaintiff informed Defendants of his failure to make the necessary transportation arrangements required by the drug rehab facility at which Plaintiff has received in-patient treatment over the preceding months. *See* **Exhibit C**, Email Communication of April 11 at 4:33 PM. Nearly one hour later, Plaintiff advised that he had successfully located a private company that could provide transportation, but that he was unwilling to pay the costs associated with same. *See* **Exhibit D**, Email Communication of April 11 at 5:22 PM. As a result, and notwithstanding Judge Adkins' Order compelling Plaintiff to participate in the CR 35 Examination scheduled months earlier, Plaintiff filed an Emergency

---

[3] *French v. Clarksville Stave and Lumber Co., Ltd.*, 2013 WL 12177008, at *3 (Jan. 22, 2013) (citing *Stefan v. Trinity Trucking, LLC*, 275 F.R.D. 248 (N.D. Ohio 2011))

Motion for Relief requesting to be excused from complying with Judge Adkins' Order. *See* R. 123. In support of this request, Plaintiff represented that "no one [from the rehab facility] was available to make the all-day commitment," and that Plaintiff "has no method of transportation to attend this Exam." *Id.* at p. 3. Curiously, Plaintiff's Emergency Motion conveniently neglected to mention the private transportation readily available to Plaintiff.[4]

At 7:20 PM, this Court partially granted Plaintiff's Emergency Motion "to the extent that he requests an order from the Court that he need not appear for an Independent Medical Examination set for TOMORROW, APRIL 12, 2024." *See* R. 124. The Court deferred ruling on the remaining component of Plaintiff's motion asking this Court to set aside the entirety of Judge Adkins' Order compelling Plaintiff to attend the CR 35 Exam. *Id.*; s*ee also* R. 123 at pp. 3-4.

Thereafter, this Court directed "to the extent either party wants to submit further briefing on Defendants' Motion to Compel a Rule 35 Examination (DE [115]), they must do so by April 19, 2024. Thereafter the Court will either schedule a hearing on the matter or issue a ruling." Order, R. 125.

## II.    STANDARD OF REVIEW

Because Judge Adkins' Order (R. 123) compelling Plaintiff's participation in the CR 35 examination resolved a pretrial and non-dispositive motion, the clearly erroneous or contrary-to-law standard under Fed. R. Civ. Pro. 72(a) applies to this Court's review of same. *See Vogel v. U.S. Office Products Co.*, 258 F.3d 509, 515 (6th Cir. 2001) ("The district court can reconsider a magistrate judge's nondispositive order 'where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.'") (citation omitted).

---

[4] Even if Plaintiff had not located private transportation at the time of filing of his Emergency Motion, Plaintiff had more than ample opportunity to alert the Court of this fact prior to the entry of this Court's Order (R. 124) at least two hours after Plaintiff's discovery.

4

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "The question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw." *Heights Community Congress Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). Thus, instead of substituting its own conclusion, this Court considers whether there is evidence in the record to support Judge Adkins' findings and whether his "construction of that evidence is a reasonable one." *Id.*

### III. JUDGE ATKINS' FINDINGS AND CONCLUSIONS WERE BASED ON UNDISPUTED EVIDENCE AND BINDING PRECEDENT

Following binding Supreme Court precedent, Judge Atkins rightfully found that Plaintiff's mental and physical conditions are directly "in controversy." Considering that Judge Atkins' finding relies on *the* very case upon which much of Plaintiff's opposition is founded – *Schlagenhauf v. Holder*, 379 U.S. 104 (1964) – said finding was assuredly not clearly erroneous. *Cf.* R. 122, Order at p. 3 *with* R. 119, Response at pp. 2-6. With respect to the issue of "good cause," Plaintiff's Response by and large repeated Plaintiff's arguments relating to the "in controversy" component of the analysis. As for the single distinct objection raised by Plaintiff on this issue, Judge Atkins correctly reiterated the irrefutable fact that "Defendants did provide a detailed list of the examinations to be performed by the examining physician and identified the various topics that the examining physician will question Walden about." R. 122 at p. 3. Regarding Plaintiff's third objection, Judge Atkins demonstrated the absurdity in Plaintiff's unsupported, and seemingly conflicting arguments, that Dr. Kriss should be precluded from conducting any repeat exams simply because they were conducted in the past (regardless of when performed), R. 119 at p. 6, only to argue in the next breath that Dr. Kriss is precluded from administering tests that have

5

never been conducted. Id. at p. 7. The myriad of cases cited by Judge Atkins systematically refute Plaintiff's unsupported contentions on both fronts. *See* R. 122 at pp. 3-4. Citing Plaintiff's primary, albeit patently improper, reliance on a holding expressly overruled by the Kentucky Supreme Court, Judge Atkins' finding that Plaintiff failed to "demonstrate that Dr. Kriss has biases against claimants and plaintiffs with traumatic brain injuries," *id.* at p. 7, was emphatically correct.

