UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| CHARLES L. WALDEN ) | |
| ) | |
|     Plaintiff, ) | **CASE NO. 5:22-CV-00238-KKC** |
| ) | |
| VS. ) | |
| ) | **RESPONSE TO PLAINTIFF'S** |
| ) | **MOTION FOR LEAVE TO** |
| ENTERPRISE SERVICES GROUP, LLC, ) | **AMEND EXPERT DISCLOSURE** |
| *et al.* ) | |
| ) | |
|     Defendants. ) | |
| ) | |

The Defendants, Enterprise Services Group, LLC ("ESG"), and Clarence M. Howard ("Howard"), by counsel, respectfully submit this response to Plaintiff's misleadingly titled "Motion for Leave to Amend Expert Disclosure" ("Motion") (R. 157). As explained below, Plaintiff's untimely request to modify the scheduling order to allow Plaintiff to identify no less than four additional experts is utterly without merit – many times over. Plaintiff's Motion does not, and cannot, satisfy the mandatory "good cause" standard required to amend the scheduling order under Fed. R. Civ. P. 16(b)(4). It does not even try! Instead, and notwithstanding extensive motion practice addressing this very Rule,[1-2] Plaintiff speciously mischaracterizes his instant

---

[1] *See, e.g.*, R. 98, Defendants' Motion to Modify, at p. 4, (citing Fed. R. Civ. P. 16(b)(4) and "good cause" standard); R. 99, Plaintiff's Response to Motion to Modify; R. 100, Defendants' Reply in Support of Motion to Modify, at p. 4, ("[D]efendants have demonstrated good cause …."); R. 103, Amended Order, at p. 1 ("The Court … finds good cause to grant the extension."); and R. 109, Defendants' Response to Plaintiff's Motion to Alter, Amend or Vacate.

[2] *Especially see* R. 107, Plaintiff's Motion to Alter, Amend, or Vacate [Amended] Order, at p. 1 ("Defendants … did not demonstrate good cause for extension …."); *id.* at p. 2 (footnote and citations omitted), ("Defendants did not demonstrate good cause[.] FRCP 16(b)(4) states 'A schedule may be modified only for good cause' and the Sixth Circuit courts have been clear that the primary measure of the good cause standard is the moving party's diligence to meet the deadlines."); *id.* at nn.1, 2, 4, and 5 (citations to multiple cases all acknowledging the "good cause" standard required by Fed. R. Civ. P. 16(b)(4)).

Motion as one arising under Fed. R. Civ. P. 6(b)(1) in an effort to evade the unattainable "good cause" standard required by Rule 16(b)(4). No matter its title, "[w]hen I see a bird that walks like a duck, swims like a duck, and quacks like a duck, I call that bird a duck." *Garland v. Cargill*, 602 U.S. 406, 430 (2024) (Sotomayor, J., dissenting).

Continuing the smoke-and-mirrors theme, the Motion proceeds to manufacture a foundational that is misinformed, at best. Attempting to give credence to Plaintiff's feigned surprise, the Motion falsely asserts that Defendants' Rule 26 Expert Disclosures (R. 149) "disclosed an accident reconstructionist expert for the first time." R. 157 at p. 3.[3] In reality, Plaintiff has had actual notice of Defendants' intention to "**hire an Accident Reconstruction Expert** to give expert opinions regarding the facts and circumstances of the subject incident" since at least December 28, 2022. *See* R. 22, Defendants' Rule 26(a)(1) Disclosures, at p. 3, ¶10.[4] By Defendants' estimation, that roughly translates to 1 year, 5 months, 2 weeks, and 2 days preceding the filing of Plaintiff's Motion.

The Motion concludes with a sleight of hand nonchalantly revealing that Plaintiff seeks to delinquently add an unnamed accident reconstruction expert to "rebut" Mr. Crum, but also two additional experts specializing in the fields of "human factors" and "commercial trucking industry." R. 157 at p. 3. Then, with a quick flip of the wrist, the Motion adds a further request to

---

[3] *See also* R. 157 at p. 2 ("Defendants filed their expert disclosures on May 28, 2024 [R. 149], which disclosed for the first time an accident reconstruction expert, namely Eddie Crum of Crum Investigations").

[4] *See also* R. 120, Defendants' Response to Motion for Sanctions, at p. 3, , *filed* March 28, 2024 (citing opinions of accident reconstruction expert Eddie Crum directly relating to the collision in this case); R. 120-3, Preliminary Collision Analysis Report authored by Eddie Crum (detailing Mr. Crum's preliminary opinions of the subject collision in this case); R. 108, Defendants' Response to Motion to Strike Responses to Requests for Admissions, at p. 3, , *filed* February 16, 2024 ("Despite the Plaintiff's speculations, defense counsel did in fact conduct its own investigation before answering and signing the responses to admissions. **Defense counsel has also discussed the case with experts** …."); **Exhibit A**, Excerpts from Defendants' respective Supplemental Responses to Request for Admission Nos. 4 and 6, *served* February 27, 2024 ("Despite [undersigned] counsel having conducted an **independent investigation with the assistance of a qualified accident reconstruction expert**, [Defendant], by counsel, ….").

