UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | | |
|---|---|---|
| CHARLES L. WALDEN | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO. 5:22-CV-00238-KKC** |
| | ) | |
| VS. | ) | |
| | ) | **RESPONSE TO PLAINTIFF'S** |
| | ) | **EMERGENCY MOTION TO** |
| ENTERPRISE SERVICES GROUP, LLC, | ) | **MODIFY SCHEDULING ORDER** |
| *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Defendants, Enterprise Services Group, LLC, and Clarence M. Howard ("Howard"), by counsel, submit this response to Plaintiff's "Emergency Motion to Extend All Scheduling Order Deadlines, Compel Discovery Participation, and Reschedule Trial" ("Motion") (R. 177). Regretfully, Plaintiff's Motion represents just one of many recent unscrupulous tactics deployed by Plaintiff to remedy the confederacy of errors made in relation to his original slate of experts. To be clear, Plaintiff's initial attempt to cure these blunders, i.e., Plaintiff's [Second] Motion to Modify (R. 157), was entirely above-board and proper, albeit entirely void of legal support. But rather than at least attempt to address the legal deficiencies by way of a reply, Plaintiff employed a three-pronged attack. First, Plaintiff sought to coerce Defendants into acceding to his request by withholding "supplemental" expert reports until only hours before or in the middle of discovery depositions being conducted of Plaintiff's experts.[1,2] The second phase entailed producing critical

---

[1] *See* **Exhibit A**, Changaris Transcript Excerpts at pp. 40-41 and 44, Lines 15-19.

[2] Dr. Timothy Wilson's July 12, 2024 "Addendum" – which was in Plaintiff's counsel's possession no later than July 14, 2024 – was technically disclosed approximately 2 ½ hours prior to his July 30, 2024, discovery deposition. *See* R. 176-1 at pp. 4-5. Undersigned counsel was traveling to the deposition site at the time of filing and only became aware of the "Addendum" after the deposition had begun. Regardless, Plaintiff's strategic filing deprived Defendants of any opportunity to adequately prepare for the critical information contained in the "Addendum" in Plaintiff's possession for two weeks.

"supplemental" CR 26 Reports fundamentally altering the experts' respective opinions and analyses after the experts had already been deposed – and well beyond Plaintiff's December 5, 2023, deadline to produce same.[3] Failing to realize one iota of success in his first two assaults, Plaintiff's instant Motion reflects an attempt to exercise the nuclear option in his final, last ditch effort to prevent the likely exclusion of his original experts. The problem, of course, is that Plaintiff's arsenal was sourced from the equivalent of a third-rate North Korean munitions plant.[4]

As for relevant legal support, the Motion provides none. It is effectively an improper attempt to relitigate four of Plaintiff's prior motions: Motion to Strike Responses to Request for Admissions (R. 105), Motion to Compel Answers to Discovery (R. 116), Motion for Sanctions (R. 112), and [Second] Motion to Modify Scheduling Order (R. 157). It has been nearly five months since this Court rejected the first of these motions. *See* R. 114, Order. More than two months have elapsed since this Court fully considered and adjudicated the second and third motions. *See* R. 150, Order. And the Court has not yet even had the opportunity to address the fourth. But with Plaintiff declining the opportunity to file a reply, this pending motion has been fully briefed and is now ripe for a decision. Defendants' having fully addressed essentially the same legal arguments presented in Plaintiff's four prior motions, Defendants will primarily defer to their prior arguments with respect to the substantive legal issues purportedly raised in Plaintiff's latest Motion. Unsurprisingly, the majority of this Response will focus on addressing and refuting the offensive and demonstrably false representations set forth in Plaintiff's Motion. Because Defendants intend to address by way of separate briefing the profound deficiencies and multiple disclosure

---

[3] See R. 182-2, Changaris July 30, 2024, Supplemental Report; *cf.* R. 161, Notice to Take Deposition of Changaris on July 16, 2024. *See also*, R. 180-1, Clay July 30, 2024, Updated Medical Cost Projection; *cf.* R. 168, Notice to Take Deposition of Clay on July 17, 2024.

[4] *See, e.g.*, *North Korea Nearly Hits Own Capital in Failed Missile Test*, John Feng, NEWSWEEK, https://www.newsweek.com/north-korea-failed-missile-test-rocket-falls-near-capital-pyongyang-1919391 (last visited Aug. 1, 2024).

infringements surrounding Plaintiff's original experts, discussion of same is intentionally limited herein.

