UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

CHARLES L. WALDEN )
)
     Plaintiff, )     **CASE NO. 5: 22-CV-00238-KKC**
)
VS. )
)     **MOTION TO STRIKE**
ENTERPRISE SERVICES GROUP, LLC, )     **PLAINTIFF'S SUPPLEMENTAL**
*et al.* )     **EXPERT DISCLOSURE REPORTS**
)
     Defendants. )
_____ )

     Defendants, Enterprise Services Group, LLC ("Enterprise") and Clarence M. Howard ("Howard"), by counsel, move to strike each of Plaintiff's three untimely and gravely prejudicial supplemental expert reports. As grounds, Defendants state as follows:

<u>**INTRODUCTION**</u>

     Throughout much of this litigation, Plaintiff has engaged in an exhausting pattern of delay and gamesmanship; repeatedly using recharacterized requests, endless filings, and impossible-to-resolve discovery disputes to obstruct and complicate the proceedings. This strategy has culminated in Plaintiff's latest tactic: repeated productions of "supplemental" expert reports first revealed in the middle of, or even after Defendants' discovery depositions of Plaintiff's experts, effectually blindsiding Defendants and depriving them of any meaningful opportunity to depose the experts regarding their new and distinct opinions, methodologies, and theories.

     Plaintiff's attempted revisions, thinly disguised as "supplemental" reports, represent a blatant violation of both the letter and spirit of the Federal Rules of Civil Procedure and this Court's scheduling orders. These so-called supplemental and amended reports are nothing more than an improper attempt to cure the often fatal deficiencies inherent in his experts' original reports –

many, if not all, of which, were a by-product of Plaintiff's withholding from his own experts the devastating evidence that would have likely prevented the experts from forming their opinions from the outset – and which now render them unreliable and inadmissible under FRE 702.

Rule 26(a) and the Court's Scheduling Order exist to ensure that all parties have fair notice of the expert opinions that will be presented at trial. Time and time again, Plaintiff has disregarded these rules, filing "supplemental" or "rebuttal" expert reports well after the deadlines established by the Court. Each of these untimely opinions is based on information that was readily available to the respective experts before the initial reports were filed; Plaintiff merely made a strategic decision to withhold same. The timing of Plaintiff's production of these "supplemental" opinions – during the middle of a deposition or sometimes even weeks after – underscores their true motive: to unfairly prejudice Defendants by denying them the opportunity to adequately prepare for trial. Regrettably, Plaintiff's transgressions do not end there. One of the most troubling facets of these tactics is Plaintiff's undisputed withholding of at least two of these "supplemental" reports up to 34 and 14 days before the depositions in which they were ultimately revealed by Plaintiff's experts when testifying.

This Court should not permit the Federal Rules of Civil Procedure or its own scheduling orders to be manipulated in such a way that greatly benefits Plaintiff while substantially prejudicing Defendants. The Plaintiff's tactics, if allowed to stand, would undermine the integrity of the pretrial process and reward gamesmanship over fair play. Accordingly, Defendants respectfully request that the Court strike Plaintiff's supplemental expert disclosures in their entirety.

## **FACTUAL BACKGROUND**

On October 18, 2022, this Court entered its Scheduling Order imposing a number of pretrial deadlines, which included Rule 26(a)(2) expert witness reports due from Plaintiff by October 1, 2023, and from Defendants by December 1, 2023. (R. 13 at p. 2). In September 2023, Plaintiff requested an extension of his Rule 26(a)(2) Report deadline due to difficulties in obtaining appointments and opinions from his treating physicians, which Defendants did not oppose. (R. 82; R. 87). As a result, the Court extended Plaintiff's expert disclosure deadline to December 5, 2023, and Defendants to February 3, 2024. (R. 87)

On December 5, 2023, Plaintiff produced his expert disclosure, which identified three (3) retained, non-treating medical professionals (Dr. Timothy Wilson, Dr. David Changaris, and Rebecca Clay, RN); Two (2) EMTs with Madison Co. Ambulance District; Thirty-Seven (37) healthcare professionals with UK Healthcare; Three (3) healthcare professionals at Kentucky Orthopedics and Spine, PLLC; One (1) doctor from Baptist Health Medical Group Primary Care; and "all physical therapists" at Results Physiotherapy. (R. 97) Thereafter, Defendants asked for an Extension of Time to have a Rule 35 exam with neurosurgeon, Dr. Timothy Kriss. (R. 98) Plaintiff objected to the motion; however, the motion was granted by an Amended Order and the exam was scheduled for April 12, 2024. (R. 103; R. 98 at p. 3)

In late February 2024, Plaintiff's attorney, for the first time, raised issues as to the scope of the examination. When Plaintiff would not agree to the examination, Defendants filed an Emergency Motion to Compel the CR 35 exam. (R.119) On April 11, 2024, Magistrate Judge Adkins granted Defendants' motion for the CR 35 exam, addressing all of Plaintiff's objections. (R.122) On April 11, 2024, Plaintiff filed a Motion for Emergency Relief stating that his client was in Genesis Rehab Center in Grayson, Kentucky, and that the facility required seventy-two (72)

hours notice to schedule transportation for its residents. (R. 123) Even though Plaintiff's attorney had known about the independent medical exam since January 11, 2024, no transportation arrangements were made despite the pending Motion to Compel and Expedited Briefing Schedule. (*Id.*) This Court sustained Plaintiff's Emergency Motion to the limited extent of excusing Plaintiff from attending the originally scheduled exam. (R. 124) As a result, Defendants requested modification of their expert disclosure deadline to give them additional time for the Court ordered CR 35 exam of Plaintiff, which was rescheduled due to Plaintiff's inability to attend the originally scheduled exam. (R. 128) This Court granted Defendants' Motion and thereby amended the deadline for Defendants to identify experts and file required disclosures to July 1, 2024. (R. 145) The Court also revised the deadline for the parties to complete fact and expert witness discovery to August 1, 2024. (*Id.*)

