UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| CHARLES L. WALDEN )<br>)<br>    Plaintiff )<br>)<br>)<br>v. )<br>)<br>ENTERPRISE SERVICES GROUP, LLC )<br>CLARENCE M. HOWARD, AND )<br>NATIONAL INDEMNITY GROUP OF )<br>INSURANCE COMPANIES OR )<br>NATIONAL INDEMNITY COMPANY, )<br>VINCE KLINE, AND PROGRESSIVE )<br>CASUALTY INSURANCE COMPANY )<br><br>    Defendants amended | CIVIL ACTION NO. 5:22-CV-00238-KKC |

\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMARY JUDGMENT AS TO PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES (R. 189)**
\*\*\*\*\*\*\*\*\*\*

Comes the Plaintiff, CHARLES L. WALDEN, and for his Response to Defendants', Motion for Partial Summary Judgment as to Plaintiff's Claims for Punitive Damages (R. 189), hereby states as follows:

### INTRODUCTION

By no fault of the Plaintiff, there has been no meaningful participation in discovery from Defendant Enterprise whom has failed to appear in any capacity at two duly noticed depositions, and has still not actually answered written discovery; the Court instead apparently allowing counsel for the Defendants to answer discovery as it pertains to counsel's knowledge and not the knowledge of the party to whom the written discovery was submitted. Defendant Howard could not be found and did not make himself available to this litigation until nearly two years (20

1

months) after the Complaint had been filed. Even when he made himself available for deposition, Defendant Howard submitted new written discovery responses on which Plaintiff has not been afforded the basic benefit of cross examining Defendant Howard. Although the initial discovery deadline has passed, there are two pending motions with the Court which have a bearing on discovery and cause Defendant's Motion for Partial Summary Judgment to be premature on its best day. Thus, the Motion for Summary Judgment be these Defendants is premature and should be denied.

## STATEMENT OF FACTS

This lawsuit stems from a motor vehicle collision that occurred on August 10, 2020. Mr. Charles Walden filed his Complaint on August 11, 2022. Defendants Howard and Enterprise Services Group, the driver of the commercial motor vehicle and the company of ownership, respectively, disappeared sometime between the date of the collision and the date when Mr. Walden filed his Complaint. On April 23, 2024, counsel for Defendants Howard and Enterprise advised via letter (sent via email) that they were able to locate the defendant driver, Clarence Howard, and could move forward with scheduling his deposition. Counsel for the parties conferred on multiple occasions and scheduled Defendant Howard's deposition for June 14, 2024.

On June 14, 2024, Plaintiff, by counsel, had his first opportunity to question Defendant Howard. He testified in his deposition of the name of a part-owner of Enterprise Services Group, Ms. Shanta Dixon, providing this information for the first time in this case and only after requiring a private conference with his counsel. After Howard's deposition, counsel for Howard provided a new version of Howard's Response to Plaintiff's Interrogatories than those previously

2

exchanged or than those shown at the deposition. Plaintiff's counsel had no opportunity to review prior to Defendant Howard's deposition.

Mr. Walden gave his deposition on January 4, 2023, and depositions of multiple experts for both sides have been conducted. Nonetheless, the Defendants have failed to meaningfully participate in the discovery process despite the repeated efforts of the Plaintiff—Defendant Howard only participating at the eleventh hour and providing brand new information that was highly relevant to locating the other Defendant.

## LEGAL STANDARDS

**Summary Judgement**

Pursuant to the Federal Rules of Civil Procedure Rule 56(c), summary judgment is only proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When reviewing motions for summary judgment, courts are required to determine if the evidence shows "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Importantly, all facts and inferences that may be permissibly drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). When there is a dispute as to genuine issues of material facts, the case is properly submitted to a jury; "[t]he more judges take cases away from juries, the more the concepts of reasonable conduct, negligence and gross negligence become synonumous with the view of the judge or judges on that court." *Horton v.*

*Union Light, Heat & Power Co.*, 690 S.W.2d 382, 385 (Ky. 1985). Jury trials are a cornerstone of our Commonwealth and our nation: "The role of the jury in interpreting the evidence and finding the ultimate facts is an American tradition so fundamental as to merit constitutional recognition. *U.S. Cont. Amend. VII; Ky. Const. Sec. 7.*" *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 385 (Ky. 1985).

