UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| CHARLES L. WALDEN ) | |
| ) | |
| Plaintiff, ) | **CASE NO. 5:22-CV-00238-KKC** |
| ) | |
| VS. ) | |
| ) | **REPLY IN SUPPORT OF** |
| ) | **MOTION TO EXCLUDE CERTAIN** |
| ENTERPRISE SERVICES GROUP, LLC, ) | **EXPERT OPINIONS OFFERED BY** |
| *et al.* ) | **DR. DAVID CHANGARIS** |
| ) | |
| Defendants. ) | |
| ) | |

Come the Defendants, Enterprise Services Group, LLC, and Clarence M. Howard, by counsel, and for their Reply in Support of their Motion to Exclude Certain Expert Opinions of Dr. David Changaris, state as follows:

## INTRODUCTION

Plaintiff's Response (R. 192) fails to meaningfully address the core arguments in Defendants' Motion to Exclude (R. 188). Instead of engaging with the substance of Defendants' arguments, Plaintiff offers only conclusory statements and mischaracterizations of Dr. Changaris' methodologies. Defendants' Motion sought the exclusion of nine (9) opinions proffered by Dr. Changaris:

1. Mild traumatic brain injuries (mTBI) cause Parkinson's Disease.
   **Basis for Exclusion**
       i. Unreliable Principles and Methodologies
2. Plaintiff sustained a mTBI (diagnosis) as a result of the August 2020 collision (causation)
   **Basis for Exclusion**
       i. Insufficient Facts and Data
      ii. Unreliable Principles and Methodologies
     iii. Unreliable Application to the Facts
3. Plaintiff developed Parkinson's Disease (diagnosis) as a result of the August 2020 collision (causation)

   **Basis for Exclusion**
      i. Insufficient Facts and Data
      ii. Unreliable Principles and Methodologies
      iii. Unreliable Application to the Facts
4. Estimated costs of long-term and nursing home care
   **Basis for Exclusion**
      i. Not qualified to render expert opinion on subject matter of proposed testimony
      ii. Unreliable application to facts (Nationwide costs vs Kentucky costs)
5. Plaintiff was rendered totally disabled (diagnosis) as the exclusive result (causation) of the August 2020 collision:
   **Basis for Exclusion**
      i. Insufficient Facts and Data
      ii. Unreliable Principles and Methodologies
      iii. Unreliable Application to the Facts
6. Plaintiff's current complaints of vision complications (diagnosis) are the exclusive result (causation) of the August 2020 collision:
   **Basis for Exclusion**
      i. [Same as Opinion 5]
7. Plaintiff's current complaints of dizziness (diagnosis) are the exclusive result (causation) of the August 2020 collision:
   **Basis for Exclusion**
      i. [Same as Opinion 5]
8. Plaintiff's current complaints of headaches (diagnosis) are the exclusive result (causation) of the August 2020 collision:
   **Basis for Exclusion**
      i. [Same as Opinion 5]
9. Plaintiff's current complaints of memory problems (diagnosis) are the exclusive result (causation) of the August 2020 collision:
   **Basis for Exclusion**
      i. [Same as Opinion 5]

Plaintiff's Response does not address Opinions 1-7. For Opinions 8-9, Plaintiff initially cites a single encounter over a four-year period where Plaintiff complained of headaches, and then presents his attorney's diagnosis of memory problems based on three missed appointments. This failure to engage with Defendants' arguments demonstrates that Dr. Changaris' opinions do not meet the admissibility standards under Federal Rule of Evidence 702 and *Daubert*.

