# CRUM INVESTIGATIONS, LLC.

REPORT DATE: 4/1/2024

PREPARED FOR:

HAMM, MILBY & RIDINGS, PLLC

COLLISION ANALYSIS REPORT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF KENTUCKY

LEXINGTON DIVISON

5:22-CV-00238-KKC

CHARLES WALDEN

vs.

ENTERPRISE SERVICE GROUP

FEDERAL HIGHWAY I-75 EXIT 87

RICHMOND, KENTUCKY

COLLISION DATE: 08/10/2020

April 1, 2024

Honorable Marcia Milby Ridings, Esquire

120 North Main Street

London, KY. 40741

Ms. Ridings:

At the request of your office, I have conducted a collision analysis in reference to a two-vehicle collision that occurred on Federal Interstate Highway I-75, Northbound Exit 87, in Richmond, Kentucky. The purpose of this correspondence is to provide you with the results of that investigation, along with my opinions. The opinions rendered are based on materials commonly relied upon by experts in the field of collision reconstruction. This includes my training and experience; and the findings are within a reasonable degree of collision reconstruction probability. I have reviewed the following:

- Kentucky Uniform Police Traffic Collision Report prepared by Richmond Police Officer, Jason Curry, Unit 9207.
- Provided police collision scene photographs.
- Site visit, conducted on February 9, 2023.
- Vehicle specifications for the Walden Vehicle.
- Deposition Testimony of Charles Walden.
- Kentucky Revised Statues.
- Federal Motor Carrier Safety Regulations.
- Google image of the collision area.

**<u>COLLISION SYNOPSIS:</u>**

On 8/10/2020, at approximately 00:00 hours, a traffic collision occurred on Federal Interstate Highway I-75, Northbound Exit 87, in the city limits of Richmond, Kentucky. A 2012 Freightliner, single drive axle box truck had broken down, and was positioned on the I-75 Exit to the Richmond Bypass (KY 876). A portion of the operator's side of the truck was located across the fog line, into the travel portion of the roadway. Charles Walden was operating a 2004 Chevrolet Colorado, exiting I-75 north, traveling toward Richmond Bypass Road (KY 876). Charles Walden struck the operator's side rear portion of the Freightliner's cargo bed.

**COLLISION LOCATION:**

This collision event occurred on exit 87. The exit ramp is for traffic traveling from I-75 North to the Richmond Bypass Road (KY 876). At the collision area, the roadway separates into marked, individual turning lanes for the Richmond Bypass Road. The right turning lane measured approximately 11 feet in width.[1] A paved shoulder that measured approximately 6 feet in width was located between the travel lane and the I-beam face guardrail. The approach to the collision area was straight with a slight positive grade. Highway lighting was located on the ramp, and according to the collision report, the lighting was on. Stop and go traffic signal lights were located on the ramp prior to Richmond Bypass Road.



**Exit ramp view traveling toward Richmond Bypass Road (KY 876).**

[1] Measurement excludes any striping and was measured from inside of striping to inside.

The approximate, available line of sight to the collision area for traffic exiting from northbound I-75 was measured at approximately more than 770 feet. This is represented below in Figure-1.




**Approximate unobstructed available sight distance.** **Figure-1**

## POLICE COLLISION REPORT:

Officer Jason Curry of the Richmond Police Department filed a Kentucky Uniform Police Traffic Collision Report in reference to the collision event. Officer Curry listed the following conditions:

- Roadway character – Straight & Grade.
- Roadway condition – Dry.
- Weather – Clear.
- Light Condition – Dark – Highway Lighted/on.

