UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION
CIVIL ACTION NO.: 5:22-cv-00238-KKC

CHARLES L. WALDEN PLAINTIFF,

VS.

NATIONAL INDEMNITY COMPANY DEFENDANTS

**********

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**********

Plaintiff Charles L. Walden ("Walden" or "Plaintiff"), by and through counsel, respectfully submits this Response in Opposition to Defendant National Indemnity Company's ("NICO") Motion for Summary Judgment (DE 233, DE 233-1). Because the contemporaneous record in NICO's own claim file establishes genuine disputes of material fact under the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA"), KRS 304.12-230(3), (4), (6), and (14), NICO's Motion for Summary Judgment must be denied.

## I. INTRODUCTION

NICO asks this Court to hold as a matter of law that an insurer in a pure comparative-fault jurisdiction may open a catastrophic commercial trucking claim with day-one documentation that its insured's 45,000-pound Freightliner was "improperly parked" partially inside an active interstate exit-ramp travel lane at midnight (DE 233-2, NICO 003757; DE 231-2 at 4; DE 233-2, NICO 003817), yet issue an unconditional 100% liability denial threatening to close its file in 30 days (DE 233-2, NICO 003901; DE 231-3) before ever speaking to its named insured, its driver, or the investigating police officer, and before conducting any accident

reconstruction.

NICO attempts to insulate that February 26, 2021 zero-fault denial, and its subsequent three-year refusal to make any settlement offer, behind comparative fault, pre-suit record delays, and disputes over Plaintiff's secondary traumatic brain injury ("TBI") and future medical care. That defense fails on both the facts and the law.

**A. Pre-Denial Investigation Duty (KRS 304.12-230(3) & (4)).**

An insurer's duty to conduct a reasonable investigation based upon all available information precedes any refusal to pay and applies even when a claim's ultimate value is fairly debatable. *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 375–76 (Ky. 2000); *Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697, 704–05 (6th Cir. 2013). NICO's own retained expert, Christine Sullivan, admitted at deposition that the reasonableness of NICO's February 26, 2021 denial must be judged solely on the information NICO possessed at that time—and conceded that all of the reconstruction, medical, and deposition evidence NICO now cites to justify its denial was developed years later in 2023 and 2024. (Sullivan Dep., DE 231-4 at 35:16–20, 197:18–198:2).

**B. Undisputed Acute ORIF Hip Fracture.**

Whatever disputes existed regarding Plaintiff's prior medical history or future care, there was never any legitimate dispute that the August 10, 2020 collision caused Plaintiff's acute comminuted right posterior acetabular hip fracture and posterior femur dislocation, requiring emergency open reduction and internal fixation ("ORIF") surgery and seven days of inpatient hospitalization at UK Healthcare, generating $100,432.69 in itemized acute emergency and surgical specials (DE 233-2, NICO 004919–43). Even NICO's Rule 35 orthopedic examiner, Dr.

Timothy Kriss, confirmed that the acute hip fracture and ORIF surgery were caused by the crash. (DE 233-1 at 10; DE 233-2, NICO 005538–62).

### C. Internal Admissions of Fault and Six-Figure Net Exposure.

NICO's reliance on *Mosley*, *Hollaway*, and *Messer* is misplaced because NICO's own investigation eliminated any good-faith contention that its insured driver bore zero fault. By June 30, 2021, NICO posted an internal bodily injury exposure reserve of $150,000 while maintaining an external $0 denial and sending zero status letters. (DE 233-2, NICO 003669; Sullivan Rep., DE 233-7 at 9). By February 16, 2023, NICO's own accident reconstructionist, Edward Crum, reported to NICO that its driver encroached three feet into the active exit-ramp lane and "shouldn't have left the vehicle on the off ramp." (Sullivan Rep., DE 233-7 at 5; Sullivan Dep., DE 231-4 at 171:23–172:8). Still, NICO offered $0 for another fourteen months. And on February 22, 2024, NICO's Claims Committee formally calculated NICO's net expected comparative-fault settlement exposure at $234,249 (with an internal EV sheet displaying 250.0, or $250,000, DE 233-2, NICO 003664–65; DE 231-6, NICO 006516), yet NICO waited until April 20, 2024 to make its first offer of $100,000—less than 43% of its own net valuation—before settling at mediation for $200,000 on December 19, 2024.