1. <u>Plaintiff's mental and physical condition are directly in controversy.</u>

Not once in the body of his Response purporting to address the "in controversy" requirement does Plaintiff cite a single precedent or other legal authority in support of his position. However, other sections of Plaintiff's Response briefly allude to this issue by selectively citing Schlagenhauf v. Holder, 379 U.S. 104 (1964) for the following proposition:

> To be successful on a Motion to Compel a Rule 35 Exam, the movant must show that "the condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id.* at 118. A mere showing of relevancy is insufficient to establish "good cause." *Id.* In addition, the court should consider whether the desired information can be obtained by means other than an IME. *Id.*

R. 119, Response at p. 5. True enough. But what Plaintiff intentionally disregards, and what Judge Atkins painstakingly explained, is that

> "A plaintiff in a negligence action who asserts mental or physical injury…places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." [*Schlagenhauf*] at 119.

R. 122 at p. 1. Against that backdrop, Judge Atkins rightly found,

> [A]s in *Schlagenhauf*, the nature of this action demonstrates that Walden has placed his mental and physical conditions in controversy because Walden's claims are mental and physical in nature. Walden seeks damages for temporary and permanent injuries including physical and mental pain and anguish, loss of enjoyment

6

> of life, loss of earning capacity, and medical expenses, and therefore, has placed his mental and physical condition in controversy.

R. 122 at p. 3.

Not only was Judge Atkins' finding correct that Plaintiff's mental and physical condition are directly in controversy, but it was also quite likely bound by precedent established in precisely the same case upon which Plaintiff's principal argument relied.

In his Amended Response (R. 129), Plaintiff contends, without one iota of legal support, that this Court is prohibited from determining if Plaintiff's mental and physical conditions are in controversy unless "Defendants are seriously contesting **every** injury reported at the emergency department . . . ." *Id.* at p. 4. Plaintiff then asserts, again without authority, that "the Court should include in its Order that the Defendants may not later claim any other condition not specifically mentioned in their Motion to Compel a Rule 35 Examination." *Id.*

Plaintiff's arguments, of course, have zero support in fact, law, or rationale. One of, if not the, primary goals of a CR 35 Examination is to obtain an independent opinion from a qualified expert on the question of which of Plaintiff's alleged injuries were caused by the subject accident, and which injuries are unrelated. Neither the undersigned nor Plaintiff's counsel are qualified (or permitted) to present evidence addressing the very issues Plaintiff insists on a response in advance of the examination. With that said, the evidence of record only briefly summarized in Defendants' underlying Motion to Compel (R. 115), strongly suggests that a significant majority of the injuries and damages being alleged by Plaintiff were not caused by this accident. To be sure, both Plaintiff's original Response (R. 119) and Amended Response (R. 129) create a monumental controversy regarding causation of Plaintiff's alleged traumatic brain injury ("TBI") – an injury

7

with which Plaintiff was admittedly diagnosed years before the subject accident,[5] and which was *not* attributed to the subject accident until several years later and only after a request for a "memory workup" by Plaintiff's own attorney.[6] As explained in more detail in Defendants' Motion to Compel (R. 115), there is a mountain of evidence creating substantial doubt as to countless other physical and mental conditions Plaintiff attributes to this accident. See, e.g., *id.* at p. 6 (2/9/21 Discharge from physical therapy, 2/10 pain, Stage 4: Advanced Ambulation); *id.* at pp. 6-9 (23-month gap in accident-related treatment); *id.* at pp. 9-10 (fall incident resulting in back injury); *id.* at pp. 10-12 (new injuries first reported 2-3 years after subject accident). While it is entirely possible that there is a perfectly sound explanation for all of the "controversies" casting serious doubt in the mind of the undersigned, such controversies reflect precisely what CR 35 was designed to address. Judge Atkins' recognition of the existence of such irrefutable controversies was not clearly erroneous.

2. <u>Judge Atkins correctly found "good cause" for the CR 35 Examination</u>

In the context of CR 35 Examinations, "[g]ood cause is established by demonstrating both relevance and need." *Ford v. American River Transp. Co.*, 5:11CV-00094-R, 2012 WL 4049467, at *3 (W.D. Ky. Sept. 13, 2012) (citing *Beightler v. Suntrust Banks, Inc.*, 2:07-CV-02532-DV, 2008 WL 1984508, at *2 (W.D. Tenn. Apr. 30, 2008). With respect to this issue, the majority of Plaintiff's Response was dedicated to addressing the "in controversy" component. See R. 119 at pp. 4-6. For all of the reasons discussed in the prior section, as well as those set forth in Defendants' Motion to Compel (R. 115), Plaintiff has undoubtedly placed his physical and mental condition in controversy.