2

belatedly identify a "vocational expert," for purposes of rebutting the rebuttal opinions of Dr. Timothy Kriss, Defendants' sole medical expert. *Id.*

Astonishingly absent from the Motion is any genuine consideration of the prolonged and seemingly interminable delay associated with the relief sought. Plaintiff's request, if granted, would inevitably create a never-ending carousel of rebuttal experts retained to rebut the most recent round of rebuttal experts retained to rebut the opinions of those rebuttal experts identified before them (and so on, and so on).

Because the Motion is untimely, improper, and meritless, Defendants respectfully request that same be overruled in its entirety. As further grounds, Defendants state as follows:

## I. Fed. R. Civ. P. 16(b) Requires Demonstration of "Good Cause"

Seeking permission to identify four additional new experts more than six months after the expiration of Plaintiff's expert disclosure deadline established by this Court's modification of the original Scheduling Order (*see* R. 87, Order), Plaintiff's Motion is controlled by Fed. R. Civ. P. 16(b). Consequently, Plaintiff's reliance on Fed. R. Civ. P. 6(b)(1) is entirely misplaced. This error is of no consequence as the Motion satisfies neither the "excusable neglect" standard required by Rule 6(b)(1)(B), nor the more demanding "good cause" standard required by Rule 16(b). Perhaps most astonishing of all is the Motion's failure to even reference, let alone attempt to establish, either standard. This omission, standing alone, is fatal to Plaintiff's Motion.

Rule 16(b) only allows a court to modify a scheduling order "upon a showing of good cause," and the Sixth Circuit has explained that "[t]he primary measure" of this standard "is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)); *see also* Fed R. Civ. P. 16(b), 1983 advisory committee's notes ("The

court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension"). Another "relevant consideration" is whether the nonmoving party will be prejudiced by the modification. *Inge*, 281 F.3d at 625.

## II. Foundation Made of Straw (Accident Reconstruction, Human Factors, and Commercial Vehicle Experts)

As justification for the untimely disclosure of three unnamed, distinct experts intended to rebut Defendants' single accident reconstruction expert, the Motion relies entirely on an alleged unfair surprise arising from Defendants' retention and disclosure of accident reconstruction expert Eddie Crum. The vast majority of the Motion is dedicated to building a foundation constructed entirely of Plaintiff's assertion that Defendants' formal expert disclosures, filed on May 28, 2024, "disclosed for the first time an accident reconstruction expert." R. 157 at p. 2. This representation is patently false in that Defendants provided unequivocal notice of their intent to utilize an accident reconstruction expert on December 28, 2022 – a mere 4 ½ months after Plaintiff filed suit.[5] Notwithstanding the many other structural cracks fatal to its cause, it is the Motion's sole reliance on this fabricated foundation that dooms it from the outset. Much like the first little pig's house made of straw, no more than a simple "huff and a puff" causes the entire Motion to come crashing down. *See* RH DISNEY, THE THREE LITTLE PIGS (DISNEY CLASSIC) (LITTLE GOLDEN BOOK) (Golden/Disney 2004).

## III. Missing Foundation (Vocational Expert)

---

[5] *See* R. 22, Defendants' Rule 26(a)(1) Disclosures, at p. 3, ¶10, *filed* **December 28, 2022** ("It is anticipated that these Defendants will hire an Accident Reconstruction Expert to give expert opinions regarding the facts and circumstances of the subject incident, as well as testimony describing his anticipated reconstruction of the incident. This expert to be identified is further expected to offer expert opinions regarding reaction times and to lay the necessary foundation to introduce any evidence he obtains during the course of his investigation."). *See also supra* note 4, at p. 2.

Plaintiff's Motion cites a grand total of zero arguments to justify the untimely disclosure of yet another medical expert. This unidentified "vocational expert" would be in addition to the 49-plus[6] other medical providers identified in Plaintiff's CR 26 Expert Disclosures (R. 97). While Plaintiff identifies his desire to utilize a vocational expert to rebut the opinions of neuro-surgeon Dr. Kriss, absent from the Motion is any explanation as to *why* such an expert is necessary. Quite the contrary; as even the Motion concedes Plaintiff's conviction that Dr. Kriss' opinions are refuted by the very medical records themselves. *See* R. 157 at p. 3 ("Dr. Kriss indicates that there's almost nothing wrong with Mr. Walden, despite the medical evidence provided."). Also absent from the Motion is any explanation as to *why* Dr. David Changaris, the retained neurosurgeon that was timely disclosed, is incapable of substantiating his TBI diagnosis in the face of critique from Dr. Kriss. Nor does the Motion explain *how* this vocational expert will offer anything more than cumulative recitation of the identical opinions Dr. Changaris intends to offer.