## I.   OBJECTIVELY FALSE ACCUSATIONS OF UNETHICAL AND CRIMINAL CONDUCT LODGED AT MR. HOWARD AND COUNSEL

Plaintiff contends that Mr. Howard, ESG, and their counsel have deceptively withheld, altered, and even falsified evidence. R. 177 at p. 6. Notwithstanding the grave nature of such allegations, the Motion fails to identify, let alone produce, a single piece of evidence supporting its severe allegations. The reason for Plaintiff's omission is that Plaintiff's representations are not only false, but demonstrably false.

### A.   Lie # 1 – Counsel Altered Howard's Interrogatory Answers

> After Howard's deposition, counsel for Howard provided yet another version of Howard's Response to Plaintiff's Interrogatories than were even shown at the deposition, which included answers that were different than any of the previous versions of Howard's responses, and which new responses Plaintiff's counsel had no opportunity to review prior to Defendant Howard's deposition.

*Id.* at p. 3.

> Defendant Howard perjured himself but such answers demonstrating the same were only shown to Plaintiff's counsel at Howard's deposition, kept by Defense counsel after it became apparent Defendant Howard perjured himself, and then yet another version of Interrogatory Responses, altered from the signed version shown at Defendant Howard's deposition, were delivered to Plaintiff's counsel a week after Defendant Howard's deposition.

*Id.* at p. 6.

After locating Mr. Howard in mid-April 2024, defense counsel has submitted a grand total of two sets of Interrogatory Answers from Mr. Howard: 1) Unsigned Answers served on May 31, 2024, and 2) Signed Answers formally served on June 24, 2024, but provided to counsel prior to

and during Mr. Howard's deposition on June 14, 2024.[5] Mr. Howard's answers to Plaintiff's interrogatories are quite literally identical, verbatim carbon copies of one another in both the signed and unsigned versions. To be sure, this Court need look no further than the copies of Mr. Howard's interrogatory answers which were *produced by Plaintiff* (*see* R. 170-5 and R. 170-6) in response to this Court's directive to produce "all [discovery] responses that he has received from Defendants." *See* R. 169, Order. If Plaintiff even suspected that Howard's counsel had provided altered interrogatory answers subsequent to Mr. Howard's deposition, he would have undoubtedly alleged same long before filing the instant Motion. As the record confirms, this patently false accusation was not presented during Mr. Howard's deposition, was not raised in Plaintiff's correspondence to this Court requesting a discovery conference (R 177-3), nor in even one of Plaintiff's multiple emails to Howard's counsel (R. 177-9) wherein he does raise a plethora of other baseless discovery-related accusations. Given the absence of supporting evidence, combined with the objective and irrefutable evidence of record, it is reasonably certain that Plaintiff's affirmative representation that Howard's counsel altered answers to interrogatories was not only false, but knowingly false.

B. Lie # 2 – Howard and Counsel Intentionally Withheld, and Howard Subsequently Perjured Himself Regarding Load-Related Communications

Plaintiff represents that both counsel and Mr. Howard intentionally withheld evidence of "load related communications" and that Mr. Howard thereafter lied about his possession of same. R. 177 at pp. 4-5. First, Plaintiff insinuates that counsel withheld responsive evidence from the April 9, 2024, discovery responses prepared exclusively by counsel when counsel was unable to locate, let alone communicate with, Mr. Howard. Specifically, after citing counsel's Response that "Counsel does not possess responsive evidence," Plaintiff asserts "Defendant Howard's

---

[5] *See* **Exhibit B**, Howard Transcript Excerpts at p. 15, Lines 19-21 and p. 16, Lines 2-11.

subsequent testimony at his deposition indicates that he did have responsive evidence of which he was or should have been aware on April 9, 2024." *Id.* at p. 4. Plaintiff's accusation of unethical conduct lodged against undersigned counsel is perhaps even more illogical than it is offensive. Unfortunately, but not unsurprisingly, it does not represent the first such accusation.[6] Neither then nor now does Plaintiff even attempt to explain how Mr. Howard's counsel might have possibly gained access to an email communication in the exclusive possession of clients with whom counsel had never communicated with as of April 9, 2024.