In late July 2024, Plaintiff submitted supplemental expert disclosures that introducing new opinions and findings from previously disclosed experts, including Dr. Timothy Wilson, Dr. David Changaris, and Rebecca Clay, RN. (R. 176; R. 180; R. 182) Plaintiff produced substantially modified "supplemental" CR 26 Reports fundamentally altering the experts' respective opinions and analyses after the experts had already been deposed – and well beyond Plaintiff's December 5, 2023, deadline to produce same. Notably, Dr. Wilson's supplemental report was disclosed mere hours before his deposition, while Defendants' counsel was en route to the deposition. (*See* R. 176; **Exhibit 1**, Wilson Transcript Excerpt, at p. 9) Dr. Changaris' supplemental reports were not filed until fifteen days after his deposition (R. 182), and Ms. Clay's supplemental report was filed fourteen days after her deposition (R. 180). The timing of these reports left Defendants with no meaningful opportunity to address the new opinions and analyses during the depositions or even before the discovery deadline.

## ARGUMENT

**I.**   **The supplemental reports of Plaintiff's expert witnesses contain new opinions based on information that was available to Plaintiff at the time of their initial disclosures, in violation of Rule 26(a).**

"Federal Rule 26(a)(2)(B) requires parties to make mandatory disclosures about their experts." *Matilla v. S. Ky. Rural Elec. Co-op Corp.*, 240 F. App'x 35, 42 (6th Cir. 2007). The Rule requires a party's retained expert furnish a written expert report that contains, "a complete statement of all opinions the witness will express and the basis and reasons for them; [and] the facts or data considered by the witness in forming them ...." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). Rule 26(e) provides a limited exception, by requiring a party to "supplement or correct its disclosure or response ... in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other party during the discovery process or in writing." Fed. R. Civ. P. 26(e) (emphasis added). This applies to any disclosure under Rule 26(a) as well as responses to written discovery. *Id.* And if the deadline for initial disclosures has passed, the rule permits a party to disclose a new expert opinion in rebuttal to another party's expert. Fed. R. Civ. P. 26(a)(2)(D).

Notably, this rule limits the time allowed for supplementation and rebuttal. *Bentley v. Highlands Hosp. Corp.*, Civil No. 15-97-ART-EBA, 2016 WL 5867496, at *4 (E.D. Ky. Oct. 6, 2016). "And it is not hard to see why—otherwise there would be no finality to expert reports, as each side, in order to buttress its case would go on ad infinitum supplement[ing] existing reports and modifying opinions previously given." *Id.* (internal quotation marks omitted) (quoting *Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003)). Such disclosures are not intended to provide an extension of the expert designation and report production

deadline." *Bumpus v. Carhartt, Inc.*, Civil No. 4:13CV-00104-JHM, 2016 WL 9456352, at *3 (W.D. Ky. Mar. 17, 2016) (citation omitted). "Any additions or changes" to an expert's disclosure must be shared "in a timely manner" and no later than "the time the party's pretrial disclosures under Rule 26(e)(1)(A), (2). Rebuttal reports, meanwhile, are ordinarily due thirty (30) days after the other party's disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii). Both deadlines, though, are merely default rules. Fed. R. Civ. P. 26(a)(2)(D).

Courts also place strict substantive limits on supplemental reports. "[T]he rule is not a license to freely amend expert reports to bolster a party's position." *Bentley*, 2016 WL 5867496, at *4 (citing *Luke v. Family Care & Urgent Med. Clinic*, 323 F. App'x 496, 499-550 (9th Cir. 2009)). Rather, supplementation is limited to "correcting inaccuracies" or "filling interstices" in an initial disclosure. *Id.* (citing *Munchkin, Inc. v. Playtext Prods., LLC*, 600 F. App'x 537, 538 (9th Cir. 2015)); *see also Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, Civil No. 5:11-374-DCR, 2014 WL 1664263, at *9 (E.D. Ky. April 25, 2014) (expert's new report was not considered supplemental under Rule 26(e) because it addressed entirely new assertions and subject matter).

Federal "courts have routinely rejected attempts to add new analyses, opinions, or theories under the guise of supplementation." *Id.* (citing *E.E.O.C. v. Freeman*, 778 F.3d 463, 467 n.7 (4th Cir. 2015). This is especially true where, as here, the information underlying the new opinion was available to the party at the time of its initial disclosure. *Id.* at **12-13 (citing *Matilla*, 240 F. App'x at 43). Any "attempt to slip in a new theory of liability under the guise of supplementation....is not allowed under Rule 26(e)." *Id.* at *6 (citations omitted).

Similarly, Rule 26 also places restrictions on rebuttal opinions. They must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party['s]" expert disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii). "The rebuttal expert may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert. But they may not advance new arguments or new evidence outside the scope of the opposing expert's testimony." *Bentley*, 2016 WL 5867496, at *5 (cleaned up).