**Punitive Damages**

Per KRS § 411.184(2), punitive damages may be awarded when "proving, by clear and convincing evidence, [] the defendant . . . acted toward the plaintiff with oppression, fraud or malice." However, Kentucky courts have established "that punitive damages may also be awarded under the common law standard of 'gross negligence.'" *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 870 (Ky. 2016) (citing *Williams v. Wilson*, 972 S.W.2d 260, 264 (Ky. 1998)). Kentucky courts have established that gross negligence takes form when a "defendant recklessly disregards the lives or safety of others or when one acts willfully or maliciously." *Cooper v. Barth*, 464 S.W.2d 233, 235 (Ky. 1971). Therefore, "punitive damages may be awarded when the evidence satisfies either statutory standard or the common law standard of gross negligence." *Saint Joseph Healthcare, Inc.*, 487 S.W.3d at 870.

**ARGUMENT**

**A. There are genuine issues of material facts regarding the award of punitive damages against Defendant Howard.**

Defendant claims that "Plaintiff cannot point to any record evidence that Howard or Enterprise acted in such a way as to justify an award of punitive damages." Respectfully, this is substantially untrue, as there are genuine issues of material fact regarding Defendant Howard's

4

conduct. A reasonable jury could determine that the Defendant Howard's failure to adhere to multiple safety rules, having admitted to being unaware of the Federal Motor Carrier Safety Regulations, was a reckless disregard of the safety and well-being of other drivers using public roads.

As an initial matter, by no fault of the Plaintiff, there has been no meaningful participation in discovery from Defendant Enterprise, leaving gaps in information that even the most diligent plaintiff imagined could not resolve without the Court requiring participation of the defendant employer. Defendant Enterprise has filed **objectively fraudulent** documents with the Georgia Secretary of State regarding their agent for service of process in an attempt to conceal themselves and avoid participation in this lawsuit. Furthermore, Defendant Howard finally answered discovery and gave a deposition in May and June of 2024, preventing the Plaintiff from learning the identities of parties with relevant information—namely, Ms. Shanta Dixon, the dispatcher and co-owner of Enterprise Services Group, according to Defendant Howard—until nearly the end of the discovery deadline. Accordingly, any Motion for Summary Judgment by these Defendants should fail as premature until Defendant Enterpris is compelled to participate in discovery.

Defendants allege that punitive damages are incredibly rare in Kentucky, and that the standard to achieve them is far above what Mr. Walden can prove by the record. Punitive damages have a longstanding history in Kentucky, predating even our Constitution:

> The concept of permitting punitive damages in addition to compensatory damages is one of long-standing in Kentucky. [ . . . ] it is a right protected from change by this court by the spirit if not the literal language of Section 54 of the Kentucky Constitution. Older cases, a number of which predate our Constitution, recognize and approve the award of punitive damages in addition to compensatory damages, against corporations and other employers based on gross negligence of their employees. See *Louisville & N.R. Co. v. Kelly's Adm'x*, 100 Ky. 421, 38 S.W. 852

(1897) and *Maysville & Lexington R.R. Co. v. Herrick*, 76 Ky. (13 Bush) 122 (1877).

*Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 388 (Ky. 1985).