## ARGUMENT

**I.     Failure to Address Dr. Changaris' Unreliable Methodology**

Defendants' Motion and Dr. Kriss' CR 26 Reports (R. 149-2 and R. 159-1) detail the flaws in Dr. Changaris' methodology. This is particularly evident in Dr. Changaris' sole reliance on a "very, very controversial paper" associating mild traumatic brain injuries (mTBI) with Parkinson's disease. Dr. Kriss exposed the fundamental flaws in this meta-analysis, demonstrating its gross misinterpretation of statistical data to reach "conclusions that are the exact opposite of the medical truth[.]" R. 149-2 at 37. Dr. Changaris blindly accepted[1] this "error of almost unfathomable medical magnitude," R. 149-2 at 37, which provided the exclusive basis for diagnosing Plaintiff with Parkinson's disease. Plaintiff's Response ignores this critical analysis in its entirety.

Plaintiff attempts to bolster Dr. Changaris' credibility by claiming his methodology was "quite similar" to Dr. Kriss' (R. 192 at 4). This is inaccurate. A cursory review of the respective experts' CR 26 Reports confirms the stark differences in Dr. Changaris' lackluster approach compared to Dr. Kriss' meticulous review and examination. Dr. Kriss reviewed Plaintiff's entire medical file, consisting of thousands of pages of records from before and after the August 2020 collision. Dr. Changaris, on the other hand, did not review a single record pre-dating the 2020 collision[2] and only a small fraction of the post-collision records.[3] Dr. Changaris' examination consisted primarily of the VNG and ENG tests conducted in his office and the history provided by a "marginally reliable" examinee supplemented with a truncated neurological examination.[4]

---

[1] *See* R. 188-1 at 43, Changaris Transcript at p. 169, Lines 12-18 (Dr. Changaris confirming his lack of familiarity with the underlying studies and that it is "just the conclusions [that he] carr[ies] with [him]."

[2] *Id.* at 31, Changaris Transcript at p. 119, Lines 18-23 ("**I'm not relying on past medical records.** The -- because **I didn't have them** enough to make -- make -- a -- the – the definitive thing. **So I need more records**, and – and then I'll make my physical -- my -- my determination on that.").

[3] *Cf.* R. 97-2 at 1, Changaris CR 26 Report, Records Reviewed, *with* R. 149-2 at 1, Kriss CR 26 Report, Records and Data Reviewed.

[4] *See* R. 97-2 at 2-3 (documenting facial sensation, shoulder shrug, strength, and range of motion testing). *See also* R. 188-1 at 33, Changaris Transcript at p. 129, Lines 15-19 (Confirming the absence of a single test or procedure to confirm the validity of the ENG and VNG results).

Unlike Dr. Changaris, Dr. Kriss discusses and elaborates on the comprehensive battery of physical and neurological examinations throughout his 45-page, single spaced CR 26 Report, all of which were summarized as follows:

> **Examination:**
> On examination, Mr. Walden is pleasant and appropriate, but has a ***massive amount of psychomotor agitation***. Mr. Walden constantly fidgets, shifts in his chair, slides in his chair, rocks slowly forward and back his chair, grabs his thighs and hips with his hands, oscillates all four extremities, rubs his hair and head with his hands, picks at his face with his fingers, and never stops moving throughout the one hour interview and examination. Affect is a strange combination of subdued but anxious.
>
> Other than the strange affect and the overwhelming psychomotor agitation, mental status examination is normal. Orientation, speech pace, speech comprehension, speech production, prosody, social context are all normal. Thought content, focus, attention, concentration are all normal. No psychosis. Mild tangential thought. Problem solving, concrete thought, abstract thought, analytic capacity all appropriate. Memory, cognition, and judgment intact. Mr. Walden has excellent insight into his physical problems, but remarkably poor insight into his own extensive history of poly-substance abuse.
>
> Cranial nerves II-XII, and coordination are normal. Cerebellar testing *completely normal and symmetric:* rapid alternating movement normal in all four extremities; heel to shin excellent. Finger to nose with eyes open is perfect. I even had Mr. Walden repeat finger to nose with eyes closed, and he performed this perfectly - truly superior proprioception and spatial coordination. Fine motor control is excellent, running the fingertips along the thumb rapidly bilaterally.
>
> There are no long tract signs (Babinski, Hoffman's, or clonus). Reflexes are normal and symmetric, biceps, triceps, brachioradialis, patellar and Achilles.