**KENTUCKY UNIFORM POLICE TRAFFIC COLLISION REPORT**

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MASTER FILE #: 72530212 | | | | | | | | | | | |
| INVESTIGATING AGENCY: RICHMOND POLICE DEPARTMENT | | | | AGENCY ORI NUMBER: 0760200 | | | | LOCAL CODE: A20033034 | | | |
| ROADWAY NAME: I 0075 | | PARKING LOT: N | | INTERSECTION WITH: N | | | | BETWEEN STREETS: N | | | |
| ROADWAY #: I 0075 | DISTANCE FROM MILEPOINT: | MILEPOINT #: 0.305 | INJURED: 1 | KILLED: 0 | # UNITS INVOLVED: 2 | HIT & RUN: NO | ONE WAY: NO | SPEED LIMIT: 70 MPH | | | |
| IN CITY LIMITS?: YES | LATITUDE: DEG: 37 MIN: 44.156 | | | | | | | COLLISION DATE AND TIME: 08/10/2020 00:00 | | | |
| MILES FROM CITY: | LONGITUDE: DEG: 84 MIN: 19.349 | | | | | | | | | | |
| CITY/TOWN: 07602 - RICHMOND | | | | RAMP: YES | | | | | | | |
| COUNTY: 076 - MADISON | | | | FROM: I 0075 | | | | DIR: N | | | |
| SECONDARY COLLISION: NO | MEDIAN CROSSOVER: NO | | | TO: KY0876 | | | | DIR: E | | | |
| MANNER OF COLLISION: 05 - REAR END | | | | LOCATION 1ST EVENT: 05 - OUTSIDE SHOULDER-RIGHT | | | | TRAFFIC CONTROL: 99 - NONE | | | |
| ROADWAY TYPE: 05 - INTERSTATE ☐ Frontage Rd | | TOTAL LANES: 4 | | ROADWAY CHARACTER: 04 - STRAIGHT & GRADE | | RDWY SURFACE: 01 - ASPHALT | | ROADWAY CONDITION: 01 - DRY | | | |
| WEATHER: 02 - CLEAR | | LIGHT CONDITION: 05 - DARK-HWY LIGHTED/ON | | | | LAND USE: 03 - LIMITED ACCESS | | SCHOOL BUS RELATED: 03 - NOT APPLICABLE | | | |

Officer Curry prepared a written narrative in reference to his investigation. In the narrative, Officer Curry reported that unit-2 (Freightliner) was parked on the edge of the ramp. Officer Curry further reported that unit-2 (Freightliner) had broken down and the driver had left it after setting out reflective triangles behind the truck. Officer Curry noted that unit-1 (Walden) stated that he was tired and did not see unit-2 (Freightliner).

| KENTUCKY UNIFORM POLICE TRAFFIC COLLISION REPORT - NARRATIVE | | KSP 74 Revised 1/2000 |
|---|---|---|
| | MASTER FILE # 72530212 | |
| INVESTIGATING AGENCY RICHMOND POLICE DEPARTMENT | AGENCY ORI 0760200 | LOCAL CODE A20033034 |

On August 10, 2020 at 00:25 I responded to an injury collision at the I-75 N Exit 87 off ramp. The collision had occurred approximately twenty minutes prior to the collision being reported. The collision occurred about halfway down the ramp. Unit 1 stated that he was tired and did not see Unit 2 parked on the edge of the ramp. Unit 1 struck the rear of Unit 2. Unit 1 had severe damage to the front and the impact knocked the camper top off of the vehicle. Unit 2 had minor to moderate damage to the left rear bumper. Unit 1 stated that he had previously had hip surgery and he had dislocated his hip. He was transported to the University of Kentucky Medical Center for treatment.

Unit 2 had been parked on the right side of the ramp. It had broken down and the driver had left it. The driver had set out reflective triangles behind the truck.

Unit 1 was towed by David's. Unit 2 was towed by Barger's.

The operator of Unit 2 was Clarence M. Howard (GA OLN 067185431) of 320 Fairburn Rd SW, Atlanta, GA 30331

Officer Curry listed the human factors of fatigue and inattention on the part of Charles Walden, along with the environmental factor of an improperly parked vehicle (Freightliner).