## II. COUNTER-STATEMENT OF MATERIAL FACTS

The chronological record from NICO's produced claim file (attached to NICO's Motion at DE 233-2 and Plaintiff's Rule 702 Motion at DE 231-2 through DE 231-6), policy file, discovery responses, and depositions establishes the following material facts:

| Date | Documented Event in Claim File / Record | Record Pinpoint |
|---|---|---|
| 08/10/2020 | Plaintiff collides with NICO's insured 2012 Freightliner (45,000-lb. GVW, insured under a $1,000,000 limit, Policy No. 70 TRS 105576) left unattended approximately 3 feet inside the active travel lane of the I-75 Exit 87 off-ramp at midnight with warning triangles clustered behind the bumper rather than spaced at 10, 100, and 200 feet under 49 C.F.R. § 392.22(b). Plaintiff suffers an acute comminuted right posterior acetabular fracture and hip dislocation requiring emergency ORIF surgery and a 7-day UK Healthcare stay, generating $100,432.69 in itemized acute emergency and surgical specials. | DE 231-2; DE 231-5 (NICO 003674, 003677); DE 233-5 at 4, 8; DE 233-4 at 32:25–33:11; DE 119-4; DE 233-2 (NICO 004919–43) |
| 11/03/2020 | NICO opens Claim No. 00561125 with the Police Report in hand. Page 4 codes Enterprise's truck (Unit 2) as an "Improperly Parked Vehicle[]." Opening diary log notes: "Per the police report it was improperly parked/left on the side of an off ramp and the CVD ran into it, causing potential serious injuries to the claimant." Underwriting file lists an unlicensed Class C driver (Pullin) alongside Enterprise's direct phone (404-396-7788), direct email (shanta.esgexpress@gmail.com), and producing broker. | DE 233-2 (NICO 003757); DE 231-2 at 4; DE 231-5 (NICO 003672–75); Sullivan Dep. DE 231-4 at 53:1–9, 62:17–24 |
| 12/09/2020 | NICO's claim diary confirms from scene photographs: "You will note the insured unit is partially in the lane of Travel at the time..." | DE 233-2 (NICO 003817); DE 231-6 |
| 02/26/2021 | Without speaking to Enterprise, driver Howard, or Officer Curry, and without retaining a reconstructionist, NICO Examiner Vince Kline issues an unconditional 100% liability denial asserting "no fault was placed on the insured" and threatening: "Otherwise, I'll proceed to close my file in this matter in 30 days from the date of this letter." | DE 233-2 (NICO 003901); DE 231-3; Sullivan Dep. DE 231-4 at 147:17–21, 155:10–156:9, 184:8–13 |
| 05/25/2021 – 06/30/2021 | On May 25, 2021, Plaintiff's counsel sends EMS/ER hospital records confirming the fractured hip and advises that remaining orthopedic/PT records have not yet been received from providers. On June 3, Kline reiterates NICO's liability denial while sending policy limits; on June 4, Plaintiff's counsel confirms records will be forwarded upon | DE 233-9 (Ex. 8); DE 233-2 (NICO 003669); Sullivan Rep. DE 233-7 at |

| Date | Documented Event in Claim File / Record | Record Pinpoint |
|---|---|---|
| | receipt. On June 30, 2021, NICO internally raises its BI reserve to $150,000, yet maintains its external $0 denial, sends zero status or follow-up letters, and logs zero claims-department comparative-fault valuation for the next 19 months. | 8–9; Fisher Rebuttal DE 233-11 at 3–4, 9–13, 16 |
| 01/12/2023 – 03/08/2023 | Twenty-six months after opening the claim (and five months post-suit), defense counsel first confers with reconstructionist Edward Crum on Jan. 12, 2023. On Jan. 13, 2023, Plaintiff serves an $846,676.07 demand package (including $100,432.69 in acute hip-surgery specials), which NICO never communicates to its insureds. Crum inspects the scene and reports on Feb. 16 and Mar. 8, 2023 that the truck encroached 3 feet into the lane and Howard "shouldn't have left the vehicle on the off ramp." NICO still offers $0 for another 14 months. | DE 233-2 (NICO 004913–15, 004919–43); Sullivan Rep. DE 233-7 at 5, 10; Sullivan Dep. DE 231-4 at 171:23–172:8, 200:1–201:22; DE 233-5 at 4, 8 |
| 02/06/2024 – 12/19/2024 | As of the proposed Feb. 6, 2024 mediation date, NICO's offer remains $0 and its Claims Committee has not even met. On Feb. 22, 2024, NICO's Claims Committee values net discounted settlement exposure at $234,249 (EV sheet NICO 006516 displays 250.0, or $250,000). NICO waits until March 27–30, 2024 (43 months post-crash) to hire a private investigator or contact Officer Curry, waits until April 20, 2024 to make its first offer of $100,000 (<43% of net valuation), and settles for $200,000 at mediation on Dec. 19, 2024 (paid Jan. 8, 2025). | DE 233-2 (NICO 003664–65, 006525–28); DE 231-6 (NICO 006516); Sullivan Dep. DE 231-4 at 188:13–189:16; DE 233-12 (Interrog. No. 12) |