---

[5] *See* R. 119, Response at p. 11 ("…diagnosed by UK HealthCare on February 28, 2013[.]"); and R. 129, Amended Response at p. 12 (same).
[6] *See* R. 115, Motion to Compel at p. 11.

8

As noted by Judge Atkins, Plaintiff also seemingly argues that "Defendants have not established 'good cause' because Defendants have not shown 'why the specific examinations requested are necessary' and did not include the 'actual specifics of the examinations requested.'" R. 122 at p. 3. Notwithstanding Plaintiff's unexplained allegation to the contrary, a mere cursory review of not only Defendants' Motion (R. 115), but also Defendants' pre-motion email communications with Plaintiff, demonstrates that Defendants "provided a detailed list of the examinations to be performed by the examining physician and identified the various topics that the examining physician will question Walden about." R. 122 (citing R. 115-7). Frankly, Defendants are at a loss as to how they might possibly provide more detail than that which was already provided. And even if they could, the history of Plaintiff's constantly evolving demands suggests Plaintiff would never be satisfied. *See* R. 115-7. Indeed, it was Plaintiff's constant movement of the goal line that led to, and necessitated, the filing of Defendants' Motion to Compel. As a result, the question of whether Defendants have provided sufficiently specific details of the examination is an issue to be determined exclusively by this Court. Judge Atkins' resolution of the question in the affirmative was not clearly erroneous.

3. <u>Test results conducted years earlier are not a substitute for an IME</u>

Simply put, Judge Atkins articulately demonstrated the baseless nature of Plaintiff's assertion that the law precludes Dr. Kriss from conducting standard examinations simply because some of the same tests have been conducted previously. Judge Atkins' accurate citation to, and quotation of, *Gentry v. CF Ky. Owner LLC,* 2019 WL 13216323, at *1 (E.D. Ky. Jul. 30, 2019) (citing *May for Estate of May v. Ford Motor Co.,* 2010 WL 11565919, at *2 (E.D. Ky. Apr. 15, 2010)), and *Daniels v. Jevic Transp., Inc.,* 2008 WL 489255, at *2 (E.D. Ky. Feb. 20, 2008) amply

9

demonstrates the frivolity of Plaintiff's argument. By definition, Judge Atkins' reliance on such directly relevant authorities could not possibly be contrary-to-law.

### IV. JUDGE ATKINS' FINDING THAT PLAINTIFF FAILED TO DEMONSTRATE IMPERMISSIBLE BIAS WAS NOT CLEARLY ERRONEOUS

In an effort to demonstrate an alleged bias to disqualify the eminently qualified expert selected by Defendants, Plaintiff cited a mere four cases, none of which remotely suggests that Dr. Kriss demonstrated any form of bias toward the parties involved in these completely unrelated cases. Even worse, both the case and holding on which Plaintiff primarily relied – *Taylor v. McCoy Elkhorn Coal Corp., et al.*, 2018 WL 3595313 (Ky. Ct. App. 2018) – was expressly reversed by the Kentucky Supreme Court.

Although not addressed by Judge Atkins, and most certainly not by Plaintiff, a complete review of the reversed opinion serving as the foundation of Plaintiff's argument reveals that it is Plaintiff's expert, Dr. Changaris, whose qualifications to serve as an expert are most concerning. Specifically, the Court of Appeals' [overruled] holding in *Taylor* that Plaintiff quoted in his Response was explicitly based on the Kentucky Supreme Court's prior decision in *Cepero v. Fabricated Metals Corp.*, 132 S.W.3d 839 (Ky. 2004). As explained by the Court of Appeals in *Taylor*,

> The Supreme Court held [in *Cepero*] **that Dr. Changaris' report** (which was based only on the reported work injury) **and his conclusion regarding causation was "corrupt due to it being substantially inaccurate or largely incomplete"** and consequently did not "measure up as substantial evidence[.]" [*Cepero*] at 842-43. **"Medical opinion predicated upon such erroneous or deficient information that is completely unsupported by any other credible evidence can never, in our view, be reasonably probable."** *Id.* at 842.

*Taylor v. McCoy Elkhorn Coal Corporation*, 2017-CA-000137-WC, 2018 WL 3595313, at *6 (Ky. App. July 27, 2018), *opinion designated not for publication* (June 13, 2019), *rev'd sub nom.*

10

*McCoy Elkhorn Coal Corp. Insolvent Employer v. Taylor*, 2018-SC-000445-WC, 2019 WL 2463032 (Ky. June 13, 2019) (emphasis added).