## IV.    <u>Deafening Silence ("Good Cause" Analysis)</u>

Last, and assuredly not least, is the Motion's failure to satisfy the mandatory showing of "good cause" required to modify this Court's scheduling order. With respect to the "primary measure," the Motion is unabashedly silent as to Plaintiff's "diligence," if any, "in attempting to meet the case management order's requirements." *Inge*, 281 F.3d at 625 (6th Cir. 2002). Such silence speaks volumes. Failing to even mention, let alone establish, the "primary measure" of good cause, renders the Motion defenseless to the fatal injury ultimately dealt by "Hitchens'

---

[6] Plaintiff's Rule 26 Expert Disclosures included Three (3) retained, non-treating medical professionals (Dr. Timothy Wilson, Dr. David Changaris, and Rebecca Clay, RN); Two (2) EMTs with Madison Co. Ambulance District; Thirty-Seven (37) healthcare professionals with UK Healthcare; Three (3) healthcare professionals at Kentucky Orthopedics and Spine, PLLC; One (1) doctor from Baptist Health Medical Group Primary Care; and "all physical therapists" at Results Physiotherapy.

Razor," the epistemological rule which holds "that which can be asserted without evidence can be dismissed without evidence."

The Motion's terse, passing reference to "prejudice" suffers the same fate. Once again, the Motion provides zero support for its assertion that "Defendants will not be prejudiced by the addition of," (R. 157 at p. 3) four more unidentified experts on top of the 49-plus experts previously identified. This bold assertion could not be further at odds with reality. The deadline to complete expert discovery expires in nineteen (19) business days. *See* R. 145 at p. 1, ¶4. In this case alone, five of these dates are occupied with discovery depositions of the parties' experts. Six more are unavailable on account of Mr. Morrin's unavailability from July 19-28. That would permit only six business days consisting of July 8-11 and 15, within which all the following would have to be completed:

1. Court's Ruling on Plaintiff's Motion to Modify;
2. Plaintiff's Disclosure of CR 26 Reports for all four of the as-yet unidentified expert witnesses;
3. Defendants' research, consultation and deposition preparation relating to four distinct experts; and
4. Scheduling and conducting four discovery depositions.

Completing only the first two tasks would be difficult enough; accomplishing the remaining two would be impossible. Placing such burdens on this Court, Defendants, and even Plaintiff would result in profound prejudice.

Even assuming, *arguendo*, all the above could be accomplished and depositions completed by July 15, the inescapable reality is that Defendants would then need additional time to retain their own experts to rebut at least two of Plaintiff's proposed experts who would be presenting expert testimony in fields entirely distinct from the expertise of Defendants' current experts. If Plaintiff's current Motion is any guide, Plaintiff would then seek to add further rebuttal

6

experts to rebut Defendants' last round of rebuttal experts, resulting in a never-ending carousel of rebuttal experts. Should the Motion be granted this litigation might never end, resulting in profound prejudice to Defendants, Plaintiff, and this Court.

* * * * *

In less than 40 days this action will have been pending for precisely two years. And despite any other differences of opinion, there is one topic on which the parties could not agree more: The time has come to bring this matter to a final conclusion once and for all and without further delay.[7] The relief sought in Plaintiff's Motion is antithetical to the crucial objective of achieving finality; an objective vital to the interests of this Court, Defendants, and Plaintiff.

For these reasons, Defendants respectfully request that Plaintiff's Motion be denied.

Respectfully submitted,

HAMM, MILBY & RIDINGS, PLLC
120 NORTH MAIN STREET
LONDON, KY 40741
PHONE: 606-864-4126
FAX: 606-878-8144
EMAIL: marcia@hmrkylaw.com
EMAIL: jridings@hmrkylaw.com
ATTORNEYS FOR DEFENDANTS,
ENTERPRISE SERVICES GROUP, LLC AND
CLARENCE M. HOWARD

By: /s/ Jay Ridings
        JAY MILBY RIDINGS

CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of July, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

---

[7] *See* R. 107 at p. 4 ("Plaintiff is ready and anxious to move this matter toward trial so that he may present his case before the jury and seek justice."); *id.* at p. 3 (arguing, in February 2024, that Plaintiff will suffer prejudice by "further delaying this trial.").

7

  /s/ Jay Ridings
COUNSEL FOR DEFENDANTS, ENTERPRISE SERVICES GROUP, LLC, and CLARENCE M. HOWARD