Plaintiff then goes on to accuse Mr. Howard of committing perjury based on the unsigned, May 31, 2024, discovery responses prepared with the assistance of Mr. Howard after he was finally located. *Id.* at p. 6. Repeatedly emphasizing Mr. Howard's initial response indicating that he does not possess responsive evidence, Plaintiff conveniently ignores the indisputable fact that the existence of the patently irrelevant, albeit admittedly responsive, four-page communication[7] was only discovered during the course of Mr. Howard's June 14, 2024, deposition. As the transcript makes clear, it was only because of Plaintiff counsel's articulate questioning that triggered Mr. Howard to recall that he received job assignments by email. *See* **Exhibit B**, Howard Transcript Excerpts at p. 22, Lines 17-23. The manifestly irrelevant nature of the evidence, combined with the circumstances demonstrating Mr. Howard's initial discovery of same conclusively demonstrate that Plaintiff's representation to this Court that Mr. Howard "knowing[ly]" (R. 177 at p. 5) withheld and denied possession of the email communication at issue is grossly inaccurate.

---

[6] *See* R. 170-9 at p. 4, 6/26/24 Email, Morrin to J. Ridings ("In fact, the discovery response provided over seven (7) months ago denying the existence of such correspondences served to delay the prosecution of Mr. Waldens (sic) case.")

[7] *See* **Exhibit C**, August 7, 2020, Email Communication (blank) and three-page Carrier Load Tender.

C. Lie #3 – Howard Intentionally Concealed the Identity of Shanta Dixon

Plaintiff is correct that Shanta Dixon has not been identified in Howard's Interrogatory Answers. *Id.* at p. 5. The reason is simple: Ms. Dixon's identification is not responsive to a single interrogatory posed by Plaintiff. Far worse than Plaintiff's convenient failure to include the language or summary of the interrogatories at issue is his blatant misrepresentation of Howard's answers to same.

Contrary to Plaintiff's representation to this Court, Howard's answer to Interrogatory No. 6 did not in any way suggest that Howard "had no knowledge of additional individuals who may have relevant information." *Id.* at p. 5. Plaintiff's Interrogatory, and Mr. Howard's answer speak for themselves:

> INTERROGATORY NO. 6. Please state the name, address, home phone number, office phone number, and address of employment for each and every person, firm, or entity who:
>
> (a) Witnessed the wreck described in the Complaint;
>
> (b) Arrived at the scene of the wreck within two (2) hours after it occurred;
>
> (c) Has or who claims to have knowledge of liability in this action.
>
> (d) Has or who claims to have knowledge of damages in this action.
>
> **ANSWER:**   It is believed that police officer, Jason Curry, who investigated this accident has knowledge concerning the accident. Medical providers of the Plaintiff would also have information of this accident. Additionally, experts identified in Answer to Interrogatory No. 3 would be responsive to this Interrogatory. For further reference, see documents previously produced at Enterprise_Howard 000001 – 000039, 000092 – 000095, and 000185 – 012111. Mr. Howard is unaware of anyone who witnessed the accident. He believes the police officer was there within two (2) hours of the accident. He has no other independent knowledge responsive to this Interrogatory.

*See* R. 170-6 at p. 4 (signed) and/or R. 170-5 at p. 4 (unsigned).

Technically, Plaintiff is also correct that Howard's answer to Interrogatory No. 9 "did not list Ms. Dixon or her brother as potential witnesses," R. 177 at p. 5. Of course, neither he nor

6

counsel would have had any good faith basis to do so considering the Interrogatory sought the identities of individuals "whom you *expect* to call as a witness upon the trial of this matter." R. 170-6 at p. 5. Despite the extensive amount of time, money, and effort expended in trying to locate anyone associated with ESG, defense counsel has achieved zero success in locating a single individual associated with ESG. Against that backdrop, identifying Ms. Dixon or an unknown brother as witnesses "expect[ed]" to be called at trial would have been disingenuous, at best.

With respect to Interrogatory No. 11, Mr. Howard had no choice but to "refuse[]" (R. 177 at p. 5) to identify Ms. Dixon as the owner of the vehicle given that the subject matter of the discovery is not remotely related to the "owner of the vehicle."

> INTERROGATORY NO. 11. State whether the vehicle you were driving on 8/10/2020 sustained property damage as a result of the collision. If so, please state the following:
>
> (a) The nature, location, and extent of all such property damage;
>
> (b) The total dollar amount of property damage;
>
> (c) The current location and owner of the vehicle that sustained the property damage; and
>
> (d) Whether pictures of the vehicle were taken, and, if so, please state the name, address and telephone number of the person who has custody thereof.