"[I]f a party's supplemental or rebuttal disclosure is, in truth, neither supplemental nor rebuttal … substance triumphs over form: The Court will look past the party's label and construe the report as an initial disclosure of an affirmative expert opinion under Rule 26(a)(2)(A)–(C). And if the deadline for such disclosures has passed, then the report is untimely." *Id.*

### A. David Changaris, M.D.

Dr. Changaris is a neurosurgeon retained by Plaintiff as a non-treating expert witness. His initial report, disclosed on December 5, 2023, contained several opinions related to Plaintiff's alleged traumatic brain injury and future medical needs. (R. 97-2) However, like all of Plaintiff's other retained experts, Plaintiff failed to provide Dr. Changaris with a single medical record pre-dating the subject accident (*Id.* at p. 1), which severely undercut the reliability and accuracy of his opinions. The records that were reviewed relating to the underlying collision were limited to those selected by Plaintiff's counsel.

Many, if not most, of Dr. Changaris' opinions are seemingly based to a large degree on the subjective complaints relayed by Plaintiff on the date of the examination. (*Id.*) That is, the majority of Plaintiff's subjective complaints documented by Dr. Changaris are contradictory to and/or inconsistent with the medical records created by the physicians actually providing treatment to Plaintiff. For example, Dr. Changaris CR 26 Report represents the first and only instance of

Plaintiff ever complaining of any of the following injuries in relation to the 2020 collision: 1) Neck Pain, 2) Left Leg Pain, 3) Right Knee Pain, 4) Left Ankle Pain, 5) Left Foot Pain, 6) Appetite Changes, 7) Sleep Difficulties, 8) Vision Changes, 9) Relationship Difficulties, 10) Hearing Difficulties, 11) Emotional Changes, and 12) Decreased Activity. (*Id.* at p. 1; *cf.* 149-2, Dr. Kriss' CR 26 Report, summarizing medical evidence relevant to Neck Pain (pp. 10-11), Eye/Vision (p. 12), Cognitive/Memory (pp. 18-21)). Of course, Plaintiff's purported complaints of headaches and concentration are consistent with only a single alternative encounter: Dr. Gile's January 9, 2023 "memory workup" undertaken at the request of Plaintiff's attorney. (**Exhibit 2**, 1/9/23, Dr. Gile Record). That leaves only two other complaints highlighted by Dr. Changaris: right hip pain and low back pain. Regarding the former, right hip pain, Dr. Changaris does not even mention, let alone address, the records from Plaintiff's treating providers demonstrating the near resolution of said pain by February 9, 2021, at the latest. (**Exhibit 3**, Results Physiotherapy Records, 3/3/21 Discharge Summary and 2/9/21 Treatment Record; *see also* R. 149-2 at pp. 15-17, Dr. Kriss CR 26 Report summarizing all medical encounters relating to right hip). Notwithstanding these extreme contradictions in Plaintiff's well-documented recovery, and seemingly based on nothing more than his brief examination of Plaintiff and analysis of a "FallTrak Balance Video Posturography Test," Dr. Changaris proceeds to offer the following opinions, all of which he attributes exclusively to the 2020 motor vehicle accident:

1. Upper Extremity Impairment resulting in 7% whole person impairment.
2. Traumatic Brain Injury.
3. Early signs of Parkinson's disease caused by Traumatic Brain Injury.
4. Severe risk of future falls.
5. Require "total nursing support within 10 years."
6. Require long-term day-care in 20 years ($1,603/month).
7. Require nursing home care in private room within 25 years ($8,821/month).
8. Inability to ever return to gainful employment.

(R. 97-2)

During Dr. Changaris' deposition on July 16, 2024, it was discovered that Dr. Changaris had authored a supplemental report dated June 12, 2024, based on an office visit he had with Plaintiff on June 11, 2024, and additional medical records he had received concerning Plaintiff's addiction history. (**Exhibit 4**, Changaris Transcript Excerpts at p. 40-41; **Exhibit 5**, Changaris 6/11/24 Report).

On July 31, 2024 (15 days after the deposition), Plaintiff filed a Supplemental CR 26 Disclosure regarding supplemental disclosure of Dr. Changaris' Report, which included the 6/11/24 "Office Note" that was first revealed during his deposition and a never-before-seen seven-page Supplemental Report dated July 30, 2024. (R. 182)

1. <u>Dr. Changaris' untimely supplemental report does not satisfy any legitimate purpose for supplementation.</u>

Dr. Changaris' "supplemental" reports fail to meet the definition or intent of Rule 26(a)(2)(E) or Rule 26(e). These reports do not seek to correct inaccuracies or address new evidence that could not have been obtained earlier. Instead, they constitute an untimely and prejudicial introduction of new expert opinions based on readily available information, at a time that deprives Defendants of the opportunity to respond. Below is a list of new opinions Dr. Changaris attempts to introduce:

- Dr. Changaris' supplemental report appears to address deficiencies in his initial report rather than properly the opinions of Defendants' expert, Dr. Kriss. For example, he now claims to have factored in Plaintiff's history of drug abuse in his analysis. However, this consideration was absent in his original methodology and appears to be an attempt to bolster his earlier opinions in light of Dr. Kriss' critique, rather than directly rebutting those critiques.

- For the first time in his supplemental report, Dr. Changaris asserts that the Plaintiff is not a reliable historian. This appears to be an attempt to address Dr. Kriss' critique of his methodology but lacks any substantial elaboration or explanation, making it a new argument rather than a rebuttal.