Defendants also claim "there is simply no proof of intentional or wanton conduct or of gross negligence which would warrant presenting the issue of punitive damages to a jury." Kentucky courts have held that to justify a punitive damages claim, there should first be a finding that the defendant failed to exercise reasonable care, then a finding that this negligence was accompanied by "wanton or reckless disregard for the lives, safety or property of others." *Horton* at 389-90. Our Kentucky Supreme Court adopted the rule in the Restatement (Second) of Torts, stating:

> 'Punitive damages may be *awarded for conduct that is outrageous*, because of the defendant's evil motive *or* his reckless indifference to the rights of others.' (Emphasis added [by the Kentucky Supreme Court]) [ . . . ] The distinguishing characteristic in cases where punitive damages are authorized has not been whether the injury was intentional but whether the misconduct 'has the character of outrage.' *Hensley v. Paul Miller Ford Co., Inc.*, Ky., 508 S.W.2d 759, 762 (1974).

[*Horton* at 389]. Thus, while violation of a statute does not *require* an award of punitive damages, it is absolutely evidence of misconduct and of a "reckless disregard for the lives [and] safety" of others.

In *Horn v. Hancock,* 700 S.W.2d 419, 421 (Ky. App. 1985), a collision occurred when a tractor-trailer was transporting a wide load across a narrow bridge. The vehicle behind the tractor-trailer attempted to pass, but while doing so, the plaintiff came around the curve; upon seeing the vehicle attempting to pass and the large tractor-trailer, the plaintiff swerved and was injured in a collision. The plaintiff indicated that the defendant tractor-trailer's failure to have a lead vehicle, as required by statute, warranted punitive damages. According to the court in *Horn*, "the failure to comply with the statutory requirements of a lead vehicle was an intentional

6

act[…]" [*Horn* at 6]. However, the court determined that there was not a ***causal connection*** between the statutory violation and the damages; in other words, the court found that failing to have a lead vehicle was not the cause of the collision, rather it was the vehicle attempting to improperly pass on a narrow bridge that caused the subject collision [*Horn* at 6]. This is readily distinguishable from Mr. Walden's case. Had Defendant Howard properly complied with the statutory requirement to place warning placards at the proper locations behind the disabled vehicle, Mr. Walden would have had sufficient warning of the box truck that was parked in the road, and as he testified and Defendant Howard's expert agrees, had sufficient clearance to avoid the collision. Defendant Howard's failure to properly place warning placards was causally connected to this collision; *but for* his improper placement of warning placards, this collision would not have occurred. But for his failure to pull his vehicle entirely off the road, where there was shoulder space to do so just approximately 50 feet prior to where he stopped the vehicle with it hanging into the driving lane of the exit ramp, the collision would not have occurred. The jury should determine exactly how reckless it is to park partially in a moving lane on an exit ramp. But for Defendant Howard's failure to turn his hazard lights on, the collision would not have happened. But for Defendant Howard being completely oblivious to the safety rules he is required to know by law, Mr. Walden wouldn't be in the detrimental condition he now finds himself in for the rest of his life. It's easy to understand why the Defendants don't want this case heard on the merits, but Mr. Walden is entitled to his day in court and the trier of fact should determine how recklessly dangerous Defendant Howard's conduct was. Even Defendant's accident reconstructionist admitted Defendant Howard should have taken all of these precautions and followed the safety rules to avoid the collision. Either the safety rules mean nothing and serve no purpose or Defendant Howard acted in reckless disregard for the lives and safety of

other drivers when he got behind the wheel of that truck not knowing anything about the safety rules he was clearly required by law to understand and apply in his work. *See* Crum deposition, page 65, lines 22-25:

> Q: [ . . . ] Are these truck drivers supposed to remember these rules?
> A: Yeah. He's required to know the Federal Motor Carrier regulations.

Defendants' expert, Mr. Eddie Crum, testified that there were several things Defendant Howard could have done that would have made the situation safer for the other vehicles on the road, such as (1) looking for an area to pull over when you first notice the vehicle starts breaking down, rather than waiting for power loss [Crum deposition, page 60]; (2) moving his truck further over and out of the road [Crum deposition, page 56]; (3) calling the police and a wrecker, and waiting with the disabled vehicle until they arrive [Crum deposition, pages 56 – 58]; (4) pulling the vehicle over at an earlier spot on the ramp with more space [Crum deposition, pages 62 – 63]; (5) turned on his hazard lights [Crum deposition, page 63]; and, as in dispute, (6) properly placed warning placards at 100 feet and 200 feet intervals [Crum deposition, pages 64 – 65].