**No tremor. No rigidity. No bradykinesia.** No cogwheeling. Rather, Mr. Walden is the antithesis of bradykinesia and rigidity: he has more psychomotor agitation than any patient I have seen in years. (This is important because bradykinesia (pathologically slow movement) is required for any diagnosis of Parkinson's).

Normal motor exam. 5/5 strength symmetric all muscle groups all four extremities. Normal tone. No rigidity. No cogwheeling. No tremor. No atrophy. No spasm. No fasciculation.

Gait is markedly abnormal, with a massive hitch, shortened right lower extremity, externally rotated right lower extremity, mild circumduction, severe antalgia, and huge rotating pelvic tilt - all identified by Mr. Walden as consequences of his hip surgery. Nevertheless, Mr. Walden shows no instability with Romberg testing, eyes open or eyes closed. Mr. Walden was even able to hold a static tandem position for five seconds, five seconds, and even 10 seconds sequentially, despite all the altered body mechanics. Mr. Walden was also able to carry out tandem walk for 10 steps with only a minimal bobble (still stable) and did quite well with heel walking and toe walking. The overall display of postural stability was superlative, definitively countermanding the posturography interpretation of Dr. Changaris.

Cervical range of motion is normal. Lumbar range of motion is normal. Motor and sensory examination are normal. No stocking distribution pinprick sensory loss. Normal vibratory capacity in both big toes. No pinprick sensory loss in any fingers. There is no Lehrmitte's sign, Spurling sign, Romberg sign, Phalen's sign or Tinel's sign. There is no muscle spasm, guarding, atrophy or fasciculation. Physical examination of the cervical, thoracic and lumbar spine is normal. Sacral-iliac joints are non-tender. Lumbar facet joints are non-tender. Straight leg raising is negative. Greater trochanters are nontender. Bilateral shoulder examination is negative, with full range of motion and no indication of subacromial tenderness or impingement. Deep, obvious tracheostomy scar with retraction above the sternal notch.

Both hands are extremely dirty, all fingers, and both palms. Mr. Walden has a large number of blisters on the left hand. All of his fingernails are chewed off. The hands are heavily callused, and each

5

> callus is very dirty. The same is true with both feet: heavily callused, extremely dirty.
>
> Mr. Walden complains of pain in the right hip joint with slight movement in any direction. Left hip range of motion is normal and painless. Bilateral knee examination is normal; nontender, no effusion, no instability.

R. 149-2 at 6-7, Kriss CR 26 Report, Examination.

## II.  Absence of Evidence of mTBI and Failure to Consider More Compelling Explanations

Defendants highlighted the lack of evidence supporting Dr. Changaris' mTBI diagnosis, noting that Plaintiff's medical records for the three-plus years following the accident contain no such diagnosis. Much like Dr. Changaris' analysis, Plaintiff's Response chooses to ignore the far more obvious alternative explanations for Plaintiff's newly alleged symptoms, including Plaintiff's catastrophic TBI in 2012, second TBI in 2017, "hit to the head" in 2019, and life-long history of substance abuse. Plaintiff neither justifies nor elucidates Dr. Changaris' failure to consider these far more compelling alternative explanations. Instead, Plaintiff relies on his own opinion that the medical records "indicate he had a concussion," while completely ignoring the overwhelming evidence to the contrary spelled out in pain-staking detail in Dr. Kriss CR 26 Report. Such conclusory statements, devoid of medical explanation or analysis, are insufficient to meet Plaintiff's burden under *Daubert*.