**KENTUCKY UNIFORM POLICE TRAFFIC COLLISION REPORT - UNIT**

MASTER FILE # 72530212

| | | |
|---|---|---|
| INVESTIGATING AGENCY RICHMOND POLICE DEPARTMENT | AGENCY ORI 0760200 | LOCAL CODE A20033034 |

| | | | | |
|---|---|---|---|---|
| UNIT # 1 | TOWED? YES - DAVID'S WRECKER SERVICE | TOWED DUE TO DISABLED? YES | # OCCUPANTS 1 | PEDESTRIAN FACTORS |
| OPERATOR'S LIC. NO. W08781006 | STATE KY | LIC. CLASS D | ENDORSEMENT | OPERATORS LICENSE RESTRICTIONS |
| CDL NO | CO. RESIDENT YES | OWNER NO | | |
| OPERATOR NAME (LN, FN, MI) WALDEN, CHARLES L. | | | | |
| BIRTH DATE 05/27/1992 | ADDRESS 555 MULE SHED LN RICHMOND, KY 40475 | | | COMPLIANT YES |

| | | | |
|---|---|---|---|
| A. PRE-COLLISION VEHICLE ACTION 05 - GOING STRAIGHT AHEAD | B. UNIT TYPE 08 - LT TRUCK(VAN/SPORTS UTILITY/PICKUP) | C. FIRE NO | D. OVERTURNED NO |
| E. HUMAN FACTORS 09 - FATIGUE, 14 - INATTENTION | | | |
| F-H. EVENT COLLISION 1ST: 05 - OTHER MOTOR VEHICLE | | | |
| I. VEHICULAR FACTORS 99 - NONE DETECTED | J. ENVIRONMENTAL FACTORS 07 - IMPROPERLY PARKED VEHICLE(S) | | |

Officer Curry listed no human factors on the part of the Enterprise Freightliner. This was likely due to the fact that the vehicle was unoccupied at the time of the collision. The environmental factor of an improperly parked vehicle was listed as a contributing factor by Officer Curry.

**KENTUCKY UNIFORM POLICE TRAFFIC COLLISION REPORT - UNIT**

MASTER FILE # 72530212

| | | |
|---|---|---|
| INVESTIGATING AGENCY RICHMOND POLICE DEPARTMENT | AGENCY ORI 0760200 | LOCAL CODE A20033034 |

| | | | | |
|---|---|---|---|---|
| UNIT # 2 | TOWED? YES - BARGERS | TOWED DUE TO DISABLED? YES | # OCCUPANTS 0 | PEDESTRIAN FACTORS |
| OPERATOR'S LIC. NO. | STATE | LIC. CLASS | ENDORSEMENT | OPERATORS LICENSE RESTRICTIONS |
| CDL | CO. RESIDENT | OWNER | | |
| OPERATOR NAME (LN, FN, MI) | | | | |
| BIRTH DATE | ADDRESS | | | COMPLIANT |

| | | | |
|---|---|---|---|
| A. PRE-COLLISION VEHICLE ACTION 12 - PARKED | B. UNIT TYPE 22 - TRUCK-SINGLE UNIT | C. FIRE NO | D. OVERTURNED NO |
| E. HUMAN FACTORS 99 - NONE DETECTED | | | |
| F-H. EVENT COLLISION 1ST: 05 - OTHER MOTOR VEHICLE | | | |
| I. VEHICULAR FACTORS 99 - NONE DETECTED | J. ENVIRONMENTAL FACTORS 07 - IMPROPERLY PARKED VEHICLE(S) | | |

**COLLISION ANALYSIS:**

It is my understanding that the involved vehicles were not available for inspection. The Walden Vehicle would have likely contained an event data recorder that would have been capable of collecting pre-crash data (Figure-2).[2] This data would have included several categories that would have been helpful in the investigation of this collision event.

**CDR Cable Number 02003003**

This section provides general information about the EDR capability of the ACM(s) this cable connects to and the type of EDR data that may be recorded. Always refer to the Data Limitations section of the CDR report for further information about the ACM and limitations of the data retrieved. The information included in the CDR report's Data Limitations section for this ACM is considered to be more precise and current than the generalized information included below. The actual data retrieved from the ACM may differ from what is described below. Review all vehicle coverage notes which are referenced in the Supported Vehicle list for this ACM before attempting to retrieve data from it.

This ACM may contain the following EDR data.

**Pre-Crash Data**

- Vehicle speed (MPH) 5 seconds before algorithm enable.
- Engine speed (RPM) 5 seconds before algorithm enable.
- Percent throttle 5 seconds before algorithm enable.
- Brake switch circuit status (On/Off) 5 seconds before algorithm enable.

**Data Summary Information**

- Driver's seat belt status (Buckled/Unbuckled).
- SIR warning lamp status (On/Off).
- Time from algorithm enable to deployment command (msec).
- And more...