During bad-faith discovery, Plaintiff served Request for Production No. 18 seeking NICO's claims-handling manuals and guidelines. NICO produced zero manuals, asserting that "[t]here are no responsive documents for specific written claims handling materials in Kentucky." (Pl. Resp. to Mot. to Exclude Fisher, Ex. 1 at 19; see also Sullivan Dep., DE 231-4 at

36:4–22, 37:10–22). Plaintiff timely disclosed national qualitative claims-auditing expert Frederick J. Fisher, J.D., CCP, who audited NICO's 6,365-page claim file chronologically against the NAIC Model Unfair Claims Settlement Practices Act as codified in Kentucky at KRS 304.12-230. (DE 232-1; DE 233-11; DE 233-10 at 238–274).

## III. LEGAL STANDARD

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper only when the movant demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). A dispute is genuine when the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Noble v. Cincinnati & Hamilton Cnty. Pub. Libr.*, 112 F.4th 373, 380 (6th Cir. 2024). In making this determination, the Court must view the record and draw all justifiable inferences in the light most favorable to the nonmovant, without weighing competing evidence or making credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 255 (1986); *SHH Holdings, LLC v. Allied World Specialty Ins. Co.*, 65 F.4th 830, 836 (6th Cir. 2023); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

## IV. ARGUMENT

To prevail on a third-party statutory bad-faith claim under the KUCSPA, KRS 304.12-230, a plaintiff must establish under *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993): (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

Contrary to NICO's argument, Kentucky law does not grant an insurer a license to issue an uninvestigated 100% denial, ignore undisputed acute surgical injuries, or withhold any offer for over a year after its own reconstructionist confirms insured fault merely because comparative-fault percentages or secondary medical claims are debated. In *Farmland Mutual Insurance Co. v. Johnson*, 36 S.W.3d 368, 375–76 (Ky. 2000), the Kentucky Supreme Court squarely rejected that premise, holding that "although elements of a claim may be 'fairly debatable,' an insurer must debate the matter fairly, and cannot omit to evaluate a claim or refuse to pay a claim without a reasonable investigation based on all available information... The existence of jury issues on the comparative fault of the parties, or the amount of damages, does not excuse an insurer from its obligations under the KUCSPA." Accord *Phelps v. State Farm Mut. Auto. Ins. Co.*, 736 F.3d 697, 704–07 (6th Cir. 2013).

**A. Genuine Issues of Material Fact Preclude Summary Judgment on NICO's February 26, 2021 Zero-Fault Denial Under KRS 304.12-230(3) and (4).**

KRS 304.12-230(3) prohibits "[f]ailing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," and KRS 304.12-230(4) prohibits "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information." See *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452, 454 (Ky. 1997).

NICO argues (DE 233-1 at 18–19) that its February 26, 2021 denial letter was reasonable as a matter of law under *Breedlove v. State Farm Fire & Casualty Co.*, 690 S.W.3d 904, 917 (Ky. App. 2024), because an insurer may rely on a police report. That argument collapses against NICO's own claim diary. In *Breedlove*, the police report exonerated the insured. Here, Page 4 of the Police Report in NICO's file since Day 1 (November 3, 2020) explicitly designated NICO's

insured commercial truck as an "Improperly Parked Vehicle[]" (DE 231-2 at 4), and NICO's own opening diary note recorded: "Per the police report it was improperly parked/left on the side of an off ramp and the CVD ran into it, causing potential serious injuries to the claimant." (DE 233-2, NICO 003757). By December 9, 2020, NICO's adjuster log further confirmed from scene photographs that "the insured unit is partially in the lane of Travel at the time." (DE 233-2, NICO 003817).