Ironically enough, Plaintiff's improper reliance on the overruled holding of *Taylor* only serves to vindicate the eminent qualification of Dr. Kriss, and at the same time casts catastrophic aspersions on Plaintiff's expert. Just as he failed to review a single page of Plaintiff's prior medical records in the case *sub judice*, Dr. Changaris' failure to consider "the claimant's true medical history [or] any mention of the medical history obtained by Dr. Goddy" resulted in the outright rejection of his opinions in *Cepero*. *Cepero*, 132 S.W.3d at 843. At that time, the Kentucky Supreme Court gave Dr. Changaris the benefit of the doubt:

> In the absence of proof, we will not assume that any competent medical examiner would be aware of but fail to mention a history of a prior injury to the exact same part of the body for which compensation is sought, especially a prior injury that resulted in two months' confinement to a wheelchair and a recommendation of surgery. We assume, instead, that Dr. Changaris was unaware of that history.

*Gosper* at 206 (citing *Cepero* at 843). Despite this free pass, Dr. Changaris seemingly failed to take heed of the Kentucky Supreme Court's stark criticism. In the report authored in the instant litigation, Dr. Changaris gave no more than a fleeting reference to the strikingly similar, albeit far more significant injuries Plaintiff suffered in 2012. See R. 97-2 at p. 1 ("He had a prior accident with fracture of the left hip with patient reported TBI. No records reviewed for this accident."). Unfortunately, the Cepero Court's critique of Dr. Changaris is not an anomaly. See, e.g., *Mirzaee v. United Parcel Service*, 2007-SC-000884-WC, 2008 WL 5051615, at *5 (Ky. Nov. 26, 2008) ("Although [Dr. Changaris] noted earlier in the report that a depression inventory revealed no or minimal depression, he concluded that the claimant probably had a psychiatric impairment and recommended that further medical treatment be suspended pending a psychiatric evaluation . . . .

11

The ALJ denied the [claimant's motion to appoint a psychiatric evaluator] [reasoning] that the claimant had denied the existence of depressive symptoms or suicide attempts throughout the litigation. Also, no testing or other medical evidence supported Dr. Changaris's conclusion[.]"); *Berry v. AT&T*, 2019-CA-001206-WC, 2020 WL 260245, at *4 (Ky. App. Jan. 17, 2020) ("[T]he ALJ ultimately dismissed Berry's claim after . . . determining Dr. Changaris' report--the primary source of Berry's medical evidence favoring her injury claim--was unsupported by objective medical findings, undermined by the records it was purportedly based upon, and tainted by Berry's lack of credibility.").

### V.   MISPLACED RELIANCE ON MARKEDLY DISTINCT SOUTH CAROLINE RULE OF CIVIL PROCEDURE

Plaintiff's reliance on the South Carolina Court of Appeals holding in *Fairchild v. S.C. Dept. of Transp.*, 385 S.C. 344, 359, 683 S.E.2d 818, 826 (Ct. App. 2009), *aff'd,* 398 S.C. 90, 727 S.E.2d 407 (2012) is entirely misplaced. See R. 123, Plaintiff's Emergency Motion at pp. 3-4. Simply put, the underlying foundation of the Fairchild holding represents the South Carolina Court of Appeals' interpretation of a provision contained in South Carolina's version of Rule 35 which is **not** included in Rule 35 of the Federal or Kentucky Rules of Civil Procedure. As such, it provides absolutely no persuasive, let alone precedential, value to the issues present in this case.

WHEREFORE, for the forgoing reasons, combined with those included in Defendants' underlying Motion to Compel CR 35 Exam, Defendants' respectfully request affirm Judge Atkins' Order (R. 122) and direct Plaintiff to attend and participate in the CR 35 Examination, which has since been rescheduled for May 10, 2024.

>  Respectfully submitted,
>
>  HAMM, MILBY & RIDINGS, PLLC
>  120 NORTH MAIN STREET
>  LONDON, KY 40741

PHONE: 606-864-4126
FAX: 606-878-8144
EMAIL: marcia@hmrkylaw.com
EMAIL: jridings@hmrkylaw.com
ATTORNEYS FOR DEFENDANTS,
ENTERPRISE SERVICES GROUP, LLC AND
CLARENCE M. HOWARD


By: /s/ Jay Ridings
      JAY MILBY RIDINGS

CERTIFICATE OF SERVICE

    I hereby certify that on the 19th day of April, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.


/s/ Jay Ridings
COUNSEL FOR DEFENDANTS, ENTERPRISE
SERVICES GROUP, LLC and CLARENCE M.
HOWARD

13