*See* R. 170-6 at p. 7. As for Interrogatory No. 8, which did inquire about vehicle ownership, Mr. Howard truthfully responded that all known evidence of record, i.e., the collision report, reflects that the vehicle was owned by ESG. *See* **Exhibit D**, Collision Report at p. 4.

To the extent Plaintiff takes exception to Mr. Howard's failure to identify Ms. Dixon in discovery, he and he alone bare the entirety of the blame. Plaintiff's repeated representations to this Court that Mr. Howard intentionally withheld and concealed evidence which was never even requested is, quite simply, offensive.

D.   Lie # 4 – Howard's Interrogatory Answers Contain [Unspecified] Instances of Perjury

Plaintiff's representation that "Defendant Howard perjured himself" (R. 177 at p. 6) is shamefully false. Notwithstanding the solemn nature of this accusation, Plaintiff fails to identify the specific testimony or discovery answers that constitute the perjury. The context of Plaintiff's accusation indicates that the evidence of Mr. Howard's alleged criminality is contained somewhere in one of Howard's Interrogatory Answers and is contradicted by his deposition testimony. In aimlessly raising allegations of criminal conduct, the burden of establishing same should lie with the accuser. Plaintiff does not even attempt to meet this burden. Nevertheless, because of the serious implications associated with the mere allegation, Defendants have taken the liberty of cross-referencing each of Mr. Howard's Interrogatory Answers with his deposition testimony. As demonstrated in the table below, Plaintiff's defamatory allegation of criminal conduct is false!

| Int. No. | Interrogatory Answer | Deposition Testimony |
|---|---|---|
| 1 | Answers provided by Howard with assistance of counsel. | NA |
| 2 | Liability insurance. | NA |
| 3 | Expert Witness identification | NA |
| 4 | Factual grounds for affirmative defenses raised in Answer. | No Inquiry |
| 5 | Accident caused in whole or in part by inattentiveness or fatigue of Plaintiff. Further identifies counsel's knowledge of pre-existing injuries and injury-related incidents subsequent to accident. | Page 82 - Ample room for Walden to pass if paying attention.<br><br>Page 83 -<br>Q: And I will represent to you that Mr. Walden testified in his deposition that there was sufficient space to pass you on the left. Do you agree with that assessment?<br>A: Oh, yes. I would 100 percent agree with that.<br><br>Page 91 – Visibility of Howard vehicle. Confirming compliance with FMCSR |

| | | | Page 91-93 – Lack of attention, Ample space to safely pass. |
|---|---|---|---|
| 6 | Identification of the following:<br>  a. Witnessed Collision: Unaware of any such witnesses.<br>  b. Arrived within two hours: Investigating Officer<br>  c. Knowledge of Liability: Officer Curry, Medical Providers, Expert Witnesses<br>  d. Knowledge of Damages: Medical providers and Expert Witnesses | | a. No Inquiry<br><br>b. Page 49 – Law Enforcement<br><br>c. No Inquiry<br><br>d. No Inquiry |
| 7 | Affirmative defenses drafted by counsel | | No Inquiry |
| 8 | Collision report identifies Enterprise as owner of vehicle | | No Inquiry |
| 9 | Trial Witnesses | | No Inquiry |
| 10 | a. Traveling north on I-75 toward Ohio.<br>b. Vehicle started misfiring and not picking up acceleration.<br>c. Decided to pull the vehicle off of the road at his first opportunity. Pulled off the ramp at Richmond, Kentucky in Madison County, Kentucky.<br>d. Vehicle died while on the ramp.<br>e. Moved vehicle as far right as possible.<br>f. Set out warning triangles.<br>g. Called dispatcher to report disabled vehicle.<br>h. Dispatcher reports that tow truck has been requested and authorities notified.<br>i. Howard walked to a nearby hotel.<br>j. Howard does not know the time of collision, but knows it was before midnight. Estimates between 10:30 and 11:00 PM.<br>k. Went to sleep at hotel and <span style="color:red">awakened by knock on door by law enforcement</span> who notified him of collision.<br>l. Went to the scene and cooperated with law enforcement. | | a. Pages 21-22 – Traveling from Atlanta to Ohio.<br>b. Pages 27-29 – Detailed discussion of mechanical issues.<br>c. No inquiry<br>d. Page 30 – Confirming vehicle inoperable.<br>e. Page 29 - Moved as far right as able.<br>f. Page 35 – Placement of warning placards<br>g. Pages 27-30, 33-34.<br>h. Dispatcher requested mechanical repair. No inquiry re: notification to authorities<br>i. Page 46 – Walked to hotel off the exit.<br>j. No inquiry re: time of collision.<br>k. Page 47 - Initially does not recall how notified of collision. Subsequently confirms he received a call from dispatch, who had been contacted by law enforcement. <span style="color:red">Note: Was not awoken by police</span>.<br>l. Page 48 – Walked to scene. |