9

- The supplemental report includes Dr. Changaris' perspective on the role of an expert witness, which appears to be an attempt to rebut impeachment during his deposition. This commentary is unrelated to Dr. Kriss' expert opinions and introduces arguments that fall outside the scope of a proper rebuttal.

- Dr. Changaris offers a new opinion that "Mr. Walden provides a credible history that his brain does not function as well after this third accident than before this third accident," suggesting a progression of neurodegenerative failure. This new opinion is based on his incorporation and comparison of prior medical records available at the time of his initial report. This raises the question of why this significant diagnosis was not made or discussed earlier. The timing of this new diagnosis demonstrates it was crafted in response to challenges made by Defendant's expert, Dr. Kriss, rather than as a genuine supplement or rebuttal. Moreover, Dr. Changaris fails to provide a detailed explanation or medical basis for this new diagnosis leaving Defendants with insufficient information to challenge or understand its foundation.

- In his supplemental report, Dr. Changaris introduces an opinion that it is "unreasonable to believe that a substantial accident sufficient to cause hip fractures would not also cause a brain injury." This opinion was not included in his original expert report and represents a significant shift in his analysis. This new assertion attempts to establish a direct causal link between the severity of physical injuries (hip fractures) and the likelihood of a brain injury occurring simultaneously. However, this theory was never previously disclosed and does not rebut any specific point made by Dr. Kriss. Instead, it presents an entirely new theory of injury causation, which Defendants have had no opportunity to challenge or investigate during discovery.

- Dr. Changaris concurs with Dr. Wilson in his supplemental report that Plaintiff will need a hip replacement. This opinion is irrelevant in rebutting Dr. Kriss' report and represents a new finding that should have been disclosed in his original expert report.

- Dr. Changaris asserts in his supplemental report that "the best information about medical condition flows from careful history and physical exam." While this may be a generally accepted principle in the medical field, this statement represents a new emphasis in his analysis that was not highlighted in his original report. This statement appears to be an attempt to reinforce the reliability of his conclusions by emphasizing the thoroughness of his history-taking and physical examination. However, this focus on the importance of history and physical examination was not a central theme in Dr. Changaris' original report and does not rebut any points raised by Dr. Kriss. Instead, it seems designed to bolster the credibility of Dr. Changaris' prior conclusions in light of critiques during his deposition. Moreover, this new emphasis lacks a detailed explanation of how the history and physical exam were conducted or how they specifically informed Dr. Changaris' opinions, effectively introducing a new aspect to his methodology without providing the necessary

detail for Defendants to fully understand and challenge this approach. In sum, by introducing this new statement, Dr. Changaris is effectively attempting to fortify his earlier opinions with additional justifications that were not previously disclosed.

Where the "supplemental" opinions of Dr. Changaris appear to be the result of poor expert preparation, and an untimely attempt to rehabilitate the ailing aspects of Plaintiff's case, this "supplement" is nothing more than a transparent attempt to game the system. By serving entirely new opinions fifteen days after Dr. Changaris' deposition, Plaintiff places Defendants at a severe disadvantage by literally precluding any cross-examination of these new opinions produced weeks after the conclusion of Dr. Changaris' deposition. As noted in *Bentley*, 2016 WL 5867496, at *4, Rule 26(e) forbids parties from amending expert reports to bolster their case at the last minute. These opinions not only reflect an improper attempt to cure the fatal deficiencies inherent in Dr. Changaris' original opinions, but also seek to introduce new theories and findings that were never disclosed in the initial expert report.

Dr. Changaris' supplemental report represents an improper attempt to introduce new opinions based on information that was available at the time of his initial disclosure. The supplementation provision does not give license to sandbag one's opponent with claims and issues that should have been included in the initial report. *Id.* (citation omitted). That is precisely what has happened here. Where these opinions are based entirely on the expert's review of materials that were available to him prior to his initial report, there can be no justification for the late disclosure.

2.  Dr. Changaris' Report includes untimely rebuttal expert opinions.

Although labeled a supplemental report, Dr. Changaris' July 30, 2024, Report introduces several rebuttal opinions that were not disclosed in a timely manner and exceed the permissible scope of expert supplementation. These opinions go beyond addressing specific points made by

11

Defendants' expert, Dr. Kriss; instead, they introduce new critiques, evidence, and arguments that were not included in Dr. Changaris' initial report. Below are examples of the rebuttal opinions that constitute improper and untimely disclosures, thereby prejudicing Defendants:

- In his supplemental report, Dr. Changaris offers a broad, generic critique of Dr. Kriss without addressing specific aspects of Dr. Kriss' analysis or methodology. Such a generic critique fails to meet the standard for a proper rebuttal, as it does not directly respond to or refute the points raised by Dr. Kriss. Instead, it serves only to generally disparage Dr. Kriss' work without providing substantive, detailed analysis or evidence to support these criticisms.

- Dr. Changaris' supplemental report includes personal opinions regarding Dr. Kriss' reputation as an expert witness. These opinions are irrelevant to the scientific and factual issues in this case and do not constitute a proper rebuttal. Expert testimony should focus on the scientific validity of the methodologies and conclusions, not on personal assessments of the opposing expert's reputation. By including these opinions, Dr. Changaris attempts to undermine Dr. Kriss on a personal level rather than addressing the substantive critiques made in Dr. Kriss' reports.