There is a dispute of material fact regarding the number of warning placards/triangles that were placed behind defendant's box truck, as well as the distance to which they were placed. Mr. Walden testified that he did not see any warning triangles [Walden Deposition Testimony, page 35]. Defendant Howard testified that he placed "the minimum -- four, maybe" placards behind the truck [Howard deposition, page 37], or perhaps he placed "at least three to four […] it could be anywhere between that. But if I had to say, maybe it could have been four" placards [Howard deposition, page 37]. He also testified that he put them out "as far as you stretch them," but could not remember or estimate the distances at which they were placed, despite Plaintiff's counsel's

8

repeated efforts to trigger Howard's memory; it could not be triggered because that's not how memory works [Howard deposition, page 36].

Defendants' expert, Mr. Eddie Crum, testified that according the Federal Motor Carrier Safety Regulations, warning placards/triangles should be placed behind the vehicle at intervals of 10 feet, 100 feet, and 200 feet. [Eddie Crum deposition, page 48]. Mr. Crum then testified that he observed no evidence, either at the site or in the photographs taken by the responding police agency, that the placards were placed 100 feet back and 200 feet back:

```
20    Q      Sure. The photographs you did see, there was
21    no evidence indicating those placards were placed 100
22    and 200 feet back.
23    A.     Not in the photographs I saw or anything
24    during my site visit. [ . . . ]
```

[Eddie Crum deposition, pages 50 – 51].

Defendant Howard, although frequently changing his answer, indicated at least once that he was not familiar with the FMCSRs. [Howard deposition, pages 64 – 65.]

The Plaintiff does not need to establish that Defendant Howard acted with malice, only that his intentional act of improperly placing warning placards was done with reckless disregard for the safety of others. "Just as malice need not be expressed and may be implied from outrageous conduct, so too may wanton or reckless disregard for the lives and safety of others be implied from the nature of the misconduct." *Horton* at 389.

### B. There are substantial and genuine disputes of material facts regarding punitive damages against defendant Enterprise.

While the Kentucky legislature has chosen to limit punitive damages against an employer for the acts of their employees, it is a gross misinterpretation of our caselaw to imply that this never

9

or rarely happens. The court in *McGonigle v. Whitehawk*, 481 F. Supp. 2d 835, 841 (W.D. Ky. 2007) provided a roadmap by which courts can determine when an employer is liable for the acts of its employees. "In Kentucky, the negligence of an employee imputes to his/her employer only when the employee 'was acting within the scope of his employment and in the furtherance of the [employer's] business.'" *McGonigle* at 838-839 (quoting *Wilson v. Deegan's Adm'r*, 282 Ky. 547, 139 S.W.2d 58, 60 (Ky. 1940)). To determine if the employee's conduct was within the course and scope of his employment, there are four factors the court may analyze: (1) whether the conduct was similar to that which the employee was hired to perform; (2) whether the action occurred substantially within the authorized spacial and temporal limits of the employment; (3) whether the action was in furtherance of the employer's business; and (4) whether the conduct, though unauthorized, was expected in view of the employee's duties. *McGonigle v. Whitehawk*, 481 F. Supp. 2d 835, 841 (W.D. Ky. 2007) (citing *Coleman v. U.S.*, 91 F.3d 820, 825-26 (6th Cir. 1996)). Defendant Howard clearly meets **all** four of these factors, while the defendant driver in *McGonigle* did not.

In *McGonigle*, the defendant driver was borrowing a company vehicle on his day off and was drinking. While intoxicated, he collided with another vehicle that was properly stopped at a stoplight. The defendant then fled the scene. The court granted Summary Judgment for the employer, as the defendant driver was not acting within the course and scope of his employment at the time of the collision, thus his individual liability did not extend to the employer under *respondeat superior.*

The first factor to consider is whether the conduct was similar to that which the employee was hired to perform. In *McGonigle*, driving the company truck was "not an explicit part of [the defendant's] job responsibilities" as he was employed as a "drill helper." [*McGonigle* at 839].