## III.  Dr. Changaris' Reliance on a "Marginally Reliable" Historian

Defendants' Motion emphasized that the flaws in Dr. Changaris' reliance on an admittedly "marginally reliable" as the primary source of his opinions. This concession, coupled with Dr. Changaris' confessed failure to review Plaintiff's pre-accident medical records presents enormous concerns about the reliability of Dr. Changaris' opinions. On top of all this is the indisputable fact that the "evidence" provided by Plaintiff and relied upon by Dr. Changaris is directly contradicted

by the independent, objective medical records. Once again, Plaintiff does not attempt to rehabilitate or otherwise reconcile these clear deficiencies with *Daubert*'s mandate that expert testimony be based on sufficient facts and data. Instead, Plaintiff replies only that "it is up to a jury to decide which version of events is most credible," improperly shifting the gatekeeping function from the Court to the jury.

### IV.    Plaintiff Implicitly Concedes Dr. Changaris is Not Qualified to Render Opinions Relating to Costs of Long-Term and Nursing Home Care

Defendants demonstrated Dr. Changaris' lack of qualifications to offer opinions on the costs of long-term and other medical care unrelated to neurosurgery. Plaintiff's Response turns a blind eye to this argument, implicitly conceding Defendant's position.

### V.    Plaintiff's Medical Records *Do* Speak for Themselves

Of the thousands of pages of Plaintiff's medical records, Plaintiff could identify only eight pages excerpted from three encounters which contained references to symptoms that can be associated with prior head injuries. Plaintiff's reliance on eight pages from three encounters is insufficient. The isolated references to a head abrasion at the scene and an unspecified "mental status change" six days later do not cure Dr. Changaris' failure to employ reliable methodologies. Even assuming, arguendo, that the reported symptoms could suggest a head injury, Plaintiff's ex post facto identification of same is patently irrelevant to gauging the reliability of Dr. Changaris' opinions. This is because Dr. Changaris neither reviewed nor considered said records in formulating his opinions. At least insofar as the methodology employed by Dr. Changaris is concerned, any evidence indicative of an alteration in Plaintiff's consciousness would have been irrelevant to his mTBI diagnosis.[5]

---

[5] *See* R. 188-1 at 45, Changaris Transcript at p. 177, Lines 6-9 ("**Q:** Agree that there are no medical records documenting any alteration in consciousness on August 10, 2020? **A:** That's irrelevant, but probably true.").

7

\* \* \* \* \* \*

By his own admission, Dr. Changaris principally – if not exclusively – relied on "marginally reliable" evidence as the foundation for all of his diagnosis and causation opinions. Dr. Changaris' approach, by definition, represents the epitome of unreliable methodology. This is especially so where, as here, the overwhelming majority of the objective independent evidence of record directly refutes the dubious evidence upon which Dr. Changaris primarily focused. Dr. Changaris' opinions are precisely the type of evidence forbidden by FRE 702 and *Daubert*. Having failed to address even one of the many fatal deficiencies demonstrated in Defendants' Motion to Exclude, Plaintiff has not satisfied his burden of showing "that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." *Meemic Ins. Co. v. Hewlett-Packard Co.*, 717 F.Supp.2d 752, 766 (E.D. Mich. 2010) (*quoting Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (On Remand). *See also*, *Garvin v. Ethicon, Inc.*, 616 F. Supp. 3d 658, 676 (W.D. Ky. 2022) ("The proponent of the expert testimony bears the burden of establishing that the testimony meets those requirements by a preponderance of the evidence.").

For these reasons, Defendants submit that FRE 702 and principles of *Daubert* require that Dr. Changaris be precluded from testifying as an expert with respect to the opinions addressed in Defendants' Motion to Exclude and herein.

    Respectfully submitted,

    HAMM, MILBY & RIDINGS, PLLC
    120 North Main Street
    London, KY 40741
    Ph: 606-864-4126
    Email: jridings@hmrkylaw.com
    Attorneys for Defendants,
    Enterprise Services Group, LLC and
    Clarence M. Howard

By: /s/ Jay Ridings
JAY MILBY RIDINGS

CERTIFICATE OF SERVICE

I certify that on the 8th day of October, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ Jay Ridings
Counsel for Defendants,
Enterprise Services Group, LLC and
Clarence M. Howard