**Crash Pulse Graph: SDM Recorded Velocity Change**

- Plots change in forward velocity (MPH) versus time for up to 150 msec of velocity change data.

**Figure-2**

It was also my understanding that the Enterprise Freightliner was not available for inspection. During my 34 years of experience inspecting trucks of this type, the approximate average width of this type of commercial vehicle would be approximately 8 feet.

During the site visit, no usable collision evidence could be located on the roadway. This was likely due to the time that had elapsed from the collision event to the inspection date. According to the collision report, Clarence M. Howard was operating the 2012 Freightliner Commercial Vehicle when it had disabling mechanical issues on the ramp. The collision report further stated that Mr. Howard had placed reflective triangles behind the truck and left the area.

Using the police photographs, it was estimated that the truck was parked approximately 1 foot away from the guardrail face, on the shoulder area (Figure-3).

[2] Bosch Software Help File.




**Guardrail face area.** **Figure-3**

Using the scene measurements, along with the estimated width of the Enterprise Freightliner, it was estimated that the Freightliner was located approximately 3 feet into the travel portion of the roadway.[3]

Using the police photographs, the signage located near the Enterprise Freightliner was used to estimate the distance of the Freightliner from the intersection of Kentucky State Route 876, also known as Richmond Bypass Road.

The estimated distance from the Eastern Kentucky University / Department of Criminal Justice Training sign to the intersection was approximately 200 feet. This would place the rear of the Enterprise Freightliner approximately 200 feet from the intersection.

[3] Truck width – 8 feet. Shoulder width – 6 feet. Freightliner parked approximately 1 foot off guardrail face onto shoulder. (8+1=9 feet 9-6=3 feet.)



**Side view of the Enterprise Freightliner location in relation to the fog line.**

**Sign location.**




**Approximate distance from the EKU/Department Criminal Justice Training sign.**

The provided damage photographs of the Walden Vehicle were consistent with the impact damage being located from the approximate midline of the vehicle traveling out toward the passenger side area (Figure-4). Using the vehicle specifications of the Walden Vehicle, it was estimated that the width of the Walden Vehicle was 67.7 inches or just under 6 feet in width.



**Damage profile of the Walden Vehicle.** **Figure-4**

According to the deposition testimony of Charles Walden, to the best of his knowledge, there were no warning triangles.[4] Officer Curry noted in the collision report that the driver had set out reflective triangles behind the truck. Evidence of the reflective warning triangles were present in the provided police scene photographs (Figure-5).

[4] Walden Deposition Testimony, page 35.



**Evidence of reflective warning triangles.** **Figure-5**

According to Charles Walden, he got off the exit ramp and was trying to go around it (Freightliner) and realized that he couldn't get around it.[5] Mr. Walden also stated that his lights were on dim, and he didn't see the truck until he was roughly 10 feet away from it.[6] Charles Walden agreed that there would have been room to go around it (Freightliner) if he had seen it, but later testified that he didn't know if he could have gotten around it (Freightliner).[7] Charles Walden stated that half of the Enterprise Freightliner was parked/placed in the middle of the road.[8]

Using the provided photographs and damage to the involved vehicles, it was estimated that the Enterprise Freightliner was located approximately 3 feet into the travel portion of the roadway. The right turn lane to the Eastern Bypass Road (KY 876) measured approximately 11 feet in width. This would have given approximately 8 feet of clearance for Charles Walden to maneuver around the Enterprise Freightliner.

[5] Charles Walden Deposition Testimony, page 38.
[6] Charles Walden Deposition Testimony, page 40.
[7] Charles Walden Deposition Testimony, page38 & 39.
[8] Charles Walden Deposition Testimony, pages 35 & 38.

The Enterprise Freightliner was parked partially on the travel portion of the roadway and was absent of any activated lighting. The collision report, along with the police photographs supports the fact that reflective warning triangles were placed to the rear of the Freightliner prior to the collision area, and conspicuity tape was located on the rear underride bumper area. Reflective warning triangles help a commercial vehicle stay visible when pulled over or broken-down during day/nighttime hours. Conspicuity tape has reflective qualities that would assist an approaching driver in identifying a commercial vehicle.