Under Kentucky's pure comparative-fault statute, KRS 411.182, and FMCSR 49 C.F.R. § 392.22, leaving an overheated 45,000-pound commercial box truck unattended at midnight protruding three feet into an active interstate exit lane, with warning triangles clustered behind the bumper rather than spaced at 10, 100, and 200 feet, presented obvious insured fault from the day the claim was opened. Yet on February 26, 2021, NICO examiner Vince Kline issued an unconditional 100% denial stating "no fault was placed on the insured" and threatening to close the file in 30 days (DE 231-3; DE 233-2, NICO 003901) *before* taking a number of vital investigation steps: *before* ever speaking to driver Clarence Howard; *before* ever speaking to named insured Enterprise (despite having Enterprise's direct telephone number, email address, and producing broker in the underwriting file, DE 231-5, NICO 003673–75); *before* ever contacting investigating Officer Jason Curry (who was not contacted until March 30, 2024—43 months post-crash, DE 233-2, NICO 003664); and *before* retaining an accident reconstructionist to evaluate sightlines, lighting, or FMCSR triangle spacing (which NICO delayed for 26 months until January 12, 2023, DE 233-2, NICO 004913–15).

Critically, NICO cannot use post-hoc evidence developed in 2023 and 2024 (Crum's 2023 measurements, Curry's July 2024 deposition, or Dr. Kriss's May 2024 IME) to retroactively validate its February 26, 2021 denial. As NICO's own expert Christine Sullivan testified, a liability decision must be judged solely on the information available to the adjuster

when the decision was made, and everything else NICO relies upon was developed years after February 26, 2021. (Sullivan Dep., DE 231-4 at 35:16–20, 197:18–198:2; Fisher Rebuttal Rep., DE 233-11 at 2, 6–9). Nor can NICO blame Plaintiff for the pre-suit interval following June 2021: Plaintiff's counsel expressly advised Kline on May 25 and June 4, 2021 that remaining orthopedic and physical-therapy records were still pending from providers and would be forwarded upon receipt (DE 233-9), while NICO raised its internal reserve to $150,000 on June 30, 2021 (DE 233-2, NICO 003669), sent zero status or follow-up letters (Sullivan Rep., DE 233-7 at 9), and refused to evaluate the acute hip-fracture records and lane-encroachment photos already in its possession. As Mr. Fisher explained: "A request for more records is often appropriate. It should not become a substitute for evaluating what is already in the file." (Fisher Rebuttal Rep., DE 233-11 at 16).

### B. NICO's Reliance on *Hollaway*, *Mosley*, and *Messer* Fails Because Plaintiff's Acute ORIF Hip Fracture Was Undisputed and NICO's Own Reconstructionist and Claims Committee Confirmed Six-Figure Net Comparative-Fault Liability.

NICO contends (DE 233-1 at 14–18) that under *Hollaway v. Direct General Insurance Co.*, 497 S.W.3d 733, 738 (Ky. 2016), *Mosley v. Arch Specialty Insurance Co.*, 626 S.W.3d 579, 586 (Ky. 2021), and *Messer v. Universal Underwriters Insurance Co.*, 598 S.W.3d 578, 587 (Ky. App. 2019), it had no duty to make any settlement offer under KRS 304.12-230(6) unless both fault and damages were "beyond dispute." NICO overreads those decisions and ignores two dispositive distinctions in this record.

#### 1. Plaintiff's Acute Acetabular Hip Fracture and Emergency ORIF Surgery Were Never in Dispute.

In *Hollaway*, the insurer disputed whether any of the claimant's alleged soft-tissue/degenerative injuries resulted from a minor collision. 497 S.W.3d at 735, 738–39. Here, by contrast, NICO received EMS and UK Healthcare records in February and May 2021 proving that Plaintiff was transported directly from the crash scene to UK Medical Center with an acute comminuted right posterior acetabular fracture and hip dislocation requiring open surgical fixation and a seven-day hospitalization, generating $100,432.69 in itemized acute emergency and surgical specials. (DE 233-9; DE 233-2, NICO 004919–43). Even NICO's retained orthopedic examiner, Dr. Kriss, agreed that the acute hip fracture and ORIF surgery were caused by the August 10, 2020 crash, disputing only subsequent complaints and a proposed future surgery. (DE 233-1 at 10, 17; DE 233-2, NICO 005538–62). Under *Phelps*, 736 F.3d at 705–06, an insurer may not use legitimate questions regarding prior medical history or secondary claims to stonewall and withhold evaluation of the undisputed acute surgical injury.