| 11 | Damage to ESG vehicle unknown. | No inquiry |
|----|----|----|
| 12 | Unrelated motor vehicle accident approx. 2 years ago. | Page 53 – Unrelated motor vehicle accident approx. 3 years ago. |
| 13 | Prior misdemeanor. | Page 10 – Prior misdemeanor. |
| 14 | Driver education course when teenager | Pages 25-26, 70 - Training at ESG. |
| 15 | No alcohol or drugs on date of accident | No Inquiry |
| 16 | Trial Exhibits | No Inquiry |
| 17 | Not conducted surveillance of Plaintiff | No Inquiry |
| 18 | CR 35 Examination | No Inquiry |
| 19 | Cell phone provider: Metro PCS | Page 31 – Metro PCS |
| 20 | Did not own vehicles on date of accident | No Inquiry |
| 21 | Medical Experts | No Inquiry |
| 22 | Medical Experts | No Inquiry |
| 23 | Medical Experts | No Inquiry |
| 24 | Accident Review Board | No Inquiry |
| 25 | ESG policy for reporting disabled vehicle: Call Dispatch | No Inquiry |
| 26 | "Black Box Device" | No Inquiry |

## II.    [FALSE] ACCUSATIONS PATENTLY IRRELEVANT TO FOUR ADDITIONAL EXPERTS SOUGHT BY PLAINTIFF

Putting aside the utter absence of truth to Plaintiff's offensive accusations, Plaintiff's attempt to disclose four additional experts would remain meritless inasmuch as not even one of Plaintiff's allegations is remotely relevant to Plaintiff's original failure to retain the accident reconstructionist, human factors expert, commercial trucking expert, and vocational expert he now wants to hire. Again, the entire Motion is purely a red herring formulated to cure the unforced errors relating to Plaintiff's original experts. The limited cases cited by Plaintiff would authorize, at most, an additional deposition of Mr. Walden. Unsurprisingly, the Motion fails to specify any particular topic or subject matter he might conceivably address in such a deposition. Instead, Plaintiff continues to make overly vague, unsubstantiated, and wholly generic allegations of unspecified prejudice.

Furthermore, it questionable whether the Motion's request for a continuance is properly before this Court given that it represents nothing short of Plaintiff's attempt to relitigate issues and

present new arguments which should have been raised in a reply to Plaintiff's pending [Second] Motion to Modify (R. 157). For the reasons stated herein and in Defendants' prior Response (R. 158), both Motions must be overruled. Then and now, Plaintiff continues his efforts to evade the unattainable "good cause" standard required by Fed. R. Civ. P. 16(b)(4) by intentionally mischaracterizing both Motions as arising under Rule 6(b)(1). Even more importantly, both Motions are time-barred under the unequivocal provision in this Court's Scheduling Order providing that:

> No extensions of the deadlines set in this order, or those contained in the separate pretrial conference order also entered this date shall be granted **unless an appropriate motion is filed <u>prior to expiration of the deadline in question</u>**, and upon a showing of good cause beyond the control of counsel in the exercise of due diligence.

R. 13 at p. 3, ¶ 4 (emphasis added).

### III.   Court has Already Addressed Inability to Locate ESG

Nothing has changed in the two months since this Court's Order (R. 150) fully addressed and resolved the virtually identical purported grievances Plaintiff continues to raise with respect to ESG's inability to participate in this action. For the same reasons articulated in this Court's prior Order (*id.*), Defendants' Response to Motion to Strike Responses to Request for Admissions (R. 108), and Defendants' Response to Motion for Sanctions (R. 120), Plaintiff's current Motion should be denied. Out of an abundance of caution, Defendants adopt and incorporate by reference the arguments and rationale contained in their aforementioned Responses (R. 108 and R. 120).