- In an effort to rebut Dr. Kriss' critiques, Dr. Changaris introduces new evidence to support the reliability of Videonystagmography (VNG) testing. This evidence was not included in his original report and is therefore an untimely and improper supplement. By waiting until after his deposition to introduce new data or literature to bolster the validity of VNG, Dr. Changaris expands the scope of his original testimony in a manner that is beyond prejudicial to Defendants.

- The supplemental report contains a vague critique that Dr. Kriss "failed to provide balanced expert testimony." This statement lacks specificity, making it an improper rebuttal. It does not address any particular aspect of Dr. Kriss' analysis or methodology, instead appearing to be an argumentative statement rather than a scientific rebuttal.

### B. Timothy Wilson M.D. (Orthopedic Surgeon)

Dr. Wilson was retained by Plaintiff for the limited purpose of offering expert testimony in this action. (R. 97) Dr. Wilson is not a treating physician, but rather, examined Plaintiff on November 30, 2023, conducted an extremely limited review of select medical records post-dating

the 2020 collision, and authored a CR 26 Report thereafter, which was produced on December 5, 2023. (*Id.*; R. 97-1) At the time of his initial report, Dr. Wilson did **not** review a single medical record documenting Plaintiff's injuries and conditions prior to the subject accident. (R. 97-1 at pp. 1-2)

In his initial report, Dr. Wilson offered the opinion that Plaintiff currently suffers a 10% whole person consisting of the following: acetabular fracture (3%), decreased hip range of motion (4%), and substance abuse (3%). (*Id.*) Despite having failed to review the first medical record pre-dating the subject accident, Dr. Wilson attributed a full 50% of Plaintiff's impairment rating to the subject accident. (*Id.*) Dr. Wilson further opined that Plaintiff will likely need a right total hip arthroplasty at an unknown future date. (*Id.*)

On July 30, 2024, at 12:26 p.m., Plaintiff filed a supplemental Rule 26 Expert Disclosure, which included an addendum authored by Dr. Wilson on July 12, 2024. (R. 176; R. 176-1) Dr. Wilson's July 12, 2024 "Addendum" – which was in Plaintiff counsel's possession no later than July 16, 2024 – was technically disclosed approximately 2 ½ hours prior to his July 30, 2024, discovery deposition. (*See* R. 176-1; **Exhibit 1**, Wilson Transcript Excerpt, at p. 9). Undersigned counsel was traveling to the deposition site in Lexington at the time of filing and only became aware of the "Addendum" after the deposition had begun. (*Id.* at pp. 6-7). The deposition of Dr. Wilson went forward with Defendant's position stated on the record. (*Id.* at pp. 11-16, 19). While the deposition was limited to the timely report, there was testimony which confirmed Defendants' position that such "Addendum" could have been disclosed on a prior date before the deposition, as the Addendum was in Plaintiff counsel's possession no less than two weeks before it was produced. (*Id.* at p. 9).

According to Plaintiff's counsel, he intentionally delayed the disclosure of Dr. Wilson's "Addendum" because "there were additional records that needed to be reviewed" by Dr. Wilson. (*Id.*) However, Dr. Wilson testified that he had only received these additional records the prior week and that they did not change his opinion. Unsurprisingly, no additional report or documentation of review of those records exists. (*Id.*) Regardless, Plaintiff's strategic filing and withholding deprived Defendants of any opportunity to adequately prepare for the critical information contained in the "Addendum" that was in Plaintiff's possession for two weeks.

Dr. Wilson's Addendum indicates that he reviewed Dr. Kriss' supplemental report, as it appears to address Dr. Kriss' findings throughout. (R. 176-1) Consequently, Dr. Wilson's Addendum should be construed as a rebuttal to Dr. Kriss' June 17, 2024, supplemental report. The amended scheduling order does not specify a deadline for rebuttal experts, thereby invoking the default deadline established by Rule 26(a)(2)(D), which requires rebuttal disclosures to be made within thirty (30) days after the other party's disclosure. Since Defendants filed Dr. Kriss' supplemental report on June 17, 2024 (R. 159), Plaintiff's rebuttal deadline was July 17, 2024. Plaintiff, however, attempts to mask Dr. Wilson's Addendum as a supplemental disclosure to obscure the fact that it is an untimely rebuttal, filed thirteen (13) days after the rebuttal deadline of July 17, 2024.

### C. Rebecca Clay, RN

During her deposition on July 17, 2024, Rebecca Clay, RN, revealed that on the very day of her deposition, Plaintiff's counsel had provided her with approximately one hundred pages of medical records related to Mr. Walden's treatment at UK Medical Center in 2012. (**Exhibit 6**, Clay Transcript Excerpts, at pp. 10-11). Ms. Clay admitted that she had only "briefly" reviewed these records before her testimony. (*Id.*) She acknowledged that the most significant change resulting

14

from her review was her revised opinion that Mr. Walden did not suffer from "post-traumatic epilepsy" because of the 2020 accident, an opinion she had previously stated in her initial report.

Thirteen days after her deposition, on July 30, 2024, Plaintiff filed a supplemental disclosure that included an "Updated Evaluation" authored by Ms. Clay. (R. 180).[1] This supplemental disclosure is a transparent and improper attempt to address and rectify the flaws and issues demonstrated during her deposition—issues that critically undermined the reliability of her initial opinions set forth in her original report.