10

Defendant Howard, on the other hand, was hired by Enterprise to transport goods via their truck [Howard deposition, pages 18 – 22]. A substantial part of transporting goods via truck is knowing and following safety protocols in the event that the truck breaks down and becomes disabled [Howard's deposition, pages 24, 35 – 36, 70]. Thus, when Defendant Howard noticed his truck was not accelerating, finding a safe space to pull off, taking safety precautions, and notifying dispatch are all actions reasonably within the conduct he was hired to perform.

Next, the court considers whether the action occurred substantially within the authorized spacial and temporal limits of the employment. The collision in *McGonigle* occurred on the defendant's day off, while he was borrowing the vehicle for personal matters. The court determined that the defendant "had conducted no work-related activities at the job site on the day of the accident" [*McGonigle* at 840]. On the other hand, Defendant Howard was on the job and actively transporting goods for his employer when he improperly parked his truck and failed to set out warning placards in a manner consistent with the Federal Motor Carrier Safety Regulations. [Howard deposition, page 18].

Third, the court considers whether the action was in furtherance of the employer's business. The court in *McGonigle* cites to the Sixth Circuit Court of Appeals, who held in both *Christian v. United States* and in *Flechsig v. U.S* that "[t]o exonerate the master from liability, it is essential that deviation or departure by the servant from his master's business was for purposes entirely personal to the servant." *Christian v. U.S.,* 184 F.2d 523, 525 (6th Cir. 1950) (citing *Fleischmann v. Howe*, 213 Ky. 110, 280 S.W. 496); *Coleman v. U.S.*, 91 F.3d 820, 825-26 (6th Cir. 1996) (citing *Flechsig v. U.S.,* 991 F.2d 300, 303 (6th Cir. 1993)). The *McGonigle* court thus held that using the company truck for transportation on his day off did not further the employer's business and was for business entirely personal to the defendant. Per contra, Defendant Howard

11

was actively transporting goods for his employer when the truck became disabled. [Howard deposition, page 18]. He was clearly acting in furtherance of his employer's business.

Finally, the court considers whether the conduct was expected in view of the employee's duties. Courts should refer back to their analysis under the first factor to determine if the conduct was expected of the employee. *McGonigle* at 841, citing *Coleman*, at 826. Again, **properly** placing warning placards behind a disabled vehicle, pulling the vehicle into the shoulder area completely off the ramp (as another driver is shown doing in Defendant Expert Crum's video portion of his report), turning on his hazard lights, and waiting with the vehicle until the police arrived would all be expected of Defendant Howard in view of his duties. In fact, Mr. Howard testified that it was "normal" for him to place placards [Howard deposition, pages 35 – 36].

After determining that the defendant was acting within the course and scope of his employment using the above factors, the court next turns to evaluate whether or not the employer "authorized or should have anticipated [the employee's] wrongful conduct." *McGonigle* at 841. In the present matter, there are genuine issues of material fact regarding Defendant Howard's conduct and what Defendant Enterprise knew or should have known, which would be properly submitted to a jury to decide. Defendant Howard testified that his employer did not train him on the proper procedures for placing hazard placards in the event of a disabled vehicle, but rather that he learned this "at the U-Haul place when I rented the truck from them" [Howard deposition, page 40]. Accordingly, by failing to properly train their employee in what to do in the event of an emergency, Enterprise should have anticipated that their employee would not and could not follow the proper protocols under the Federal Motor Carrier Safety Regulations. Considering that by no fault of the Plaintiff and with no assistance from the Court, there has been no meaningful participation from Defendant Enterprise, and Defendant Howard waiting to participate in

discovery until near the end of the discovery deadline—thus effectively prohibiting the Plaintiff from contacting any agents of Defendant Enterprise, such as Ms. Shanta Dixon—there are genuine issues of material fact in dispute which should be submitted to a jury to determine based on the available evidence.