Charles Walden should have had an unobstructed field of vision for the distance provided by his headlamps. According to Mr. Walden, there was no fog or rain.[9] Mr. Walden failed to recognize the Enterprise Freightliner until he was approximately 10 feet away. [10] It is unknown why Mr. Walden failed to recognize that he was closing in on the parked vehicle. If Mr. Walden had perceived and reacted in time, he would have had the clearance distance to avoid the Enterprise Freightliner.

According to the collision report filed by Officer Curry, Mr. Walden stated that he was tired and did not see the Enterprise Freightliner. Charles Walden stated in his deposition that he did not recall telling the officer that he was tired.[11] It is unknown if fatigue was a contributing factor in this collision event, however, the collision events could be consistent with a fatigued vehicle operator.

**CONCLUSIONS:**

1.) Clarence M. Howard was having mechanical issues with his commercial vehicle. Due to the mechanical issues, Mr. Howard's disabled commercial vehicle was positioned partially on the travel portion of the roadway.
2.) The evidence is clear that Clarence M. Howard had placed reflective warning triangles prior to the rear of his vehicle.
3.) Charles Walden failed to recognize the closing distance of his vehicle and the disabled Enterprise Freightliner until approximately 10 feet prior to the impact event. This would be consistent with the reported statement of fatigue by the investigating officer or some type of inattention.
4.) According to Kentucky Revised Statue 189.040, Mr. Walden's headlamps should have provided sufficient intensity to reveal persons and vehicles at a lowermost distribution of light of at least 100 feet ahead.; and an uppermost distribution of light of at least 350 feet ahead. KRS 189.040 further states that, during the period of one-half ( ½) hour after sunset to one-half (½ ) hour before sunrise (KRS 189.030), the driver shall use a distribution of light or composite beam directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicle. Even at the minimum, lowermost distribution of light, Mr. Walden should have identified the Howard Vehicle/warning devices prior to the distance of 10 feet that he testified to in his deposition.

---

[9] Charles Walden Deposition Testimony, page 40.
[10] Charles Walden Deposition Testimony, Page 40.
[11] Charles Walden Deposition Testimony, page 33.

5.) According to Mr. Walden, he was the only person on the ramp.[12] This should have allowed Mr. Walden to use his high beam head lamps while traveling up the ramp prior to the intersection of Kentucky State Route 876.

6.) If Charles Walden had perceived and reacted to the Enterprise Freightliner in a time frame that would have allowed an avoidance maneuver prior to the impact event, Mr. Walden would have had the lateral distance to avoid the collision. This is represented in the following demonstrative diagrams prepared from the site visit and the police photographs.




**Demonstrative diagram of the collision event using the available evidence.**

[12] Charles Walden Deposition Testimony, Page 33.




**Demonstrative diagram of measurements and possible clearance path of the Walden Vehicle.**

**CONCLUSION SUMMARY:**

A collision event is caused by three (3) factors, either alone or in combination. These factors are **Human, Environmental and Vehicular.**

After reviewing the evidence in reference to this collision event, the following contributing factors were found:

The human factor of parking a portion of a commercial vehicle on the travel portion of the roadway was found on the part of Clarence M. Howard.

The vehicular factor of a mechanical breakdown was found to have contributed to the location of the Howard Commercial Vehicle.

No environmental factors were found on the part of Clarence M. Howard.

The human factors of fatigue and/or inattention were found on the part of Charles Walden.

No environmental or vehicular factors were found on the part of Charles Walden.

I reserve the right to change, or alter any opinions formed in this collision event should any new or updated information be presented.

Edward R. Crum

Advanced Collision Reconstructionist

Event Data Recorder Analyst

Heavy Vehicle ECM Analyst

Kentucky Licensed Private Investigator # 735

Crum Investigations LLC

75 Mitchell Road

Pikeville, KY 41501

(606) 639-0601 – Home/ Office

(606) 434-1606 - Cell

eddiecrum@cruminvestigations.com

Each page of this report, and all its contents and/or exhibits, are confidential communication between Hamm, Milby & Ridings PLLC, and Eddie Crum, dba Crum Investigations, LLC. and are considered by the author(s) and the intended recipient to be “work product”.