**2. By February 2023 (Crum) and February 2024 (Claims Committee), NICO's Own Investigation Confirmed Insured Fault and $234,249 in Net Comparative-Fault Liability.**

NICO's citation to *Messer*, 598 S.W.3d at 587, for the proposition that an insurer need not make an offer if there is evidence supporting 0% insured fault, is defeated by NICO's own expert and Claims Committee records. On June 30, 2021, NICO posted a $150,000 internal bodily injury reserve after receiving Plaintiff's acute hip-fracture records. (DE 233-2, NICO 003669). While posting a reserve is not a legal admission of liability, internal exposure valuations paired with an unexplained multi-year $0 external posture are relevant circumstantial evidence of whether the insurer actually believed its 0% fault denial. See *Farmland*, 36 S.W.3d at 375–77; Fisher Rebuttal Rep., DE 233-11 at 5, 10–13; Fisher Dep., DE 233-10 at 199:13–201:12. On January 13, 2023, Plaintiff submitted his formal $846,676.07 demand

package; satisfying any demand prerequisite under *American Physicians Assurance Corp. v. Schmidt*, 187 S.W.3d 313, 317 (Ky. 2006). On February 16, 2023, NICO's own accident reconstructionist, Edward Crum, confirmed that Howard's commercial truck encroached three feet into the active travel lane and told defense counsel and NICO that Howard "shouldn't have left the vehicle on the off ramp." (Sullivan Rep., DE 233-7 at 5; Sullivan Dep., DE 231-4 at 171:23–172:8). At that point, NICO's own technical expert had confirmed the insured's fault. Yet NICO held its offer at $0 for another fourteen months. On February 22, 2024, NICO's Claims Committee formally evaluated the claim, already applying a comparative fault discount and excluding disputed TBI/future medicals, and determined that NICO's net expected liability was $234,249 (with NICO 006516 displaying 250.0, or $250,000). (DE 233-2, NICO 003664–65; DE 231-6, NICO 006516).

Once an insurer's own reconstructionist confirms insured negligence and its own Claims Committee calculates $234,249 in net discounted liability, the insurer's obligation to pay at least the undisputed net value of the acute surgical injury is "reasonably clear" by the insurer's own admission. Holding the offer at $0 until April 20, 2024, and then offering only $100,000 (42.6% of the Claims Committee's net valuation) without a reasonable explanation for an offer $134,249 below its own discounted authority, creates a triable jury issue under KRS 304.12-230(6) and (14). See *Farmland*, 36 S.W.3d at 375–77; *Phelps*, 736 F.3d at 705–07.

### C. Mr. Fisher's Testimony Is Fully Admissible, Contextualizes Comparative-Fault Allocation, and Supports a Jury Inference of Reckless Disregard Under Wittmer's Third Prong.

NICO argues (DE 233-1 at 3, 16, 19–25) that summary judgment is warranted because Plaintiff's bad-faith expert, Frederick Fisher, testified he was "not sure" when liability became

reasonably clear in an absolute 100% sense, called comparative-fault percentages a "judgment call," declined to opine on NICO's subjective motive, and testified that NICO's conduct fell "beneath the standard of care." NICO both wrenches Mr. Fisher's answers out of context and turns Federal Rules of Evidence 702 and 704 upside down.

First, when read in context alongside his Rebuttal Report (DE 233-11 at 5–16) and redirect examination (DE 233-10 at 238–274), Mr. Fisher's acknowledgment that reasonable claim handlers could debate exact *comparative-fault percentages* did not endorse NICO's multi-year 0% denial; to the contrary, Mr. Fisher testified unequivocally that substantial insured exposure was evident from the December 2020 lane-encroachment log onward (and confirmed by Crum in February 2023 and the Claims Committee in February 2024), making NICO's refusal to evaluate what was already in its file or extend any offer until April 2024 a severe departure from accepted P&C claims-handling practices.