As with his prior Motions, Plaintiff remains unable to identify any realistic prejudice resulting from ESG's absence. As previously demonstrated (*see* R. 120), the subject matter of the instant litigation consists of nothing more than a motor vehicle collision with highly contested liability. Defendants have conceded from the outset that Mr. Howard was acting in the course and

11

scope of his employment with ESG. The actions or inactions of ESG have absolutely no bearing on determining what little fault, if any, Mr. Howard has for the subject collision. In the unlikely event some level of fault is apportioned to Mr. Howard, standard agency law principles will control ESG's liability in its capacity as Howard's employer. That is, ESG's participation, or lack thereof, has absolutely no bearing on any issue relevant to this matter. Any prejudice caused by ESG's absence was inflicted exclusively upon defense counsel.

Just as before, Plaintiff continues to ignore is his own two-year delay in bringing this action which almost certainly resulted in ESG's absence in the first place. To be clear, ESG appreciates that Plaintiff had every right to exercise such a delay. With that said, he should not be permitted to capitalize on ESG's absence when it is undisputed ESG has yet to receive any notice of this action, was never actually served with Summons, and was almost certainly inactive once Plaintiff finally did initiate litigation. *See* **Exhibit E** (8/19/2022, Notice of Intent to Administratively Dissolve, and **Exhibit F** (10/28/2022 Certificate of Administrative Dissolution/Revocation). Defendants readily acknowledge that Kentucky's long arm statute continues to authorize technical service of process exclusively through the Secretary of State without actual notice to ESG. Nevertheless, both equitable and due process concerns under the present circumstances must certainly preclude the inequitable relief sought in Plaintiff's past and current Motions.

Plaintiff's unsubstantiated allegations of "fraudulent" conduct by ESG are just as baseless as his demonstrably false accusations of unethical and criminal conduct lodged against Mr. Howard and counsel. ESG's February 8, 2024, filing with the Georgia Secretary of State does not in any way, shape, or form support the spurious accusations asserted by Plaintiff. ESG's February filing of Annual Registration paperwork demonstrates, at most, ESG's potential *intent* to become an active entity in February 2024. It does not address whether ESG followed through on this

12

perceived intent, whether ESG actually did become active but subsequently ceased doing business, nor does it address the untold number of any other speculative conclusions that might be drawn. It assuredly does not definitively prove the fantastical allegations of fraud affirmatively asserted by Plaintiff. And to be clear, undersigned is not and cannot affirmatively refute any contention that ESG is currently an active business entity. With that said, the undersigned can confirm that extensive time, money, and effort expended by multiple private investigators retained by defense counsel have proven to be entirely futile.

Last, but not least, Defendants respectfully call attention to and incorporate by reference the email communications (R. 170-9 and R. 171) between Plaintiff's counsel and the undersigned submitted in Response to this Court's Order (R. 169). Although the relief sought and accusations leveled in Plaintiff's Motion are starkly distinct from the issues presented in Plaintiff's emails, the rationales and arguments advanced in Defendants replies are nevertheless relevant to Plaintiff's current Motion as it relates to discovery.

\* \* \* \* \*

Far worse than mere propaganda, the essence of Plaintiff's Motion is its outrageous and patently false accusations of unethical and criminal conduct leveled against defense counsel and their clients. On its surface and at its core, the Motion is an untimely and unscrupulous attempt by Plaintiff to replace his original experts because of real and legitimate concerns that most, if not all, of said experts' opinions will be deemed inadmissible under FRE 702. Failing to prove much else, the Motion conclusively demonstrates that Plaintiff will stop at nothing to achieve this end. For all of the reasons set forth above, Defendants respectfully submit that Plaintiff's Motion must be overruled.

Respectfully submitted,

HAMM, MILBY & RIDINGS, PLLC
120 NORTH MAIN STREET
LONDON, KY 40741
PHONE: 606-864-4126
FAX: 606-878-8144
EMAIL:  jridings@hmrkylaw.com
ATTORNEYS FOR DEFENDANTS,
ENTERPRISE SERVICES GROUP, LLC AND
CLARENCE M. HOWARD


By:  /s/ Jay Ridings
      JAY MILBY RIDINGS

CERTIFICATE OF SERVICE

     I hereby certify that on the 5th day of August, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.


    /s/ Jay Ridings
COUNSEL FOR DEFENDANTS, ENTERPRISE SERVICES GROUP, LLC, and CLARENCE M. HOWARD

14