During her deposition on July 17, 2024, Ms. Clay acknowledged receiving additional medical records related to Plaintiff's treatment in 2012, which led her to revise her opinion on Plaintiff's diagnosis of post-traumatic epilepsy. Thirteen days after her deposition, Plaintiff filed a supplemental disclosure, including an "Updated Evaluation" authored by Ms. Clay. (R. 180).

This disclosure was not prompted by any new evidence but was instead an improper effort to remedy not only the profound reliability problems addressed during her deposition, but also retract multiple admissions made by Ms. Clay that were fatal to certain of Plaintiff's claims. As such, it is an improper and untimely attempt to supplement her original report, and its introduction at this late stage is prejudicial to Defendants. Critically, Ms. Clay's supplemental disclosure was not prompted by any newly discovered evidence. Instead, it was an effort to revise her opinions after the deposition exposed flaws in her original report, particularly concerning the diagnosis of post-traumatic epilepsy. As Ms. Clay herself testified, the medical records that purportedly influenced her revised opinion were available prior to her initial report and merely highlighted preexisting conditions, including a prior head injury, orthopedic injuries, and an intracranial bleed from a 2012 pedestrian motor vehicle accident. These records were readily accessible and should

---

[1] E-Filed at 4:03 PM on 7/30/23 (during deposition of Dr. Timothy Wilson).

have been reviewed in connection with her initial expert disclosure, which was due on December 5, 2023.

Moreover, Ms. Clay's supplemental disclosure cannot be construed as a rebuttal to Defendants' expert disclosures because neither of Dr. Kriss's reports referenced Ms. Clay or her opinions. Thus, the exclusive purpose of the supplemental disclosure is to cure fatal admissions and reliability issues revealed during her deposition. The disclosure was filed a staggering 238 days—nearly eight months—after Plaintiff's expert disclosure deadline of December 5, 2023, making it untimely and unjustifiable.

## II.      Plaintiff's Failure to Timely Disclose the Supplemental Expert Reports is Neither Justified nor Harmless, Mandating Exclusion under Rule 37(c).

When a party does not comply with the expert disclosure requirements, the party "'is not allowed to use' the information or person that was not disclosed 'on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 567 (6th Cir. 2016) (quoting Fed. R. Civ. P. 37(c)(1)). "Rule 37 is written in mandatory terms and is designed to provide a strong inducement for disclosure of Rule 26(a) material." *Sexton v. Uniroyal Chem. Co.*, 62 F. App'x 615, 616 n.1 (6th Cir. 2003). *Id.* (quoting *Ames v. Van Dyne*, 100 F.3d 956, 1996 WL 662899, at *4 (6th Cir. Nov. 13, 1996) (Table)). "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Dickenson v. Cardiac & Thoracic Surgery of Eastern Tennessee*, 388 F.3d 976, 983 (6th Cir. 2004) (quoting *Musser v. Gentiva Health Services*, 356 F.3d 751, 758 (7th Cir. 2004)).

A party moving for Fed. R. Civ. P. 37(c) sanctions need not show that the other party's disclosure violations have caused them prejudice, as "[h]armlessness ... is the key under Rule 37, not prejudice" *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003). "[T]he potentially sanctioned

party" has the burden "to prove harmlessness." *Roberts ex rel. Johnson v. Galen of Virginia, Inc*, 325 F.3d 776, 782 (6th Cir. 2003). "The advisory committee's note to Rule 37(c) strongly suggests that harmless involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party." *Sommer*, 317 F.3d at 693 (quoting *Vance v. United States*, No. 98-5488, 1999 WL 455435, at *5 (6th Cir. June 25, 1999)) (unpublished table decision) (internal citations omitted).

In determining whether the failure to timely disclose is substantially justified or harmless, a court will consider the following five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure." *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015). "The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating honest, harmless mistakes from the type of underhanded gamesmanship that warrants the harsh remedy of exclusion." *Bentley*, 2016 WL 5867496 at *10 (quoting *Howe*, 801 F.3d at 749)).

**A. Plaintiff's untimely expert disclosures were an unfair surprise.**

The timing of Plaintiff's supplemental disclosures—either shortly before, during, or after the depositions—created an unfair surprise for Defendants, significantly impairing (or outright preventing) their ability to effectively challenge the opinions of Plaintiff's experts. The fundamental purpose of an expert witness deposition is not to discover the expert's opinions for the first time but rather to explore, challenge, and probe the rationale and basis for those opinions. *Garrison v. Sam's East, Inc.*, Civil No. 1:16-CV-00152-GNS, 2018 WL 6566546, at *3 (W.D. Ky. May 24, 2018). "A party's ability to do so is vastly impaired when it is forced to go into the deposition without advance disclosure of the expert's opinions and why the Rule mandates

17

advance disclosure of 'a summary of the facts and opinions to which the witness it expected to testify.'" *Id.* (quoting Rule 26(a)(2)(C)(ii)).

The surprise occasioned by an untimely disclosure prior to an expert's deposition may merely be "troublesome," but a surprise disclosure during or after a deposition escalates the level of prejudice to an "extreme" degree. *Redmond v. United States*, 194 F. Supp. 3d 606, 613 (E.D. Mich. 2016); *see also, e.g.*, *Commonwealth Motorcycles, Inc. v. Ducati N. Am., Inc.*, No. 3:16-cv-2, 2017 WL 3701192, at *4 (E.D. Ky. Aug. 25, 2017) (finding surprise in the specifics of a new opinion introduced without adequate prior notice, depriving the opposing party of a fair opportunity to address those opinions in real-time during the deposition).