Furthermore, Defendants' citation to and reliance on *Berrier v. Bizer*, 57 S.W.3d 271, regarding punitive damages is perplexing, to say the least. As an initial matter, this is an employment discrimination case, not related in any way to a motor vehicle collision. The issue before Kentucky's Supreme Court was whether or not the trial judge's refusal to instruct the jury on punitive damages was warranted or not. "The trial judge refused to instruct the jury on punitive damages. Generally, punitive damages are available in an action involving termination of an at-will employee in violation of public policy" [*Berrier* at 283]. The issue in *Berrier* specifically revolved around the remaining parties in the claim when the plaintiff finished presenting her case-in-chief:

> At the conclusion of her case-in-chief, Berrier dismissed with prejudice her claims against the three employees. Thus, at the conclusion of all the evidence, there was only a claim against the employer premised upon allegations of misconduct on the part of employees, and no evidence that the employer authorized or ratified the alleged misconduct or should have anticipated the conduct in question. Under that state of the facts, the trial judge correctly declined to instruct the jury on punitive damages.

*Berrier v. Bizer,* 57 S.W.3d 271, 284 (Ky. 2001). Thus, the court's statements regarding the number of cases on record recognizing vicarious liability for punitive damages is misplaced in this context and wholly irrelevant to the matter at hand.

As established *supra*, Kentucky courts, including Kentucky's Supreme Court, have a long history of recognizing punitive damages against an employer for the acts of its employees, under the proper facts. There are genuine issues of material facts regarding Mr. Walden's punitive

13

damages claims against Defendant Enterprise that should be submitted to the trier of fact to weigh and determine. The jury should determine if putting unsafe drivers, who aren't familiar with applicable safety regulations, on the road is reckless enough to warrant punitive damages. Considering that Defendant Enterprise has not meaningfully participated in this matter to date—including filing objectively fraudulent documents with the Georgia Secretary of State in order to continue operations while avoiding legal liability for its negligent and grossly negligent actions—it would be highly prejudicial and not in line with basic principles of justice to allow them to dispose of Plaintiff's punitive damages claims via Summary Judgment at this juncture.

Defendants also rely on *Estate of Presley v. CCS of Conway,* No. 3:03-CV-117-H, 2004 WL 1179448, 2004 U.S. Dist. LEXIS 9583 (W.D. Ky. May 18, 2004). In *Estate of Presley*, a semi-truck driver crossed a median into oncoming traffic and caused a serious collision with another driver. Then, another semi-truck approached the collision scene and also struck the passenger vehicle, pinning it between the two semi-trucks; needless to say, the driver of the passenger vehicle did not survive the collision. In *Estate of Presley*, the court found that the plaintiff had not yet presented any evidence that shows either employer condoned or authorized the unsafe driving of its employees. The court even stated that it found it "highly unlikely that a jury will find that such behavior constitutes a 'wanton or reckless disregard' for the safety of others" but declined to dismiss the punitive damages claims on summary judgment until all testimony would be heard. Once again, dismissing Plaintiff's punitive damages claims when there are genuine issues of material fact remaining for the jury would be improper.

Finally, Defendants rely on *Jones v. Blankenship*, No. 6:06-109, 2007 WL 3400115, 2007 U.S. Dist. LEXIS 83898 (E.D. Ky. Nov. 13, 2007), to support their assertions. As an initial distinction, the plaintiff in *Jones* claimed punitive damages **only** against the employer; Mr.