Second, as set forth in Plaintiff's contemporaneously filed Response to NICO's Motion to Exclude Mr. Fisher (incorporated herein by reference) and Plaintiff's Motion to Exclude or Limit Christine Sullivan (DE 231), an insurance claims expert in federal court is prohibited from instructing the jury on Kentucky law, pronouncing legal verdicts that conduct was legally "outrageous," or engaging in corporate mind-reading regarding an adjuster's subjective "evil motive." See *Berry v. City of Detroit*, 25 F.3d 1342, 1353–54 (6th Cir. 1994); *Adkins v. Shelter Mut. Ins. Co.*, No. 5:12-cv-00173-KKC, 2015 WL 1393588, at *3–4 (E.D. Ky. Mar. 26, 2015) (Caldwell, J.). Mr. Fisher properly respected that boundary while identifying five concrete, objective departures from NAIC Model Act / KRS 304.12-230 industry benchmarks: (1) Issuing the unconditional February 26, 2021 zero-fault denial and 30-day file-closure threat despite possessing the Police Report coding Unit 2 as "Improperly Parked" and the December 9, 2020 log confirming active lane encroachment, without interviewing the insured, driver, or police

officer (DE 233-11 at 6–9; DE 233-10 at 241:12–246:20). (2) Maintaining a $0 external denial for 33 months after posting a $150,000 internal bodily injury reserve on June 30, 2021, with zero status letters and zero documented claims-department comparative fault valuation between June 2021 and February 2023 (DE 233-11 at 3–4, 10–13, 16; DE 233-10 at 199:13–201:12, 247:1–252:18). (3) Waiting 26 months after claim opening to confer with an accident reconstructionist (January 12, 2023) and 41 months to retain a private investigator or contact Officer Curry (March 27–30, 2024), and then continuing to offer $0 for 14 months after Crum confirmed the driver should not have left the rig on the ramp (DE 233-11 at 8–12; DE 233-10 at 252:19–258:14). (4) Failing to communicate Plaintiff's January 13, 2023 demand to its insureds while issuing multiple non-cooperation reservation-of-rights letters (DE 233-11 at 4, 13–14). Finally, (5) waiting two months after the February 22, 2024 Claims Committee valuation of $234,249 (and 250.0, or $250,000, on EV sheet NICO 006516) to make a lowball $100,000 offer (<43% of net authority) without a documented reasonable explanation (DE 233-11 at 13–15; DE 233-10 at 258:15–265:10).

Third, NICO's attempt to blame litigation delays, including the cancelled February 6, 2024 mediation, on Plaintiff (DE 233-1 at 9–11, 24) is refuted by NICO's own diary: as of February 6, 2024, NICO's offer was still $0.00, NICO had not yet convened its Claims Committee (which first met February 22, 2024), and NICO still had not hired an investigator to locate Howard or contacted Officer Curry. (DE 233-2, NICO 003664–65). Under *Wittmer*, 864 S.W.2d at 890, and *Phelps*, 736 F.3d at 706–07, a jury is entitled to infer "reckless disregard for the rights of others" from this multi-year pattern of premature denial, reactive investigation, internal-external valuation contradiction, and below-authority lowball offers.

**D. Genuine Disputes of Material Fact Exist as to Actual Extra-Contractual Damages Proximately Caused by NICO's Bad-Faith Delay.**

NICO argues (DE 233-1 at 3, 11–12, 19–22) that Plaintiff cannot prove actual damages because at his December 11, 2025 deposition, when asked legal contention and accounting questions about how NICO's handling harmed him, how interest was computed, or whether he personally paid $20,319.08 in litigation expenses as the case went along, Plaintiff answered "I'm going to pass on the question," "I don't know," and "I really don't remember." (DE 233-4 at 74:1–78:8, 131:5–132:2, 138:10–141:25).

NICO's deposition "gotcha" ignores both the mechanics of contingency-fee litigation and the sworn discovery record in NICO's own exhibit appendix (DE 233-12, Pl. Resp. to Interrog. No. 12). First, Plaintiff is a lay witness on Social Security disability with documented cognitive and memory deficits; in a contingency-fee representation, litigation expenses are advanced by counsel and deducted from the client's gross settlement disbursement rather than paid out-of-pocket week-by-week by the client, so a lay claimant's inability to recite accounting deductions from memory does not negate documented financial harm. Second, Plaintiff's sworn Response to Interrogatory No. 12 (DE 233-12) and the record establish three concrete categories of extra-contractual harm.