In the present case, because disclosures came during or after expert depositions, Defendants' counsel was unable to depose Plaintiff's experts properly on subjects and opinions not addressed in their initial reports. For instance, the supplemental report of Dr. Wilson was disclosed mere hours before his deposition, leaving Defendants' counsel with no time to review and prepare questions based on the new material. Similarly, the supplemental reports of Dr. Changaris and Ms. Clay were disclosed after their respective depositions, effectively nullifying Defendants' ability to question these experts on their new opinions. This deprived Defendants of the chance to challenge these supplemental opinions during the depositions, which is critical for developing an effective rebuttal or cross-examination strategy.

Moreover, the timing of these supplemental disclosures also impacted Defendants' ability to prepare rebuttal reports, as the new information was not made available within a reasonable timeframe before the close of discovery. As a result, Defendants were placed at a significant disadvantage. This repeated unfair surprise, particularly in the context of the critical stage of expert

depositions, justifies the exclusion of the untimely disclosed opinions under the governing rules and applicable case law.

**B. The surprise to Defendants cannot be cured without excluding such untimely disclosures.**

The surprise caused by Plaintiff's untimely expert disclosures cannot be cured without significantly disrupting the existing case schedule. Defendants are faced with the prospect of either bearing substantial additional costs or enduring delays in the proceedings to address these late disclosures. To properly address the new opinions introduced by Plaintiff's experts, Defendants would need to spend additional time consulting with their own expert to address the new opinions before ultimately having to re-depose each of Plaintiff's three retained experts. This would involve not only the logistical difficulties and financial costs associated with arranging and conducting additional depositions but also the strategic disadvantage of having to respond to entirely new theories and evidence without adequate preparation time. *See EQT Prod. Co. v. Magnum Hunter Prod., Inc*., 768 F. App'x. 459, 469 (6th Cir. 2019) (late disclosure of information could not be cured by re-deposing witnesses because the moving party would be forced to bear the effort and expense necessary to cure the non-moving party's failure to disclose).

In *Bentley v. Highlands Hosp. Corp.*, the court found that the defendant lacked an adequate opportunity to cure the prejudice caused by a late disclosure of a supplemental expert report. In that case, the plaintiff disclosed the supplemental report shortly before the defendant's deadline to respond to expert disclosures, with the close of expert discovery only weeks away. The court recognized that the prejudice to the defendant could not be cured without disrupting the entire discovery schedule, underscoring the inherent unfairness of such late disclosures. *Bentley*, 2016 WL 5867496 at *10.

Here, the ability to cure is clearly not available with the current deadlines. The only potential to cure would require disruption of the deadlines in place. However, this remedy is neither practical nor fair to Defendants. The existing deadlines were established to ensure a timely and orderly progression of the case, and Plaintiff's untimely disclosures undermine this process. Extending deadlines to accommodate these late disclosures would unfairly penalize Defendants, forcing them to invest additional time and resources to address issues that should have been disclosed well in advance.

Moreover, the prejudice to Defendants extends beyond the financial and logistical burdens. The new opinions introduced by Plaintiff's experts could significantly alter the landscape of the case, requiring Defendants to rethink their strategy, re-engage their own experts for additional analysis, and potentially revise their rebuttal reports.

Given the significant prejudice to Defendants and the lack of any practical means to cure it without disrupting the court's schedule, the only appropriate remedy is to exclude the untimely disclosures. This approach is consistent with the rules governing expert disclosures and ensures that the proceedings remain fair and orderly, without placing an undue burden on one party due to the other party's failure to comply with the rules.

### C. The Untimely Disclosures Would Disrupt the Trial Schedule.

Allowing Plaintiff's untimely disclosures to stand would cause significant disruption to the trial schedule, undermining the orderly progression of this case. It is far too late in the day to now throw open the doors to fact discovery because Plaintiff has decided to broaden its theory at the proverbial last moment with evidence that it previously deemed to be so unimportant that he made no effort to pursue until the last week to seek discovery. *See Consumer Fin. Prot. Bureau v.*

*Borders & Borders*, Civil No. 3:13-CV-1047-CRS, 2016 WL 9460472, at *6 (W.D. Ky. June 29, 2016).

As the Sixth Circuit recognized in *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, even a disclosure made several months before trial can disrupt the proceedings by forcing the opposing party to spend critical time reviewing new information and re-deposing witnesses instead of preparing for trial. *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, 768 F. App'x 459, 469 (6th Cir. 2019). In this case, Defendants would be compelled to shift their focus from trial preparation to addressing the new opinions and evidence presented in Plaintiff's supplemental expert reports. This diversion of resources would not only delay the trial but also prejudice Defendants' ability to effectively present their case.

The untimely disclosures would necessitate reopening expert discovery, re-deposing witnesses, and potentially revising expert rebuttal reports, all of which would significantly compromise the trial schedule. The Court's current deadlines were carefully crafted to ensure a fair and efficient resolution of this case. Allowing Plaintiff's late disclosures would undermine these deadlines, creating chaos in the pre-trial process and imposing undue burdens on Defendants. *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-cv-150, 2017 WL 2295906, at *4 (E.D. Ky. May 25, 2017) ("[I]f the nondisclosure would require significant compromise in the status and schedule of a case, or would require consequential management in terms of discovery costs, burdens, and sequence, then the failure to disclose has indeed caused harm beyond the unilateral curative powers of any party.")