14

Wadlen is asserting punitive damages against both the defendant driver and his employer. Next, the basis for the plaintiff's punitive damages claim in *Jones* was that the employer should have anticipated the driver would be in a collision because he was a newer driver. This is hardly comparable to the present situation. Defendant Howard was operating the box truck on behalf of his employer when the truck experienced some sort of malfunction [Howard deposition, page 18 – 22]. Defendant Howard pulled the vehicle to the side of the road on the interstate exit ramp and called his dispatcher [Howard deposition, pages 28 – 29]. According to Howard's testimony, his dispatcher asked him if he placed his warning placards out, to which he replied affirmatively [Howard deposition, pages 34 – 35]. However, the record also reflects that Defendant Enterprise did not train Defendant Howard on **how** to place the placards, as he indicated he was taught by a U-Haul representative when he rented a truck from them [Howard deposition, page 40]. Furthermore, despite Howard indicating he placed the placards out and did so in accordance with the Federal Motor Carrier Safety Regulations, there are a number of discrepancies within Howard's own testimony that call this into question, such as his statement first that he wasn't familiar with the Regulations but that he had read them [Howard deposition, pages 64 – 65]; his inability to recall exactly how many placards he placed [Howard deposition, pages 36 – 37]; and his inability to recall or provide any estimate as to how far out he placed the placards [Howard deposition, pages 35 – 38]. Defendants' expert, Mr. Eddie Crum, testified that he observed no evidence that the placards were placed 100 feet back and 200 feet back [Eddie Crum deposition at pages 50 – 51]. These issues create genuine issues of material fact regarding whether Defendant Howard placed the placards properly according to the Federal Motor Carrier Safety Regulations, as well as Defendant Enterprise's role in training Defendant Howard to place them properly.

## CONCLUSION

The Defendants Motion for Summary Judgment requests the most severe cure to a problem that is better remedied by extending the discovery deadlines as previously requested by the Plaintiff. Our Courts have routinely found that it is an abuse of discretion to Order Summary Judgment when the Plaintiff has not had a fair opportunity to conduct discovery. It's not enough that Defendant's counsel has tried to locate their client. Despite the original discovery deadline having passed, two motions are pending with the court that have a bearing on this Motion; Plaintiff's Motion for Leave to Amend Expert Disclosures and Plaintiff's Motion to Alter, Amend, or Vacate the Court's previous Order allowing Defendant Enterprise to ignore their duty to participate in discovery without any consequence whatsoever.

This Motion for Summary Judgment is premature at best. Even if not deemed premature, there remain genuine material issues of fact that are in dispute and it would be improper for this Court to place itself in the position of the jury. The trier of fact should determine how reckless the conduct of Defendants was and a reasonable jury could award punitive damages against both Defendants in this matter. If, somehow, this Court finds there are no such material issues in dispute then that is only because Defendant Enterprise has failed to appear at two duly noticed depositions and has failed to submit responsive discovery answers which reflect the knowledge of the party itself, not their counsel at whom the discovery is not aimed. Further discovery would allow the trier of fact to determine if any training or safety protocols were placed by Defendant Enterprise, and could also reveal how reckless and dangerous Defendant Enterprise's hiring practies are to the public it subjects to dangerous drivers. Further discovery will allow this matter

to be determined on the merits and will also serve to make sense of Defendant Howard's ever-changing testimony and discovery answers.

**WHEREFORE**, Plaintiff respectfully requests this Court to DENY Defendant's Motion for Partial Summary Judgment, to Order Defendant Enterprise to submit to a Rule 32(b) deposition or face sanctions, to compel Defendant Enterprise to submit discovery answers that reflect the knowledge of the Defendant, not their counsel as such answers reflecting Defense counsel's knowledge is nonresponsive, and for all other remedies deemed appropriate by this Court.

Respectfully Submitted,

MORRIN LAW OFFICE

  /s/*Robert A. Morrin*_____
Hon. Robert A. Morrin (KBA # 94368)
214 West Main Street
Richmond, KY 40475
(859) 358-0300
*Counsel for Plaintiff*

\* \* \* \* \* \* \* \* \*
### CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of September, 2024, a true and correct copy of the foregoing was filed through the Court's eFiling system, which serves a copy on all counsel of record.

  /s/*Robert A. Morrin*_____
Hon. Robert A. Morrin (KBA # 94368)
MORRIN LAW OFFICE
*Counsel for Plaintiff*