**1. Post-Denial Tort Litigation Expenses Deducted from Recovery.**

Plaintiff incurred $20,319.08 in net litigation expenses (calculated as $20,372.38 total case expenses less $53.30 in pre-litigation costs), comprising expert, medical-cost-projection, court-reporting, and mediation expenses, that directly reduced his net recovery from the $200,000 settlement after NICO refused to investigate and evaluate his claim fairly (DE 233-12, Resp. to Interrog. No. 12; DE 233-4 at 138–141).

**2. Economic Loss of Use of Delayed Settlement Funds.**

Across the 726 days (nearly two full years, valued at $48,521.83 in Plaintiff's disclosures) between Plaintiff's January 13, 2023 formal demand packet (immediately followed by Crum's February 16, 2023 confirmation of insured fault) and receipt of the $200,000 settlement check on January 8, 2025, Plaintiff, living on fixed disability income with over $100,400 in unpaid acute surgical bills, was deprived of the use and economic time-value of the $200,000 settlement proceeds (DE 233-12, Resp. to Interrog. No. 12).

**3. Emotional Distress, Mental Anguish, and Financial Strain.**

Plaintiff disclosed $68,000.00 in emotional-distress damages and testified to the prolonged physical and financial strain of enduring over four years of stonewalling and invasive litigation before NICO paid within its own Claims Committee valuation (DE 233-12, Resp. to Interrog. No. 12; DE 233-4 at 136–141).

Under Kentucky law, verifiable financial harm from delayed payment, post-denial litigation expenses, and record-supported emotional distress are recoverable compensatory damages under KRS 304.12-230 and KRS 446.070 that warrant submitting both compensatory and punitive damages (KRS 411.184–.186) to the jury. See *Indiana Ins. Co. v. Demetre*, 527 S.W.3d 12, 30–33 (Ky. 2017); *Wittmer*, 864 S.W.2d at 890–91; *Phelps*, 736 F.3d at 706–08.

**E. Response to NICO's Alternative Motion for Partial Summary Judgment on KRS 304.12-235 Remedies.**

Finally, NICO moves in the alternative for partial summary judgment on statutory attorney's fees and 12% statutory interest under KRS 304.12-235, citing *Motorists Mutual Insurance Co. v. Glass*, 996 S.W.2d 437, 455 (Ky. 1997). (DE 233-1 at 25). Plaintiff acknowledges that *Glass* restricts the specific first-party statutory remedies of KRS 304.12-235 (automatic 12% statutory interest and statutory attorney's fees under KRS 304.12-235) to first-

party insureds or their assignees, and Plaintiff did not plead a count under KRS 304.12-235 in his Complaint. (DE 1-1, Count X).

However, the inapplicability of first-party statutory remedies under KRS 304.12-235 does not bar or limit Plaintiff's recovery of traditional third-party bad-faith damages under KRS 304.12-230, KRS 446.070, and Kentucky common law; including compensatory damages proximately caused by NICO's unreasonable delay (such as economic loss of use of delayed settlement proceeds, the $20,319.08 in post-denial litigation expenses deducted from Plaintiff's tort recovery, and emotional distress), taxable costs under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920, and punitive damages under KRS 411.184–.186 and *Wittmer*, 864 S.W.2d at 890–91. Accordingly, to the extent the Court enters partial summary judgment confirming strictly that first-party statutory remedies under KRS 304.12-235 are unavailable, the Court should deny NICO's motion in all other respects and preserve all third-party compensatory, cost, and punitive damage remedies under KRS 304.12-230 and KRS 446.070 for trial.

## V. CONCLUSION

For the foregoing reasons, Defendant National Indemnity Company's Motion for Summary Judgment (DE 233) should be DENIED.

Respectfully submitted,

MORRIN LAW OFFICE

_/s/ *Robert A. Morrin*__________

Hon. Robert A. Morrin (KBA # 94368)
214 West Main Street
Richmond, KY 40475
Telephone: (859) 358-0300
rob@morrinlawoffice.com
*Counsel for Plaintiff, Charles L. Walden*

* * * * * * * *

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record, including Hon. Mindy G. Barfield and Hon Kyle R. Bunnell, Dinsmore & Shohl LLP, Counsel for Defendant National Indemnity Company.

_/s/ *Robert A. Morrin*_________
Hon. Robert A. Morrin (KBA # 94368)
MORRIN LAW OFFICE
*Counsel for Plaintiff, Charles L. Walden*