Given the significant disruption that would result from allowing these untimely disclosures, the only appropriate remedy is to exclude the late-disclosed opinions and evidence. This will

preserve the integrity of the trial schedule, prevent unnecessary delays, and ensure that both parties have a fair opportunity to prepare their cases.

### D. The Importance of the Evidence Does Not Override the Need for Timely Disclosure.

While the importance of evidence is undeniably a factor to consider, it does not excuse untimely disclosure, especially when such disclosure causes significant prejudice to the opposing party. The Sixth Circuit has recognized that evidentiary importance "can cut both ways" — "[t]he more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 220 (6th Cir. 2019) (quotations and citations omitted).

In the present case, Plaintiff may argue that the supplemental expert opinions are vital to his case. However, the importance of this evidence does not absolve Plaintiff of the responsibility to disclose it in a timely manner. The late disclosure has deprived Defendants of the opportunity to fully prepare their defense, thereby creating significant prejudice that cannot be overlooked. The court's role in managing its docket and ensuring a fair trial for both parties must take precedence over any claimed importance of the late-disclosed evidence.

Furthermore, Plaintiff's failure to exercise reasonable diligence is no mere technicality. *Smith v. Holston Medical Group, P.C.*, 595 F. App'x 474, 480 (6th Cir. 2014) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("The district court's decision to honor the terms of its binding scheduling order does not simply exalt procedural technicalities over the merits of Johnson's case. Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.") ("The 'importance of ... proposed testimony cannot singularly override the enforcement of local rules and scheduling orders.'" (citation omitted)).

22

Therefore, the importance of the supplemental expert opinions in this case does not override the need for their exclusion. *Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 754 (6th Cir. 2003). The integrity of the judicial process depends on the timely and fair exchange of information, and allowing these untimely disclosures to stand would undermine that integrity.

### E. Plaintiff Has Offered No Justification for the Late Disclosures.

Plaintiff has failed to provide any justification for the untimely disclosures, and none can be discerned from the circumstances of this case. The information underlying the supplemental opinions was readily available at the time of the initial disclosures, yet Plaintiff inexplicably delayed in providing this information until after the experts' depositions had been conducted. Such a delay is both unjustifiable and prejudicial to Defendants.

Under Rule 37(c)(1), the standard for forgiveness is stringent. As the court in *Bentley* stated, "forgiveness must be earned. Unlike exclusion, it neither comes automatically nor easily." *Bentley*, 2016 WL 5867496, at *11. The Sixth Circuit has clearly articulated that "the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010) (quoting *Vance ex rel. Hammons v. United States*, 182 F.3d 920, 1999 WL 455435, at *6 (6th Cir. 1999)). In this case, Plaintiff has offered no reasonable explanation for the failure to comply with Rule 26(a) or the Scheduling Order, nor has there been any assertion that the delay was harmless.

The court in *EQT Prod. Co. v. Magnum Hunter Prod., Inc.* emphasized that "faith—good or bad—is not relevant [to] the substantial justification component of a [Howe] analysis." *EQT Prod. Co.*, 2017 WL 2295906, at *6 (cleaned up). Instead, the court looks at the objective circumstances surrounding the nondisclosure and whether full and timely disclosure was feasible.

*Id.* In this case, Plaintiff has provided no objectively reasonable explanation for the failure to comply with Rule 26(a). The circumstances do not suggest an honest mistake but rather a deliberate decision to delay the disclosure of critical information until it was strategically advantageous to Plaintiff.

Plaintiff has not provided any justification for the untimely disclosures, and none is apparent from the circumstances. The information underlying the supplemental opinions was available at the time of the initial disclosures, and there is no reasonable explanation for the delay. Plaintiff's failure to disclose the supplemental opinions in a timely manner appears to be a tactical decision rather than an honest mistake. This kind of strategic nondisclosure is precisely what Rule 37(c) is designed to prevent. Therefore, exclusion of these late-disclosed opinions is warranted and necessary to preserve the integrity of the discovery process and ensure a fair trial.

<u>CONCLUSION</u>

For the reasons set forth above, Defendants respectfully request that the Court grant their motion to strike the Plaintiff's "supplemental" expert disclosures in their entirety. The untimely reports introduced by Plaintiff's experts are not only unfairly prejudicial to Defendants but also violate the clear mandates of Rule 26 and the Scheduling Order. Plaintiff has failed to provide any justification for these late disclosures, and the resulting surprise cannot be easily cured without significant disruption to the trial schedule. Allowing these supplemental reports to stand would undermine the integrity of the judicial process, forcing Defendants to bear unnecessary costs, delays, and strategic disadvantages. Accordingly, Defendants respectfully request that this Court strike the supplemental expert reports of Dr. Timothy Wilson, Dr. David Changaris, and Rebecca Clay, RN, and grant any other relief that the Court deems just and appropriate under the circumstances.

24

Respectfully submitted,

HAMM, MILBY & RIDINGS, PLLC
120 North Main Street
London, KY 40741
Phone: 606-864-4126
Fax: 606-878-8144
Email: jridings@hmrkylaw.com
*Counsel for Defendants, Enterprise Services Group,*
*LLC, and Clarence M. Howard*


By:  /s/ Jay Ridings
　　　　JAY MILBY RIDINGS

<u>CERTIFICATE OF SERVICE</u>

I certify that on the 3rd day of September 2024, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to

counsel of record.


　 /s/ Jay Ridings
*Counsel for Defendants, Enterprise Services Group,*
*LLC, and Clarence M. Howard*

25